**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **THE LEADERS INSTITUTE, LLC** | § | |
| **And DOUG STANEART** | § | |
| | § | |
| **VS** | § | |
| | § | |
| **ROBERT JACKSON, MAGNOVO** | § | CIVIL NO. _____ |
| **TRAINING GROUP, LLC,** | § | |
| **COLETTE JOHNSTON and** | § | |
| **SHORT SPLICE, INC.** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiff, The Leaders Institute, LLC, a Texas limited liability company, and Plaintiff Doug Staneart, a resident of Tarrant County, Texas, (referred to herein collectively as "Plaintiff"), make and file this Original Complaint against Robert Jackson, Magnovo Training Group, LLC, Colette Johnston and Short Splice, Inc. (referred to herein collectively as "Defendants"), and allege as follows:

**I.**

**PARTIES**

1.      The Leaders Institute, LLC (hereinafter "Plaintiff TLI"), is a Texas limited liability company duly organized and existing under the laws of the state of Texas with its principal place of business at 6703 Coronation Court, Arlington, Texas, 76017.

2.      Plaintiff, Doug Staneart (hereinafter "Plaintiff Staneart"), is a natural person who resides in Tarrant County, Texas.

3.      Defendant, Robert Jackson (hereinafter "Defendant" and/or "Jackson") is a natural person who resides and conducts business at 5328 Sandwood Drive, Indianapolis, Indiana 46235.

Defendant Jackson may be served with process at his residence.

4.      Defendant, Magnovo Training Group, LLC (hereinafter "Defendant" and/or "Magnovo"), is an Indiana limited liability company whose principal place of business is at 5328 Sandwood Drive, Indianapolis, Indiana 46235.  Defendant Magnovo may be serviced with process by serving its registered agent, Robert Jackson, at 5328 Sandwood Drive, Indianapolis, Indiana 46235.

5.      Defendant Colette Johnston, (hereinafter "Defendant" and/or "Johnston") is a natural person residing at 411 Walnut Street #8903, Green Cove Springs, Florida, 32043.  Defendant Johnston may be served with process at such address.

6.      Defendant Short Splice, Inc. (hereinafter "Defendant" and/or "Short Splice"), is a Florida Corporation, which can be served with citation by serving Colette Johnston, its registered agent for service at 411 Walnut Street #8903, Green Cove Springs, Florida, 32043.

## II.

## JURISDICTION and VENUE

7.      This Court has subject matter jurisdiction to adjudicate Plaintiff's claims against Defendants pursuant to 28 U.S.C. § 1332(a).  This Court has original jurisdiction over this case and controversy because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  Plaintiff TLI and Plaintiff Staneart are citizens of the State of Texas and the Defendants are citizens of the States of Indiana and Florida.

8.      This is a civil action for, inter alia, trademark and copyright violations under 15 U.S.C. § 1051 *et seq.* and 17 U.S.C. § 501 *et seq.,* and therefore, this Court also has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1338, and supplemental

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

9.      This Court has personal jurisdiction over Defendants Jackson and Magnovo because, as alleged more specifically below, Jackson and Magnovo conducted business in Texas and purposely availed themselves of the laws of the State of Texas, by, among other things, advertising, selling and providing their services in the State of Texas and in this venue.

10.     This Court also has jurisdiction over Defendants Jackson and Magnovo because they committed torts, including inter alia, trademark and copyright infringement, and cybersquatting, as alleged more specifically below, intentionally directed at Texas with the effect of injuring Plaintiff at its principal place of business in Texas.

11.     This Court has personal jurisdiction over Defendants Johnston and Short Splice because they too committed torts directed at this State with the effect of injuring Plaintiff at its principal place of business in Texas. As alleged more specifically below, Defendants Johnston and Short Splice misappropriated Plaintiff's intellectual, proprietary property, including its trade secrets, all of which acts are the subject of this lawsuit.

12.     This Court also has personal jurisdiction over Defendants Johnston and Short Splice because they conducted business in Texas and purposely availed themselves of the laws of the State of Texas, by, amount other things, advertising and selling Defendant Magnovo's services to Texas residents in the State of Texas and in this venue.

## III.

## JURISDICTIONAL FACTS

13.     The Court has personal jurisdiction over Defendants Jackson and Magnovo because they committed numerous torts intentionally directed at the state of Texas which had the effect of injuring Plaintiff at its principal place of business located in Texas and such torts give rise to the

claims made the basis of this suit.

14.     More specifically, the Court also has personal jurisdiction over Defendants Jackson and Magnovo due to their intentional and flagrant infringement on Plaintiff's trademark and copyrights including, among other things, their infringement of Plaintiff's Build-A-Bike® service mark by registering, using and maintaining domain names, including "letsbuildabike.com", "charitybuildabike.com", "buildabikecharity.com", and buildbikeforcharity.com", among others, and by placing Plaintiff's service mark within Defendants interactive websites and in its metadata directed at the Texas forum so that Texas residents searching the internet for "Build-A-Bike®" would be directed to Defendant Magnovo's website.

15.     Because Defendants Jackson and Magnovo intentionally directed their tortious web-based advertising of team-building events at the Texas forum with the effect of injuring Plaintiff at its principal place of business in Texas, such conduct confers to the Court personal jurisdiction over Defendants Jackson and Magnovo pursuant to the Texas long-arm statute.

16.     On its website, Defendant Magnovo admits that it does business in Texas, wherein it states:

> Texas Team Building.  Magnovo delivers team building workshops and training events all across Texas.  . . . If you're looking for corporate training and leadership development, we offer many workshops that can be delivered at your chosen location in Texas." Among the Texas cities identified as Magnovo Team Building Cities are: Dallas, Fort Worth, Houston, Plano, San Antonio and Waco.

17.     Additionally, Defendant Magnovo's interactive website advertised Bicycle Team Building Locations across the country including Texas, specifically identifying Dallas, Texas as a site in which its services were available.  *See*

http://www.bicycleteambuildingevent.com/bicycle-team-building-locations;

http://charityteambuildingevents.com/teambuilding-locations/central/texas;

http://magnovo.com/locations/centeral/texas-team-building/.[1] Defendant Jackson also admitted

to selling and teaching a speaking seminar in Texas in August 2013.

18.    This Court also has personal jurisdiction over Defendant Jackson because he conducted

business in Texas and purposefully availed himself of the laws of the state of Texas by entering

into contracts with Texas residents, including Plaintiff, which contracts were to be performed, in

part, in Texas and which contracts are made the basis of this suit.

19.    More specifically, Defendant Jackson contacted Plaintiff in Texas on multiple occasions

during the period of August through November 2010 with the express purpose of re-entering into

an independent contractor relationship with Plaintiff.    In November 2010, Defendant Jackson

traveled to Texas at his own expense and at his request to teach a class for Plaintiff during which

visit, Defendant Jackson met with Plaintiff and entered into an Independent Contractor

Agreement with TLI, part of which contract was performable and was actually performed in

Texas, both by Plaintiff and Defendant Jackson.

20.    Moreover, this Court has personal jurisdiction over Defendant Jackson because while

performing his obligations under the Independent Contractor Agreement, Defendant Jackson

tortiously interfered with Plaintiff's prospective business relations with its long-term customers,

some of whom were residents of Texas, by entering into contracts on behalf of himself and

Defendant Magnovo for the provision of the same services which Plaintiff was providing to such

customers and which Defendant Jackson provided to such customers as an independent

---

[1] Since Plaintiff's initial suit against Defendant Magnovo in State court, which was voluntarily
non-suited by Plaintiff, Plaintiff has observed many changes to the foregoing websites deleting

contractor for Plaintiff.

