UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE LEADER'S INSTITUTE, LLC and DOUG STANEART, | § § § § § | |
| *Plaintiffs and Counter-Defendants*, | | |
| v. | § § § | Case No. 3:14-cv-03572-B |
| ROBERT JACKSON, and MAGNOVO TRAINING GROUP, LLC, | § § § § | |
| *Defendants and Counter-Plaintiffs*. | § | |

**BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now, Defendant Rob Jackson ("Jackson") and files this his Brief in Support of Motion for Partial Summary and shows the Court the following:

### I.     Summary of Relief Sought

1.     Defendant Jackson seeks a partial summary judgment on the following claims which Plaintiffs assert only against him individually: unfair competition by misappropriation, misappropriation of trade secrets, conversion, breach of contract and tortious interference with prospective business relations.

2.     After nearly three years of litigation and more than sufficient time allowed for discovery including depositions, third party subpoenas and document production, Plaintiffs are unable to adduce any competent evidence in support of one or more elements of the above-listed claims.  As such, partial summary judgment on those claims is appropriate.

## II. Procedural Status of the Case

3. Prior to filing this lawsuit on October 2, 2014, Plaintiffs previously filed essentially the very same claims in Texas state district court in Tarrant County, Texas in October of 2013. Plaintiffs unilaterally dismissed those claims without prejudice during the first half of 2014.

4. This case is presently set on the Court's trial docket for the week of October 28, 2016. Discovery in this case closed on July 20, 2016. Hence, sufficient time has passed to allow for discovery of all of the issues that are the subject of this motion for partial summary judgment.

## III. Factual Allegations Common to Relief Sought

### A. Plaintiffs' Contentions

5. According to Plaintiffs' Third Amended Complaint, Jackson was an independent contractor of The Leader's Institute ("TLI").[1] Plaintiffs contend that a certain Independent Contractor Agreement ("the 2011 Agreement"), which Plaintiffs claim was executed by Jackson after he rejoined TLI in 2010, governed Jackson's relationship with Plaintiffs.[2] For his part, Jackson denies he ever signed the 2011 Agreement and instead maintains that his signature on the same is a fabrication.[3] However, for the purposes of this motion for partial summary judgment, Jackson proceeds as though the 2011 Agreement is in force and governs the relationship between the parties as Plaintiffs contend.

6. On or about August 1, 2013, Jackson gave formal notice to Doug Staneart that he would no longer perform services for TLI.[4]

7. The language of the 2011 Agreement that is relied upon by Plaintiffs provides in pertinent part as follows:

---

[1] Plaintiffs' Third Amended Complaint at Paragraph 61 (Docket No. 82)
[2] Id. at Paragraph 61 (Docket No. 82)
[3] App. at 1; Decl. of R. Jackson at Paragraph 4
[4] App. at 2; Decl. of R. Jackson at Paragraph 5

> Any client list developed through advertising or marketing from TLI, the course materials and instructional techniques used, and the goodwill generated by this client list and instruction materials and techniques are the intellectual property of TLI. so by approving to the terms of this agreement, you also agree to not use the client list developed by you while working as an agent of TLI, or client lists developed by other TLI instructors, to compete with TLI for a period of 18 months after the termination of this agreement. [5]

8. According to Plaintiffs, *"The purpose of the foregoing covenant was to protect business goodwill, trade secrets, and confidential information belonging to Plaintiffs."*[6]

9. Furthermore, Plaintiffs explain that their customer lists are maintained on their password protected *"CRM system"* to which Jackson had access prior to August 1, 2013. Jackson does not dispute that prior to August 1, 2013 he had access to TLI's CRM database.

10. Plaintiffs also allege *"on information and belief"* that Jackson copied Plaintiffs' customer contact list and/or has utilized such confidential proprietary trade secrets in direct competition with Plaintiff. Plaintiffs further allege that at least as early as July 2013, while still employed by Plaintiff TLI, Defendant Jackson began contacting Plaintiffs' customers to sell the services of Defendant Magnovo.

11. Plaintiffs allege that while working as an independent contractor for TLI, that Jackson *"took advantage of his confidential relationship with Plaintiffs and access to Plaintiffs' customers and intercepted and secured for himself a future contract for a public speaking seminar . . ."*[7]

12. Plaintiffs further allege *"on information and belief"* that Jackson interfered with prospective contracts with other repeat customers of Plaintiffs including but not limited to, Novartis Consumer Health, Inc. and Royal Caribbean Cruise Line."

---

[5] Plaintiffs' Third Amended Complaint at Paragraph 60. (Docket No. 82)
[6] Id. at Paragraph 61.
[7] Id. at Paragraph 47.

13. Finally, Plaintiffs claim that Defendants are utilizing Plaintiffs' customer lists and contact information well as certain "trade secrets" of TLI including their training, sales, marketing, and pricing materials to continue to compete with TLI.[8]

### B. Defendant Jackson's Factual Averments

14. As a preliminary matter, nothing in the 2011 Agreement prohibits the independent contractor, in this case Jackson, from selling or marketing services similar to those offered by TLI, or from competing directly with TLI even while still performing independent contractor services for TLI. Instead, the operative language of the 2011 Agreement cited by Plaintiffs simply prohibits the *use* of TLI's client lists and customer information for a period of eighteen months in connection with any competition against TLI.