21.     The Court has personal jurisdiction over Defendants Johnston and Short Splice, because, as alleged more specifically below, they conducted business in Texas and purposefully availed themselves of the laws of the state of Texas by, inter alia, entering into contracts with Texas residents, including Plaintiff, which contracts were to be performed, in part, in Texas.

22.     The Court also has personal jurisdiction over Defendant Johnston because, as alleged more specifically below, she committed torts aimed at the state of Texas and which injured Plaintiff at its principal place of business in Texas, and such torts gave rise to the claims made the basis of this suit.

23.     More specifically, Defendant Johnston entered into an Independent Contractor Agreement with Plaintiff to provide sales services.  Subsequently, Defendant Johnston formed a corporation, Defendant Short Splice, and requested that Plaintiff contract with her corporation and that she would provide the same services in her capacity as president of Defendant Short Splice.

24.     Included in the services that Defendants Johnston and Short Splice provided to Plaintiff, was the development of personal contacts within the organizational structure of Plaintiff's clients and prospective clients; such contacts were developed for Plaintiff and at Plaintiff's costs and constituted confidential proprietary information of Plaintiff.

25.     To facilitate Defendants Johnston and Short Splice providing sales services for Plaintiff, Plaintiffs entrusted to them Plaintiff's confidential and proprietary customer lists and contact information by providing Defendants with password protected access to Plaintiff's Customer

information regarding Texas locations, but Plaintiff has preserved screenshots containing the

Relations Management ("CRM") system.

26.     Furthermore, in making sales for Plaintiff, Defendants Johnston and Short Splice had direct contact with Plaintiff's existing clients and had access to Plaintiff's trade secrets and confidential information including customer/client lists, client preferences and contact information, event materials and instruction techniques, training materials, sales and marketing materials and strategies, including customer proposals, pricing methods and operating procedures, among other things.

27.     As a condition of receiving such confidential, proprietary information, Defendant Johnston signed a non-disclosure agreement wherein she acknowledged her fiduciary relationship with Plaintiff and agreed to protect and keep confidential all of Plaintiff's trade secrets.

28.     Defendants Johnston and Short Splice breached their confidential relationship when they misappropriated Plaintiff's confidential proprietary information and trade secrets and utilized such to engage in unfair competition with Plaintiff with the effect of injuring Plaintiff in its principal place of business in Texas.

29.     Defendant Johnston's acts, individually and on behalf of Short Splice, were intentionally directed at the state of Texas and had the effect of injuring Plaintiff at its principal place of business in Texas.   Such tortious conduct confers to this Court personal jurisdiction over Defendants Johnston and Short Splice pursuant to the Texas long-arm statute.

### IV.

### <u>VENUE</u>

30.     Venue is proper in this Court under 28 U.S.C. § 1391(b), as a substantial part of the

cited content.

events giving rise to these claims has occurred in this judicial district. Venue is also proper in this Court because Defendants are deemed to reside in this judicial district under 28 U.S.C. § 1391(c).

## V.

## NATURE OF THE ACTION

31.     This is an action for trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin and trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); copyright infringement in violation of Section 505 *et seq.* of the Copyright Act, 17 U.S.C. § 505 *et seq.*, and related causes of action, arising from the use by Defendants of the Build-A-Bike® word mark in violation of Plaintiff's rights in the federally registered mark Build-A-Bike® arising under federal and state trademark law, registered copyrights and other confidential information of Plaintiff.

## VI.

## FACTUAL BACKGROUND

32.     Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

33.     Plaintiff Staneart is the founding owner and CEO of Plaintiff TLI.

34.     Plaintiff has been engaged in the business of conducting corporate leadership, team-building and public speaking seminars since December 2002.

35.     Plaintiff provides training to organizations and individuals in leadership and management skills development, public speaking skills, and team-building training.  Plaintiff also organizes and puts on corporate charity events which allow for both the development of team building skills and charitable giving by its organizational clients.

36.     Plaintiff Staneart is the owner of several registrations for its service marks registered with the United States Patent and Trademark Office ("USPTO"), including without limitation, the following registrations:

| MARK | REG. NO. | SERVICES | FIRST USE DATE |
|------|----------|----------|----------------|
| Build-A-Bike® | 3,535,706 | Education services, namely, providing classes, seminars, and workshops in the field of team building and leadership | As early as October 15, 2005 |
| BUILD-A-BIKE® | 4,542,884 | Educational services, namely, conducting classes, seminars, workshops, lectures, and self-paced training programs in the field of personal and professional development, leadership, communication, and team building and distribution of educational materials in connection therewith; Personal coaching services in the field of personal and professional development for individuals and groups | As early as October 15, 2005 |

37.     The USPTO registrations are currently valid, subsisting and in full force and effect, and have achieved incontestability under 15 U.S.C. § 1065.   True and correct copies of the registration certificates are attached hereto as Exhibits A and B.  The federal registration rights and common law rights of Plaintiffs in the mark BUILD-A-BIKE® are collectively referred to hereafter as the "Build-A-Bike® Mark."

38.     Plaintiff has continuously used the Build-A-Bike® Mark in interstate commerce since as early as October 15, 2005 in connection with leadership and team building workshops and related goods and services and have utilized the proper trademark notice with use of the ® or ™ symbols.

39.     The Build-A-Bike® Mark is used on a variety of advertising media including brochures,

Internet websites, training and course materials, and other advertising and promotional items.

40.     Plaintiff has invested a significant amount of time, effort and money into developing, promoting, advertising and maintaining the Build-A-Bike® Mark, among other trademarks owned by Plaintiff, throughout the United States over the course of many years.

41.     As a result of the forgoing, the Build-A-Bike® Mark has become widely and favorably known as identifying charitable team building workshops and related goods and services originating from, sponsored by or associated with Plaintiff.

42.     In connection with the development of its business, Plaintiff has expended substantial time, labor and money to develop and create course and event materials and instruction techniques, customer/client lists, client contact information, pricing methods, training materials, sales and marketing materials and strategies, financial information and other information which, singularly and collectively, constitute Plaintiff's trade secrets, confidential information and copyrighted works.

43.     Plaintiff Staneart is the author and owner of the copyright in a number of original works, including without limitation, the following registered with the United States Copyright Office:

| TITLE | REG. NO. | REG. DATE |
|---|---|---|
| 28 leadership principles | TX0006339080 | February 8, 2006 |
| Fearless presentations instructor manual | TXu001282907 | February 8, 2006 |
| Fearless presentations participant manual | TX0006326631 | February 8, 2006 |

44.     The copyright registrations are currently valid, subsisting and in full force and effect. True and correct copies of the registration certificates are attached hereto as Exhibits C, D and E. The federal registration rights and common law rights in these original works are collectively referred to hereafter as the "Copyrighted Works."

45.    The Copyrighted Works were created and are used by Plaintiff in the provision of its charitable team building workshops and related services and helps to differentiate Plaintiff and its services from competitors.

46.    In addition to Plaintiff's trademarks, copyrights, and name and reputation, it has developed many valuable trade secrets and other confidential information which are key to its continued success.

47.    The most valuable of Plaintiff's trade secrets are its customer lists, which include contact information for individuals within each organization that are responsible for purchasing the services which Plaintiff sells.

48.    Plaintiff's customer lists includes over 400 of the Fortune 500 companies and the contacts within the customer lists are a very niche group of people who are extremely difficult and costly to identify.

49.    Extensive time and money has been spent since the formation of Plaintiff developing, expanding and protecting Plaintiff's customer lists.

50.    Plaintiff spent millions of dollars on advertising focused on its potential customer base which was designed to and did, in fact, aid and assist in the development of the specific customer lists and contacts which it holds and protects as trade secrets.