15. Mr. Jackson, as an independent contractor, was free to offer services that competed with those sold by TLI as long as TLI's customer lists and contact information were not used by him to secure such business.

16. As detailed in his Declaration, Mr. Jackson was contacted by Royal Caribbean, StatOil, and Novartis, prior to August 1, 2013 and asked about providing workshops.[9] Mr. Jackson informed both StatOil and Novartis that he would no longer be with TLI after August 1, 2013 and that accordingly, if they desired TLI's Fearless Presentation seminars, he would pass that on to TLI. Both StatOil and Novartis made it clear that they were looking to engage him to teach customizable seminars. Accordingly, Mr. Jackson entered into agreements with each of StatOil and Novartis prior to August 1, 2013 for seminars he would teach after that date.

17. With respect to Royal Caribbean, Rob Jackson had a long standing friendship with a Mr. Bert Van Mitendorf who at the time was with Azamara Club Cruises. In early 2013, Mr.

---

[8] Id. at Paragraph 99.
[9] App. at Paragraph 3-4; Decl. of R. Jackson at Paragraphs 9-11

Van Mitendorf asked Rob Jackson to teach certain DiSC workshops for Azamara. This is a workshop that was not even offered by TLI. Thereafter, Mr. Jackson was introduced to Mr. Larry Pimental who was in charge of the shore excursions departments for each of Royal Caribbean, Azamara, and Celebrity Cruises. Mr. Pimental subsequently asked Mr. Jackson to provide DiSC workshops to each of those entities.[10]

18. In each of the three pre-August, 2013 cases described above (Royal Caribbean, Novartis, and StatOil), at no time did Jackson make use of TLI's customer lists or client contact information to secure the business. In fact, in each instance, contact was not even initiated by Jackson but rather, was initiated by each of Novartis, Royal Caribbean, and StatOil.

19. Jackson never copied or downloaded Plaintiffs' customer and client contact information from Plaintiffs' CRM system. In fact, neither Jackson nor anyone working on his behalf even initiated contact with prospective customers of Magnovo including those who might have been former TLI customers. Instead, Defendants developed websites and invested heavily in search engine optimization so that prospective customers would fill in web lead forms or call a toll free line for more information.

20. Just as with the time period during which Jackson was an independent contractor for TLI, after August 1, 2013, neither Jackson nor anyone acting on his behalf or on behalf of Magnovo made use of any TLI's customer lists or client contact information to compete against TLI.

21. Additionally, and as set forth in the Declaration of Robert Jackson, neither he nor anyone acting on his behalf made use of any TLI pricing information, training manuals, sales or

---

[10] App. at Paragraph 3-4; Decl. of R Jackson at Paragraph 9-11.

marketing materials or other information such as TLI's Corporate Handbook described in Plaintiffs' Third Amended Complaint in order to compete against Plaintiffs.

## IV. Summary Judgment Evidence

22. Set forth in a separate Appendix, Jackson has attached the Declaration of Robert Jackson. Additionally, Defendants have attached the Third Amended Interrogatory Responses of Plaintiffs. As discussed herein, the Declaration of Mr. Jackson demonstrates that Jackson has not made use of any trade secrets of Plaintiffs in connection with his Magnovo Training Group, LLC.

23. The First Amended Interrogatory Responses of Plaintiffs demonstrate that Plaintiffs, even at this late stage of the litigation, have still not moved from the "information and belief" realm to the world of hard evidence. In response to Interrogatories Nos. 6-13 which made specific inquiry vis the evidentiary basis for Plaintiffs claims that Defendant Jackson misused TLI's ostensibly proprietary information to improperly compete against TLI (which is the common basis underlying each of the claims for which partial summary judgment is sought here), Plaintiffs provided the same vague, stock, laundry list answer that provided no specificity whatsoever thereby demonstrating Plaintiffs' lack of evidence.[11]

## V. Arguments and Authorities

### A. Legal Standard for Summary Judgment

24. Summary judgment is appropriate where the movant demonstrates that there are no genuine disputes of material fact and that movant is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Baton Rouge Oil & Chem. Workers Un. v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

---

[11] App. at15-25; Plaintiffs' First Amended Interrogatory Responses

### B.     *No Evidence of Unfair Competition by Misappropriation*

25.     The elements of this cause of action are as follows:  (1) the creation of Plaintiff's product through extensive time, labor, skill and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition; and (3) commercial damage to plaintiff.  *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 839 (5th Cir. 20014).

26.     Plaintiffs' claim fails with respect to the second element as Plaintiffs cannot present any evidence demonstrating that Jackson or anyone acting on his behalf, used TLI's customer lists and contact information or their pricing information, training materials and/or marketing and sales materials to compete for customers against TLI either before or after August 1, 2013.  In contrast, the Declaration of Robert Jackson attests to the fact that he never used any of the aforementioned materials to compete against TLI.[12]

### C.     *No Misappropriation of Trade Secrets by Jackson*

27.     The elements of misappropriation of trade secrets are:  (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages.  *Trilogy Software, Inc. v. Callidius Software, Inc.*, 143 S.W.3d 452, 463 (Tex.App. – Austin 2004, petition denied).