51.    There is not another way to obtain the extensive and detailed customer information which Plaintiff has compiled without years of extensive effort and enormous expense.

52.    Plaintiff's trade secrets, including its customer lists, are not known to its competitors or to the public and are even protected within its own internal system by passwords and non-disclosure agreements.

53.    Plaintiff's customer lists are maintained in Plaintiff's CRM system which is password

protected and only Plaintiff employees and independent contractors who have a specific need to access such information for the development of Plaintiff's business are given password access the CRM system; access to such information is for the exclusive purpose of carrying out and in furtherance of Plaintiff's business.

54.    During all times relevant to this suit, Plaintiff's independent contractors, including seminar instructors and sales personnel, including Defendant Jackson were engaged subject to the terms of the Independent Contractor Agreement for The Leader's Institute (TLI) Consultants, which agreement included a non-compete clause prohibiting the use of Plaintiff's customer lists for a period of 18 months after termination of such agreements.

55.    Additionally, all employees and independent contractors, including Defendants Jackson and Johnston, who are given access to Plaintiff's trade secrets, including course and event materials and instruction techniques, customer/client lists, client contact information, pricing methods, training materials, sales and marketing materials and strategies, financial information, inter alia, are advised orally that such information is confidential and proprietary to Plaintiff and must not be disclosed.

56.    More recently, employees, independent contractors and licensees of Plaintiff, as a condition of gaining access to Plaintiff's trade secrets and other confidential information, are required to sign a non-disclosure agreement whereby they are advised and agree that such information constitutes trade secrets, that each has a fiduciary responsibility to Plaintiff to keep confidential Plaintiff's trade secrets.  Defendant Johnston signed such an agreement and is bound thereby.

## VII.

### Defendants Jackson and Magnovo

57.     Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

58.     Defendant Jackson first entered into an independent contractor relationship with Plaintiff to conduct public speaking seminars in December 2006, and worked in such capacity with Plaintiff until approximately January 2009.  During such time period, Defendant Jackson became Vice President of Instruction for Plaintiff TLI.

59.     As an officer of Plaintiff TLI, Defendant Jackson had a fiduciary duty to Plaintiff and was also in a confidential relationship with Plaintiff.  Part of Defendant Jackson's duties as Vice President of Instruction included advising all instructors for Plaintiff of the confidentiality of Plaintiff's customer lists and the need to keep such information confidential.

60.     In January 2009, Plaintiff terminated its relationship with Defendant Jackson when it learned that Jackson and another independent contractor of Plaintiff were engaging in direct competition with Plaintiff through a business Jackson established in Texas, namely Magnovo, LLC, a Texas limited liability company with offices in Dickinson and Houston Texas, and which is the predecessor to Defendant Magnovo.

61.     Thereafter, in or about September 2010, Defendant Jackson contacted Plaintiff in Texas seeking to reestablish his contractual relationship with Plaintiff.

62.     Defendant Jackson contacted Plaintiff in Texas again in October of 2010, requesting to become an independent contractor of Plaintiff and offering to instruct classes wherever available across the United States and to pay his own travel expenses.

63.     In November 2010, Defendant Jackson again contacted Plaintiff regarding work, at which

time Plaintiff offered Jackson an upcoming Build-A-Bike® leadership and team building event in Texas if Defendant Jackson was willing to pay his own travel expenses.

64.     Defendant Jackson agreed to teach the course and flew to Texas at his own expense and taught the class in Grapevine, Texas.

65.     While in Texas, Defendant Jackson and Plaintiff met to discuss further Defendant's desire to enter into a new contractual arrangement with Plaintiff.  During such meeting in Texas, Defendant Jackson entered into a new Independent Contractor Agreement with Plaintiff.

66.     Pursuant to the terms of the Independent Contractor Agreement for The Leader's Institute, Jackson agreed as follows:

> Any client list developed through advertising or marketing from TLI, the course materials and instructional techniques used, and the goodwill generated by this client list and instruction materials and techniques are the intellectual property of TLI.  So by approving to the terms of this agreement, you also agree to not use the client list developed by you while working as an agent of TLI, or client lists developed by other TLI instructors, to compete with TLI for a period of 18 months after the termination of this agreement.

67.     The purpose of the foregoing covenant was to protect business goodwill, trade secrets and confidential information belonging to Plaintiff.

68.     During Defendant Jackson's second contractual relationship with Plaintiff, he taught classes across the United States, including Texas.  Several of Plaintiff's customer, including some of its Texas customers were repeat customers, who purchased additional classes and events over many years.

69.     While performing work for Plaintiff as an independent contractor working in Texas, Defendant Jackson took advantage of his confidential relationship with Plaintiff and access to Plaintiff's customers and intercepted and secured for himself a future contract for a public speaking seminar in Texas which Defendant admittedly taught in August 2013, the very month

that he terminated his contractual relationship with Plaintiff.

70.     Plaintiff will further show this Court that on other occasions, while in a confidential relationship with Plaintiff, Defendant Jackson interfered with the prospective contracts with other repeat customers of Plaintiff, for which there was a reasonable probability that such customers would have entered into contracts with Plaintiff but for Defendant Jackson's conduct.

71.     On August 1, 2013, Defendant Jackson gave written notice terminating his relationship with Plaintiff via email sent to Plaintiff in Texas.  Although Defendant Jackson allegedly returned to Plaintiff hard copies of materials that had been furnished by Plaintiff to Jackson, until Plaintiff received Defendant Jackson's written notice, Jackson had full access to Plaintiff's confidential proprietary information via his password protected access to Plaintiff's CRM system.

72.     On information and believe, Defendants Jackson and Magnovo, in violation of Plaintiff's rights in the Copyrighted Works, copied, distributed, reproduced, made derivative works or otherwise exploited the Copyrighted Works in connection with and while performing work for Plaintiff as an independent contractor and after termination of his relationship with Plaintiff. Specifically, Defendants Jackson and Magnovo copied, distributed, reproduced, made derivative works or otherwise exploited the Copyrighted Works and have used and continue to use the Copyrighted Works in providing charity team building and related services to customers.

73.     Defendants Jackson and Magnovo was aware of Plaintiff's exclusive rights in the Copyrighted Works prior to when Defendants Jackson and Magnovo copied, distributed, reproduced, made derivative works or otherwise exploited the Copyrighted Works and, therefore, misappropriated the Copyrighted Works intentionally and willfully.

74.     Approximately one week before Defendant Jackson terminated his relationship with

Plaintiff, the website for Jackson's company, Defendant Magnovo, was refreshed with changes which included listing several of Plaintiff's customers as companies which trust Magnovo, expressly implying that they were or are customers of Magnovo.

75.     Defendants Jackson and Johnston serviced the identified companies' accounts while in confidential relationships with Plaintiff and while performing services for Plaintiff as independent contractors.   The refreshed website also advertised "Texas Team Building' workshops and training events and included Dallas, Fort Worth, Houston, Plano, San Antonio and Waco as the Texas cities in which Magnovo provides its services.

76.     Additionally, Defendant Magnovo's interactive website advertised Bicycle Team Building Locations across the country including Texas and specifically identifying Dallas, Texas as a city in which its services were available.

77.     In or about December 2013, Plaintiffs became aware that Defendants Jackson and Magnovo were using numerous domain names, marks, phrases and terms that are identical or nearly identical to the Build-A-Bike® Mark to advertise and sell charity team building and related services in direct competition with Plaintiff.

78.     In or about October 2013, Defendant Jackson, registered the domain name www.letsbuildabike.com with knowledge of Plaintiff's federally registered Build-A-Bike® Mark and without Plaintiff's knowledge or consent.