28.     Here, Plaintiffs cannot adduce evidence to support the third element of the claim as Defendant Jackson has not used any of TLI's customer lists and contact information, pricing information, training materials and sales and marketing materials to compete with TLI.[13]  Additionally, to the extent that Plaintiffs are claiming that "photographs" are trade secrets, they are not, given that under the UTSA a trade secret has three basic characteristics:   (1) it is secret;

---

[12] App. at 2-4
[13] App. at 2-4

(2) it confers a competitive advantage on its owner; and (3) it is subject to reasonable efforts to maintain its secrecy. Photographs necessarily fail to meet at least the first and third of the above elements.

### D. No Conversion by Jackson as Alleged by Plaintiffs

29. The elements of conversion are (1) plaintiff owned, possessed, or had right of immediate possession of the property; (2) defendant wrongfully exercised dominion or control over the property to the exclusion of and inconsistent the plaintiff's rights; (3) the plaintiff demanded return of the property, and (4) defendant failed to return it. *Ojeda v. Wal-Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex.App. – San Antonio 1997, petition denied).

30. Again, this claim fails with respect to at least the second and third elements of the same. Per the declaration of Rob Jackson, he never used TLI's customer lists/contact information, pricing information, marketing and sales materials and training materials to compete against TLI either before or after August 1, 2013.[14] Additionally, it would be difficult even under the allegations pled by Plaintiffs to see how they would satisfy the "to the exclusion of and inconsistent with plaintiff's rights element."

### E. No Breach of Contract by Jackson

31. The elements of a breach of contract claim under Texas law are: (1) the existence of a contract; (2) the plaintiff performed or tendered performance according to the terms of the contract; (3) the defendant breached the contract; and (4) plaintiff sustained damages as a result of the breach. *Valero Marketing & Supply v. Kalama International,* 51 S.W.3d 1, 17 (Tex.App.— Houston [1st Dist. 2005, petition denied).

---

[14] App. at 2-4

32. Plaintiffs cannot satisfy the third element given that Jackson never copied Plaintiffs' customer lists/contact information or used the same to compete against TLI.[15] Moreover, Jackson states unequivocally in his declaration that he never used any of TLI's pricing information, training materials, and/or sales and marketing materials to compete against TLI.[16]

### F. No Tortious Interference with Prospective Business Relations

33. The elements of a tortious interference claims are as follows: (1) there was a reasonably probability that plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused plaintiff's injury; and (5) plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apt. Corp.,* 417 S.W.3d 909, 923 (Tex. 2013).

34. Plaintiffs' claim here fails at least with respect to the third element above. There was nothing wrongful about Jackson accepting business from StatOil, Royal Caribbean, or Novartis prior to August 1, 2013 as he was an independent contractor and Plaintiffs can point to no contractual restrictions prohibiting him from accepting such business even from TLI's own customers as long as he was not using TLI's customer contact list/information, pricing information, sales materials and training and marketing materials in connection with such business. The same applies to Jackson's post-August 1, 2013 conduct. In other words, there was nothing tortious about him doing business with TLI customers as long as he did not make use of the aforementioned laundry list of materials which, per his declaration, Jackson expressly says he did not.[17]

---

[15] App. at 2-4
[16] App. at 2-4
[17] App. at Paragraph 1-4

### VI. Prayer

35. Defendant Jackson prays that this Court grant partial summary judgment in his favor with respect to the claims for unfair competition by misappropriation, misappropriation of trade secrets, conversion, breach of contract, and tortious interference.

Dated: August 1, 2016

Respectfully submitted,

By: s/ William K. Doss
Steven G. Cracraft, IN Bar No. 3417-49
William K. Doss, IN Bar No. 20097-29
Amy A. Rollins, IN Bar No. 31788-49
**BRANNON SOWERS & CRACRAFT PC (Lead Counsel)**
1 North Pennsylvania Street, Suite 800
Indianapolis, Indiana 46204
Phone: (317) 630-2810
Fax: (317) 630-2813
Email: scracraft@bscattorneys.com
wdoss@bscattorneys.com
arollins@bscattorneys.com

Michael V. Marconi, TX Bar No. 00784524
9284 Huntington Square, Suite 100
North Richland Hills, TX 76182
Phone: (214) 682-3592
Fax: (817) 479-2210
Email: Michael@dkdavislaw.com

Allen R. Vaught, TX Bar No. 24004966
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
avaught@baronbudd.com

**ATTORNEYS FOR DEFENDANTS ROBERT JACKSON AND MAGNOVO TRAINING GROUP, LLC**

## CERTIFICATE OF SERVICE

       On August 1, 2016 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record in this lawsuit electronically.

                                              s/ William K. Doss
                                              William K. Doss