79.     In or about January 2014, Defendant Jackson, registered the domain name www.charitybuildabike.com with knowledge of Plaintiff's federally registered Build-A-Bike® Mark and without Plaintiff's knowledge or consent.

80.     In or about January 2014, Defendant Jackson, registered the domain name www.buildabikecharity.com with knowledge of Plaintiff's federally registered Build-A-Bike®

Mark and without Plaintiff's knowledge or consent.

81.   In or about January 2014, Defendant Jackson, registered the domain name www.buildabikeforcharity.com with knowledge of Plaintiff's federally registered Build-A-Bike® Mark and without Plaintiff's knowledge or consent.

82.   The domain names www.letsbuildabike.com, www.charitybuildabike.com, www.buildabikecharity.com, and www.buildabikeforcharity.com (collectively, the Infringing Domains), incorporate Plaintiff's Build-A-Bike® Mark in its entirety. Thus, the Infringing Domains are confusingly similar to the Build-A-Bike® Mark and violate Plaintiff's trademark.

83.   Defendants Jackson and Magnovo posted multiples pages at the Infringing Domains with various extensions for sub-pages with all or most of the pages and sub-pages displaying the Build-A-Bike® Mark and/or nearly-identical and confusingly similar marks including BUILD A BIKE, LET'S BUILD A BIKE!, CHARITY BUILD A BIKE, BUILD A BIKE FOR CHARITY, BUILD BIKES FOR CHARITY and/or variations thereof (the "Infringing Marks").  Defendants Jackson and Magnovo also use the Infringing Marks in the title, page source, metatags, and/or picture files and text of the websites located at the Infringing Domains.

84.   Defendants Jackson's and Defendant Magnovo's use of the Infringing Domains and Infringing Marks on the websites located at the Infringing Domains give the impression to visitors that they were at Plaintiff's site.

85.   Defendants Jackson and Magnovo use the Infringing Domains and Infringing Marks to advertise and sell charity team building and related services in direct competition with Plaintiff.

86.   Defendants Jackson and Magnovo posted or allowed to be posted on the websites located at the Infringing Domains, the website located at www.mangnovo.com, other websites under the control of Defendants Jackson and Magnovo, and third-party websites, information that lead

potential customers to believe that Defendants Jackson and Magnovo are associated with Plaintiff and thereby used Plaintiff's goodwill to promote and sell competing services.

87.     Other third-party websites refer to Magnovo's services as "Build-A-Bike" and comprise infringing content that, at the least, stems from Defendant Johnson's and Defendant Magnovo's providing infringing content, which further leads potential customers to believe that Defendants Jackson and Magnovo are associated with Plaintiff.

88.     Defendants Jackson and Magnovo began using the Infringing Marks for charity team building and related services subsequent to Plaintiff's use and registration of the Build-A-Bike® Mark, without Plaintiff's permission, and with full knowledge of Plaintiff's ownership and long-time and continued use of the Build-A-Bike® Mark.

89.     Defendants Jackson and Magnovo registered and began using the Infringing Domains for charity team building and related services subsequent to Plaintiff's use and registration of the Build-A-Bike® Mark, without Plaintiff's permission, and with full knowledge of Plaintiff's ownership and long-time and continued use of the Build-A-Bike® Mark.

90.     Defendants Jackson and Magnovo were aware of Plaintiff's registration and use of the Build-A-Bike® Mark at the time it registered the Infringing Domains and, nonetheless, registered the Infringing Domains with the bad faith intent to profit from the goodwill and value associated with the Build-A-Bike® Mark and confuse customers and to divert them to the websites associated with the Infringing Domains.

91.     Defendants Jackson and Magnovo adopted the Infringing Marks in a deliberate attempt to confuse consumers and trade on the name, goodwill and reputation of Plaintiff, and registered the Infringing Domains with the bad faith intent to profit from the goodwill and value associated with the Build-A-Bike® Mark and confuse customers and to divert them to the websites

associated with the Infringing Domains.

92.    The Infringing Marks and Infringing Domains are identical or nearly-identical to the Build-A-Bike® Mark and convey substantially the same commercial impression as the Build-A-Bike® Mark.

93.    Plaintiffs, by correspondence dated on or about September 9, 2014, advised Defendants that the use of the Infringing Marks and Infringing Domains was likely to cause consumer confusion with its Build-A-Bike® Mark and requested that Defendants cease all references to the Build-A-Bike® Mark including on their websites, and to cease use the Infringing Marks, Infringing Domains, and any other marks or domain names that are identical or confusingly similar to the Build-A-Bike® Mark.

94.    Despite constructive and actual knowledge of Plaintiff's extensive rights in the Build-A-Bike® Mark and requests to cease using the Infringing Marks and Infringing Domains, Defendants Jackson and Magnovo continued such improper use.

95.    Defendants Jackson and Magnovo used and/or is using the Infringing Domains and Infringing Marks in conjunction with services and websites that directly compete with Plaintiff.

96.    Defendants Jackson and Magnovo are not affiliated with Plaintiff and are not authorized to use Plaintiff's trademarks or to profit from the goodwill Plaintiff has generated in the Build-A-Bike® Mark.

97.    Defendants Jackson and Magnovo have no legitimate reason to use Plaintiff's Build-A-Bike® Mark including in connection with their online commercial activities.

98.    Upon information and belief, Defendants Jackson and Magnovo knowingly and intentionally used the Build-A-Bike® Mark, Infringing Marks and Infringing Domains to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties,

as to some presumed but nonexistent affiliation, connection or association of Defendants Jackson and Magnovo with Plaintiff, or as to the origin, sponsorship, or approval of Jackson's and Magnovo's services by Plaintiff.

99.     Defendant Jackson's and Defendant Magnovo's knowing and intentional unauthorized use of the Build-A-Bike® Mark falsely indicates to the purchasing public that Defendants Jackson and Magnovo are affiliated, connected or associated with Plaintiffs, or are endorsed or approved by Plaintiffs, as believed to be intended by Defendants Jackson and Magnovo.

100.    Defendant Jackson's and Defendant Magnovo's use of the Infringing Marks and Infringing Domain names in connection with services that are similar and/or identical to those of Plaintiff's and directed to the same types of consumers and to solicit customers is likely to cause confusion, mistake or deception as to the source or origin of Defendant Jackson's and Defendant Magnovo's services, in that the public is likely to believe that Defendant Jackson's and Defendant Magnovo's services are affiliated with, sponsored by and/or approved, by Plaintiff, or indeed are Plaintiff's services.

101.    Defendant, in connection with the advertising and sale of services in connection with the Infringing Marks, which are confusingly similar to the Build-A-Bike® Mark, has intentionally held itself out to be affiliated with Plaintiffs and created a false association between the genuine services provided by Plaintiff and those associated with Defendants Jackson and Magnovo.

102.    Defendant Jackson's and Defendant Magnovo's infringing and violating conduct was undertaken intentionally, willfully and with wanton disregard of Plaintiff's right, and designed to unlawfully misappropriate and trade off Plaintiff's goodwill and reputation.

103.    Defendant Jackson's and Defendant Magnovo's use of the Infringing Marks and

Infringing Domains constitutes a clear violation of Plaintiff's federal trademark rights under the Lanham Act and common law rights in the Build-A-Bike® Mark.

104.    Furthermore, as stated above, it is uncontested that within weeks of terminating his contract with Plaintiff, Defendant Jackson, on behalf of Defendant Magnovo, taught a public speaking class, a service never before advertised by Magnovo, to one of Plaintiff's former customers in Texas whom Defendant Jackson had serviced on Plaintiff's behalf.  This was a result of Defendant's tortious conduct committed in Texas and a direct breach of the parties' contract.

105.    Additionally, upon information and belief, Defendants Jackson and Magnovo are utilizing Plaintiff's confidential and proprietary customer lists and contact information to continue to compete with Plaintiff to Plaintiff's detriment and harm and thereby giving Defendants Jackson and Magnovo an unfair competitive advantage and economic benefit which they would not otherwise have.

## VIII.

## **Defendants Short Splice and Johnston**

106.    Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

107.    In approximately 2008, Plaintiff contracted with Defendant Johnston to obtain sales services.

108.    In 2011 Defendant Johnston formed a corporation, Defendant Short Splice, and requested that Plaintiff contract with her corporation and that she would provide the same services in her capacity as president of Defendant Short Splice.

109.    Included in the services that Defendants Johnston and Short Splice provided to Plaintiff,

was the development of personal contacts within the organizational structure of Plaintiff's clients and prospective clients; such contacts were developed for Plaintiff and at Plaintiff's costs.

110.    To facilitate Defendant Johnston sales services for Plaintiff, Plaintiff entrusted to Defendants Short Splice and Johnston, Plaintiff's confidential and proprietary customer lists and contact information by providing Defendants Short Splice and Johnston with password protected access to Plaintiff's CRM system.

111.    Plaintiff advised Defendants Short Splice and Johnston of the importance of keeping their customer lists and contacts and pricing information confidential.

112.    Additionally, to facilitate making sales for Plaintiff, Defendants Short Splice and Johnston had direct access to Plaintiff's existing clients and had access to Plaintiff's trade secrets and confidential information including customer/client lists, client preferences and contact information, event materials and instruction techniques, training materials, sales and marketing materials and strategies, pricing methods, operating procedures, among other things.

113.    In connection with the receipt of such confidential, proprietary material, Defendant Johnston acknowledged her fiduciary relationship with Plaintiff and her responsibility to protect and keep confidential all of Plaintiff's trade secrets by entering into a non-disclosure agreement.

114.    Defendants Johnston and Short Splice have failed to return to Plaintiff the confidential and propriety information provided to them by Plaintiff, including without limitation, The Leader's Institute Corporate Handbook.

115.    Upon information and belief, Defendants Magnovo and Short Splice by and through their owners, members, agents and employees, including Defendants Jackson and Johnston, have possession of, have used and continue to use Plaintiff's confidential trade secrets, including Plaintiff's customer and prospective customer contact information, to sell competing services to

Plaintiff's customers and prospective customers, to Plaintiff's exclusion and financial detriment and in violation of the parties oral and written contracts, their confidential relationships with Plaintiff, and in violation of the Texas Uniform Trade Secrets Act.

**IX.**

**CAUSES OF ACTION**

116.    Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

  **A.**  **Infringement of Federally Registered Service Mark Under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1))**
    **(Defendant Jackson and Defendant Magnovo)**

117.    Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

118.    Defendants Jackson and Magnovo have infringed Plaintiff's rights in the Build-A-Bike® Mark in violation of 15 U.S.C. § 1114.

119.    Defendant Jackson's and Defendant Magnovo's acts constitute the use in commerce, without the consent of Plaintiffs, of a reproduction, counterfeit, copy, or colorable imitation of the federally registered Build-A-Bike® Mark, in connection with the sale, offering for sale, distribution, or advertising of services in a manner likely to cause confusion or mistake, or to cause mistake or to deceive, customers as to the affiliation, connection, or association of Defendants Johnson and Magnovo with Plaintiffs, or as to the origin, sponsorship or approval of Defendant Jackson's and Defendant Magnovo's services, and therefore infringes Plaintiff's rights in the Build-A-Bike® Mark in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

120.    Defendants Johnson and Magnovo are infringing the Build-A-Bike® Mark with full

knowledge of Plaintiff's rights, and such infringement is willful and intentional.

121.    Plaintiff has been damaged by Defendant Jackson's and Defendant Magnovo's willful and intentional acts of infringement and unless this Court restrains Defendants Johnson and Magnovo from further infringing conduct, Plaintiff will continue to suffer irreparable harm.

122.    Plaintiffs have no adequate remedy at law for Defendant Jackson's and Defendant Magnovo's ongoing wrongful conduct.

**B.    Counterfeiting of Federally Registered Service Mark Under Sections 32 and 34 of the Lanham Act (15 U.S.C. §§ 1114 and 1116)**
**(Defendant Jackson and Defendant Magnovo)**

123.    Plaintiffs allege and hereby incorporate by reference each and every of the allegations made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

124.    Defendants Jackson and Magnovo offered to sell, distributed, sold and/or advertised identical services in connection with one or more designations that are identical to, or substantially indistinguishable from the Build-A-Bike® Mark including, but not limited to, "LET'S BUILD A BIKE!".

125.    Defendants Jackson and Magnovo activities constitute counterfeiting of a federally registered mark under 15 U.S.C. § 1114(1) *et seq.*

126.    Defendant Jackson's and Defendant Magnovo's use of the infringing marks was willful, intentional, and done with the knowledge that the Infringing Marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

127.    Plaintiff has been damaged by Defendant Jackson's and Defendant Magnovo's willful and intentional acts of counterfeiting and unless this Court restrains Defendants Johnson and Magnovo from further infringing conduct, Plaintiff will continue to suffer irreparable harm.

128.    Plaintiffs is entitled to injunctive relief, and to recover damages and the Defendant

Jackson's and Defendant Magnovo's profits, all subject to trebling, statutory damages, costs, and reasonable attorneys' fees, all pursuant to 15 U.S.C. §§ 1114, 1116 and 1117.

129.    Plaintiffs have no adequate remedy at law for Defendant Jackson's and Defendant Magnovo's ongoing wrongful conduct.

### C.  Statutory Infringement and False Designation of Origin Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) (Defendant Jackson and Defendant Magnovo)

130.    Plaintiffs allege and hereby incorporate by reference each and every of the allegations made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

131.    The Build-A-Bike® Mark has become uniquely associated with and now identify Plaintiff's services throughout Texas and the United States.

132.    Plaintiffs own federal and common law trademark rights in the Build-A-Bike® Mark.

133.    Defendant Jackson's and Defendant Magnovo's acts constitute false designation of origin and/or false description or representation that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants Johnson and Magnovo with the Plaintiffs, or as to the origin, sponsorship or approval of Defendant Jackson's and Defendant Magnovo's services or other commercial activities by Plaintiff.

134.    Defendant intentionally engaged in conduct that constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

135.    Defendant's use in interstate commerce of the Infringing Marks is a willful attempt to trade upon Plaintiff's reputation and business goodwill and constitutes a false designation of origin and/or false or misleading description of fact. All of this is likely to lead the public into believing that this is some affiliation, connection or association between Defendants Johnson and Magnovo and Plaintiffs when, in fact, no such affiliation or connection exists.

136.    Defendant Jackson's and Defendant Magnovo's conduct constitutes an attempt to willfully and intentionally trade on the goodwill which Plaintiffs have developed in the Build-A-Bike® Trademark, all to the damage of Plaintiffs.

137.    As a result of Defendant Jackson's and Defendant Magnovo's conduct, Defendants Johnson and Magnovo have caused Plaintiff irreparable harm and injury and will continue to do so unless Defendants Johnson and Magnovo are restrained and enjoined by this Court from further violation of Plaintiff's rights.

138.    Plaintiffs have no adequate remedy at law for Defendant Jackson's and Defendant Magnovo's ongoing wrongful conduct.

>    **D.    Violations of the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d))**
>    **(Defendant Jackson and Defendant Magnovo)**

139.    Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

140.    The Infringing Domains are each identical or confusingly similar to the Build-A-Bike® Mark, which was distinctive at the time Defendants Johnson and Magnovo registered each of the Infringing Domains.

141.    Defendant adopted and registered each of the Infringing Domains with a bad faith intent to profit from the Build-A-Bike® Mark.

142.    Defendant Jackson's and Defendant Magnovo's activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

143.    Defendant Jackson's and Defendant Magnovo's actions were intentional and willful.

144.    Defendant Jackson's and Defendant Magnovo's use of the Infringing Domain Name has caused, and is likely to continue to cause, irreparable harm to Plaintiff's goodwill and reputation.

145.    As a result of Defendant Jackson's and Defendant Magnovo's conduct, Defendants Johnson and Magnovo have caused Plaintiff irreparable harm and injury and will continue to do so unless Defendants Johnson and Magnovo are restrained and enjoined by this Court from further violation of Plaintiff's rights.

146.    Plaintiffs have no adequate remedy at law for Defendant Jackson's and Defendant Magnovo's ongoing wrongful conduct.

### E.  Federal Copyright Infringement Under Copyright Action Sections 101 *et seq.* (17 U.S.C. § 501 *et seq.*)<br>(Defendant Jackson and Defendant Magnovo)

147.    Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

148.    Plaintiff is the sole owner of all right, title and interest to the Copyright Works and of all corresponding copyrights and Certificates of Registration.

149.    The Copyrighted Works consist of material original to Plaintiff and each is copyrightable subject matter.

150.    Defendant had access to and copied, distributed, or reproduced the Copyrighted Works and/or incorporated identical portions thereof into other works or made derivative works, and sold, displayed and/or distributed unauthorized copies or derivative works for financial gain, all in violation of Plaintiff's rights in the Copyrighted Works.

151.    Defendants Jackson and Magnovo have copied, distributed, reproduced, made derivative works or otherwise exploited the Copyrighted Words without the consent or authority of Plaintiff, thereby directly infringing the Copyrighted Works.

152.    Defendants' conduct constitutes infringement of the Copyrighted Works and exclusive rights under copyright in violation of 17 U.S.C. § 501 *et seq.*

153.   The infringement of the Copyrighted Works in and to each of the Copyrighted Works constitutes a separate and distinct act of infringement.

154.   The acts of infringement by Defendants Jackson and Magnovo have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of Plaintiff.

155.   As a result of Defendant Jackson's and Defendant Magnovo's conduct, Defendants Johnson and Magnovo have caused Plaintiff irreparable harm and injury and will continue to do so unless Defendants Johnson and Magnovo are restrained and enjoined by this Court from further violation of Plaintiff's rights.

156.   Plaintiffs have no adequate remedy at law for Defendant Jackson's and Defendant Magnovo's ongoing wrongful conduct.

### F.  Unfair Competition by Misappropriation
### (All Defendants)

157.   Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

158.   The actions of Defendants, as described above, in obtaining, retaining, and utilizing Plaintiff's customer lists, contact information, marketing and sales materials, and training and teaching materials, all of which Plaintiff developed through extensive time, skill, labor and money constitutes unfair competition through misappropriation in violation of state and Federal law.

159.   Defendants have gained financial benefit for themselves through use of Plaintiff's property because Defendants have not been burdened with the expenses incurred by Plaintiff to develop such information.

160.   Defendants have used Plaintiff's property to: (a) gain access to the market; (b) to prepare

PLAINTIFF'S ORIGINAL COMPLAINT–                                              Page 28

and make sales proposals to Plaintiff's prior customers and prospects; and (c) to conduct team-building events and teach public-speaking seminars to Plaintiff's prior customers and prospects.

161.    As a direct and proximate result of Defendants' wrongful acts, Plaintiff believes that it has lost customers and sales.

162.    Further, Plaintiff has lost the benefit of its investment of time, money and resources in building its customer base and sales prospects internal contact lists and other proprietary property.

163.    Upon information and belief, Defendants continue to engage in such unfair competitive practices and the ensuing damages to Plaintiff, therefore, are continuing and unabated.

164.    The continued wrongful use of Plaintiff's property will continue to cause Plaintiff immediate and irreparable harm that cannot adequately be addressed at law, for which Plaintiff seeks injunctive relief.

### G.  Texas Theft Liability Act
### (All Defendants)

165.    Plaintiff alleges and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

166.    Through their actions and conduct including, but not limited to, infringing Plaintiff's trademarks and copyrights, and misappropriating Plaintiff's confidential, proprietary and trade secret information for their own benefit, Defendants have committed theft under the laws of the state of Texas.

167.    Pursuant to Section 134.003 of the Texas Civil Practice and Remedies Code Defendants are liable to Plaintiffs for all damages, including additional and exemplary damages, suffered as a result of their theft.

### H. Conversion and Misappropriation of Trade Secrets
   (All Defendants)

168.   Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

169.   Defendants are liable to Plaintiff for conversion of their confidential and proprietary information and trade secrets.

170.   At all times relevant to this cause of action, Plaintiff was the exclusive owner of its trade secrets including its customer lists, customer contacts, information contained in is confidential CRM system, course and event materials and instruction techniques, pricing methods, training materials, sales and marketing materials and strategies, customer proposals and  financial information.

171.   Plaintiff developed its confidential, proprietary and trade secret information identified in the foregoing paragraph through extensive time, skill, labor and money.

172.   The confidential, proprietary and trade secret information is unique to Plaintiff, is not generally known to the public, is a valuable and integral asset to Plaintiff's business, and is maintained and treated by Plaintiff as trade secrets.

173.   Upon information and belief, before Defendants Jackson, Johnston and Short Splice terminated their contractual arrangements with Plaintiff, they unlawfully and without authority assumed dominion and control over Plaintiff's property as follows:

      a.   Customer lists and contact information;

      b.   Training materials;

      c.   Sales and marketing materials; and

      d.   Photographs from seminars and classes put on by Plaintiff.

174.   More specifically, Defendants took such property into their possession, custody and

control by accessing Plaintiff's password protected CRM system located on Plaintiff's server in Texas, not for the permitted purpose of making sales for Plaintiff but for the unlawful purpose of using such information to access the market in direct competition with Plaintiff, but without being burdened by spending the time and money necessary to create and compile such information.

175.    Defendants, after obtaining Plaintiff's confidential, proprietary, and trade secret information by improper means, is using such property in direct competition with Plaintiff's business, and is unlawfully receiving value as a result of such acts.

176.    Defendants' actions constitute the misappropriation of Plaintiff's trade secrets in violation of both Texas and Federal common law and the Texas Uniform Trade Secrets Act, Chapter 134A, Texas Civil Practice and Remedies Code, section 134A.001, *et seq.*

177.    Defendants' actions were committed with reckless indifference to Plaintiff's rights. Accordingly, Plaintiffs sue for punitive and exemplary damages with regard to this count.

178.    The continued wrongful use of Plaintiff's proprietary and confidential information and business trade secrets, and any disclosure of that information to third parties, will result in immediate and irreparable harm to Plaintiff that cannot be adequately addressed at law.

179.    Absent an order from this Court ordering Defendants to return the parties to the status quo that existed before Defendants misappropriated Plaintiffs property, by providing to Plaintiff its proprietary and confidential information and trade secrets, and enjoining them from using or disclosing such confidential information and trade secrets to others, Plaintiff will suffer continuing damages in excess of the minimal jurisdictional limits of this court.

180.    Plaintiff sues for the immediate return and replevin of its property and for all revenue collected by Defendants as a result of the unauthorized use of such property.

I. **Breach of Contract**
   **(Defendants Jackson and Johnston)**

181.   Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

182.   Defendant Jackson breached his contractual obligations under the Independent Contractor Agreement for The Leader's Institute™ (TLI) Consultants by which Defendant agreed not to use Plaintiff's intellectual property, including its client lists, to compete with Plaintiff for a period of eighteen (18) months after termination of the agreement, which in this case is no sooner than February 28, 2015.

183.   Defendant Jackson began using Plaintiff's customer list to compete with Plaintiff while still engaged as independent contractor for Plaintiff and continues to use Plaintiff's customer list to date.

184.   As a direct and proximate result of Defendant Jackson's breach of the Independent Contractor Agreement, Plaintiff has incurred damages, as forth below, for which it now sues.

185.   Defendant Johnston breached her contractual obligations under the non-disclosure agreement with Plaintiff by which Defendant agreed to keep confidential Plaintiff's trade secrets, including all client lists, sales and marketing strategies and materials, instructional techniques, class and event materials, vendors and the like.

186.   Defendant Johnston began to use and disclose Plaintiff's trade secrets to Defendant Jackson and others while still engaged as independent contractor for Plaintiff and continues to use Plaintiff's trade secrets to date to directly compete with Plaintiff to its detriment and damages.

187.   As a direct and proximate result of Defendant Johnston's breach of the non-disclosure agreement, Plaintiff has incurred damages, as forth below, for which it now sues.

### J.  Tortious Interference with Prospective Business Relations
### (Defendant Jackson and Johnston)

188.    Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

189.    As more fully described above, Defendants Jackson and Johnston took advantage of their confidential relationship with Plaintiff and their access to Plaintiff's proprietary information, including Plaintiff's customer lists and prospective customers internal contact list and wrongfully intercepted opportunities for future public speaking seminars and team building events.

190.    Rather than advising Plaintiff of its customer's or prospective customer's interest in scheduling a public speaking seminar or team-building event, Defendants Jackson and Johnston instead entered into contractual relations with such customers and prospective customers on behalf of Magnovo, including, without limitation,  contracts with Plaintiff's customers StatOil in Houston, Texas and Novartis in New Jersey.  Such actions violated Defendants Jackson's and Defendant Johnson's confidential relationship with Plaintiff and thus are independently tortious in nature.

191.    Because Plaintiff has previously contracted with the customers whose business Defendants Jackson and Johnston usurped and such customers were satisfied customers seeking additional services, it is reasonably probable that but for Defendants Jackson's and Defendant Johnson's interference, Plaintiff would have entered into additional contracts with such parties, including StatOil and Novartis.

192.    Defendants Jackson's and Defendant Johnson's interference with Plaintiff's prospective business relationships has caused damage to Plaintiff by depriving Plaintiff of profits it would otherwise have received under the contract, for which damages Plaintiff now sues.

# X.

## REQUEST FOR INJUNCTIVE RELIEF

193.    Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

194.    Defendants have violated 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(d), 17 U.S.C. § 501 *et seq.*, and TEX. CIV. PRAC. & REM. CODE § 134A.001, *et seq.*, and Plaintiff is, therefore, entitled to injunctive relief under 15 U.S.C. § 1116, 17 U.S.C. § 502 and TEX. CIV. PRAC. & REM. CODE § 134A.003.

195.    Plaintiff requests that the Court issue preliminary and permanent injunctive relief enjoining Defendants and their officers, directors, agents, employees, successors, assigns and attorney, and all other persons or entities in active convert or participation with Defendants who receive notice of the injunction by personal service or otherwise, from doing, aiding, causing or abetting the following:

   a.   Any use whatsoever of Plaintiff's service marks, specifically including the Build-A-Bike® mark, any phrases or marks including "BUILDABIKE" or a derivative thereof, and/or any confusingly similar phrases or marks including, but not limited to, "LETS BUILD A BIKE!", " CHARITY BUILD A BIKE," "BUILD A BIKE FOR CHARITY," and "BUILD BIKES FOR CHARITY";

   b.   Doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition, or quality of products and/or services created, developed, produced, distributed, marketed, advertised, promoted, offered for sale, or sold by Defendants;

   c.   Doing any act or things calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Plaintiff;

   d.   Any use of promotional materials created by and/or created for Plaintiff, including but not limited to pictures taken at Plaintiff's seminars, fund raising and/or promotional events;

e. Any use whatsoever, including reproducing, distributing, adapting, and/or publicly displaying the Copyrighted Works;

f. Any use whatsoever, including contacting, referencing, copying, and/or disclosing Plaintiff's customer/client lists or any specific information contained in the Customer Relations Management database (InfusionSoft) utilized by Plaintiff;

g. Any use whatsoever, including contacting, referencing, copying, and/or disclosing specific customer/client information developed by Defendants or other Defendant TLI instructors while providing services for Plaintiff which was not input into InfusionSoft, until February 1, 2015;

h. Maintaining any direct contact through any means, including without limitation social network contacts and connections with specific employees, agents, representative or contacts of Plaintiff's customers/clients, including any contacts established on Facebook, MySpace, LinkedIn or other social media site and specifically ordering Defendants to delete such contacts and connections currently established through any social media or other Internet source;

i. Any use whatsoever, including referencing, copying, and/or disclosing Plaintiff's confidential proprietary information and trade secrets including, but not limited to, Plaintiff's Corporate Handbook, pricing information, sales materials, including proposals, training materials, and event materials;

j. Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiff's businesses and the goodwill attached thereto; and

k. Otherwise infringing any rights of Plaintiff.

## XI.

## DAMAGES

196.   Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

197.   As a direct and proximate result of the Defendants' actions as alleged herein, Plaintiff has suffered actual damages and consequential damages in an amount in excess of the jurisdictional limits of this Court, for which Plaintiff now sues.

198.   Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to an award of compensatory

damages and profits from Defendants Johnson and Magnovo based on their infringement and counterfeiting of a federally registered mark, and requests that this award of damages and profits be trebled pursuant to 15 U.S.C. § 1117 as a result of Defendants' willful and intentional conduct and use of a counterfeit mark.

199.    Pursuant to 15 U.S.C. § 1117(c), Plaintiff is entitled to statutory damages between $1,000 and $200,000 per counterfeit mark, and up to $2,000,000 per counterfeit mark as a result of Defendant Johnson's and Defendant Magnovo's willful and intentional conduct.

200.    Pursuant to 15 U.S.C. § 1117(d), Plaintiff is entitled to statutory damages between $1,000 and $100,000 per infringing domain name.

201.    Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover damages and all profits Defendants Jackson and Magnovo have made as a result of their wrongful conduct.

202.    Alternatively, pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to statutory damages between $750 and $30,000 per infringed work, and up to $150,000 per infringed work as a result of Defendant Johnson's and Defendant Magnovo's willful and intentional conduct.

203.    With regard to Plaintiff's claims for conversion and misappropriation of Plaintiff's trade secrets and tortious interference with prospective contractual relations, in the alternative to actual damages, Plaintiff should be awarded all revenue Defendants derived from any client, former client or prospective client of Plaintiff that was generated as a result of the use of Plaintiff's confidential customer lists and contacts as that amount would represent Defendants' ill-gotten gain from their wrongdoing as alleged herein.

204.    Because Defendants' misappropriation of Plaintiff's trade secrets was willful and/or malicious, Plaintiff is also entitled to exemplary damages as provided by the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE § 134A.004(b), for which it now sues.

## XIII.

### ATTORNEY FEES

205.    Plaintiff alleges and hereby incorporates by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

206.    Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to an award of Plaintiff's attorneys' fees and costs.

207.    Pursuant to 17 U.S.C. § 505, Plaintiff is entitled to an award of Plaintiff's attorneys' fees and costs.

208.    As a result of Defendants' wrongful actions described above, it was necessary for Plaintiff to retain counsel to prosecute these claims for which Plaintiff has incurred reasonable and necessary attorney fees.  Under the Texas Civil Practice and Remedies Code § 38.001, Plaintiff is entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this lawsuit.  Additionally, Plaintiff may be justly entitled to attorney fees under the Texas Uniform Trade Secrets Act § 134A.005.

## XIII.

### JURY DEMAND

209.    Plaintiff demands a trial by jury on its claims alleged against Defendants.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff TLI and Plaintiff Staneart pray that Defendants Jackson, Magnovo, Johnston and Short Splice be cited to appear and answer and that after a hearing, the Court grant the following relief:

1. Order the transfer of the registration of the domain names www.letsbuildabike.com, www.charitybuildabike.com, www.buildabikecharity.com, and

www.buildabikeforcharity.com to Plaintiff TLI pursuant to 15 U.S.C. § 1125(d)(1)(C).

Alternatively, pursuant to 15 U.S.C. § 1125(d)(1)(C), Plaintiff requests that the Court

order the forfeiture or cancellation of the domain name registrations for

www.letsbuildabike.com, www.charitybuildabike.com, www.buildabikecharity.com, and

www.buildabikeforcharity.com.

2.  Order the impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) of all infringing copies

    of the Copyrighted Works.

3.  A temporary injunction be issued, after notice to Defendants Jackson, Magnovo.

    Johnston, and Short Splice and an evidentiary hearing, ordering the Defendants Jackson,

    Magnovo. Johnston, and Short Splice and any employees, representatives, agents,

    partners, associates, affiliates and all persons acting in concert or in active participation

    with Defendants:

    a.  Any use whatsoever of Plaintiff's service marks, specifically including the Build-A-Bike® mark, any phrases or marks including "BUILDABIKE" or a derivative thereof, and/or any confusingly similar phrases or marks including, but not limited to, "LETS BUILD A BIKE!", " CHARITY BUILD A BIKE," "BUILD A BIKE FOR CHARITY," and "BUILD BIKES FOR CHARITY";

    b.  Doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition, or quality of products and/or services created, developed, produced, distributed, marketed, advertised, promoted, offered for sale, or sold by Defendants;

    c.  Doing any act or things calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Plaintiff;

    d.  Any use of promotional materials created by and/or created for Plaintiff, including but not limited to pictures taken at Plaintiff's seminars, fund raising and/or promotional events;

    e.  Any use whatsoever, including reproducing, distributing, adapting, and/or publicly displaying the Copyrighted Works;

    f.   Any use whatsoever, including contacting, referencing, copying, and/or disclosing Plaintiff's customer/client lists or any specific information contained in the Customer Relations Management database (InfusionSoft) utilized by Plaintiff;

    g.   Any use whatsoever, including contacting, referencing, copying, and/or disclosing specific customer/client information developed by Defendants or other Defendant TLI instructors while providing services for Plaintiff which was not input into InfusionSoft, until February 1, 2015;

    h.   Maintaining any direct contact through any means, including without limitation social network contacts and connections with specific employees, agents, representative or contacts of Plaintiff's customers/clients, including any contacts established on Facebook, MySpace, LinkedIn or other social media site and specifically ordering Defendants to delete such contacts and connections currently established through any social media or other Internet source;

    i.   Any use whatsoever, including referencing, copying, and/or disclosing Plaintiff's confidential proprietary information and trade secrets including, but not limited to, Plaintiff's Corporate Handbook, pricing information, sales materials, including proposals, training materials, and event materials;

    j.   Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiff's businesses and the goodwill attached thereto; and

    k.   Otherwise infringing any rights of Plaintiff.

4. A permanent injunction be issued, on final trial of this cause, ordering the Defendants Robert Jackson, Magnovo Training Group, Inc., Colette Johnston and Short Splice, Inc. and any employees, representatives, agents, partners, associates, affiliates and all persons acting in concert or in active participation with Defendants:

    a.   Any use whatsoever of Plaintiff's service marks, specifically including the Build-A-Bike® mark, any phrases or marks including "BUILDABIKE" or a derivative thereof, and/or any confusingly similar phrases or marks including, but not limited to, "LETS BUILD A BIKE!", " CHARITY BUILD A BIKE," "BUILD A BIKE FOR CHARITY," and "BUILD BIKES FOR CHARITY";

    b.   Doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition, or quality of

products and/or services created, developed, produced, distributed, marketed, advertised, promoted, offered for sale, or sold by Defendants;

c. Doing any act or things calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Plaintiff;

d. Any use of promotional materials created by and/or created for Plaintiff, including but not limited to pictures taken at Plaintiff's seminars, fund raising and/or promotional events;

e. Any use whatsoever, including reproducing, distributing, adapting, and/or publicly displaying the Copyrighted Works;

f. Any use whatsoever, including contacting, referencing, copying, and/or disclosing Plaintiff's customer/client lists or any specific information contained in the Customer Relations Management database (InfusionSoft) utilized by Plaintiff;

g. Any use whatsoever, including contacting, referencing, copying, and/or disclosing specific customer/client information developed by Defendants or other Defendant TLI instructors while providing services for Plaintiff which was not input into InfusionSoft, until February 1, 2015;

h. Maintaining any direct contact through any means, including without limitation social network contacts and connections with specific employees, agents, representative or contacts of Plaintiff's customers/clients, including any contacts established on Facebook, MySpace, LinkedIn or other social media site and specifically ordering Defendants to delete such contacts and connections currently established through any social media or other Internet source;

i. Any use whatsoever, including referencing, copying, and/or disclosing Plaintiff's confidential proprietary information and trade secrets including, but not limited to, Plaintiff's Corporate Handbook, pricing information, sales materials, including proposals, training materials, and event materials;

j. Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiff's businesses and the goodwill attached thereto; and

k. Otherwise infringing any rights of Plaintiff.

5. Order Defendant to provide an accounting of all revenues, and profits related to Defendant Johnson's and Defendant Magnovo's infringement of the Copyrighted Works in accordance with 17 U.S.C. § 504(b);

6.  Judgment against Defendants for damages in a sum within the jurisdictional limits of the Court;

7.  Replevy of Plaintiff's property as described above;

8.  Prejudgment and post-judgment interest as provided by law;

9.  Exemplary damages;

10. Reasonable and necessary attorney fees;

11. Costs of court; and

12. Such other and further relief at law or in equity as Plaintiffs may be justly entitled.


Respectfully submitted,

/s/ Cynthia A. Cook
Cynthia A. Cook
Texas State Bar No.:  04508025
BROWN, PC
500 Main Street, Suite 400
Fort Worth, TX  76102
Cynthia.Cook@Brownpc.com
Ph:  (817) 870-0025 Fax:  (817) 870-0515

Roxanne Edwards
Texas State Bar No.:  24026817
Brown, PC
200 Crescent Court, Suite 450
Dallas, TX  75201
Ph:  (214) 612-7802 Fax:  (214) 389-8139
COUNSEL FOR PLAINTIFFS

## VERIFICATION

THE STATE OF TEXAS          §
                            §
COUNTY OF TARRANT           §

Before me, the undersigned authority, on this day personally appeared DOUG STANEART, who, upon oath, deposes and says that he has read the foregoing Plaintiffs' Original and the factual statements contained therein are within his personal knowledge and are true and correct.

_____
DOUG STANEART

Subscribed and sworn to before me on this the ___2___ day of _Octoßer_____, 2014.

_____
Notary Public in and for
The State of Texas

HAILEY SCHLEGEL
Notary Public, State of Texas
My Commission Expires
March 30, 2015

PLAINTIFF'S ORIGINAL COMPLAINT–                                    Page 42