IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE LEADER'S INSTITUTE, LLC | § | |
| And DOUG STANEART, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:14-cv-03572-B |
| | § | |
| ROBERT JACKSON and MAGNOVO | § | |
| TRAINING GROUP, LLC, | § | |
| | § | JURY TRIAL DEMANDED |
| Defendants. | § | |

**PLAINTIFFS' BRIEF IN SUPPORT OF**
**THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 1

III.    SUMMARY JUDGMENT STANDARD .......................................................... 6

IV.     ARGUMENT ....................................................................................................... 7

    A.    As a matter of law, Plaintiffs have not committed abuse of process. .................... 7

    B.    Without evidence of a contractual relationship or damages, summary judgment
          should be granted on Defendants' tortious interference claim. ............................. 9

    C.    Defendants' fraud claim fails because they have no evidence of reliance and there
          can be no claim for fraud on the Patent and Trademark Office regarding a
          trademark not being asserted in this lawsuit. ....................................................... 11

    D.    Defendants' defamation fails because they cannot prove that any published false
          statements caused any damages. .......................................................................... 13

    E.    Plaintiffs are entitled to summary judgment on Defendants' counterclaim to
          cancel Plaintiffs' Mark because Defendants cannot meet their initial burden of
          making a prima facie case that Plaintiffs' Mark has no secondary meaning........ 15

        1.    Plaintiffs' Mark is entitled to a strong presumption of validity, including a
              presumption that it has acquired distinctiveness...................................... 17

        2.    In order to move forward with its counterclaim to cancel Plaintiffs' Mark,
              Defendants must first make a prima facie case that Plaintffs' Mark has no
              acquired distinctiveness. .......................................................................... 17

        3.    Defendants lack sufficient evidence to establish a prima facie case that
              Plaintiffs' Mark lacks acquired distinctiveness; as such, Plaintiffs are
              entitled to summary judgment on Defendants' cancellation
              counterclaim............................................................................................. 21

    F.    Defendants are not entitled to attorney's fees based on the dismissal without
          prejudice of TLI's copyright claims because Defendants are not "prevailing
          parties" as required by the Copyright Act............................................................ 22

        1.    A party that has been dismissed without prejudice is not a "prevailing
              party" under the Copyright Act................................................................. 22

2.      TLI's copyright infringement claims against Defendants were dismissed without prejudice; therefore, Defendants cannot recover any attorney's fees in connection with TLI's copyright infringement claims.................. 23

G.      TLI is entitled to summary judgment of non-infringement on Defendants' copyright infringement claims. ............................................................. 24

1.      TLI is entitled to summary judgment of non-infringement because "framing," "linking," or otherwise redirecting Internet traffic does not constitute copyright infringement as a matter of law................................ 24

a.      Technical Background .................................................. 24

b.      Example of Framing ................................................... 25

c.      *Perfect 10, Inc. v. Amazon.com, Inc.* ............................ 27

d.      The Accused Framing ................................................. 28

2.      In any event, Defendants are barred from recovering any damages for the alleged copyright infringement as a matter of law.................................... 29

a.      Overview of 17 U.S.C. § 412....................................... 29

b.      Timeline of Alleged Infringement ................................ 29

c.      Actual Damages ....................................................... 30

H.      Summary Judgment Should be Granted on Defendants' "Equitable" affirmative defenses............................................................................................... 31

V.      CONCLUSION.................................................................................. 34

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.,*
   722 F.3d 1229 (10th Cir. 2013) ............................... 33

*Balsley v. LFP, Inc.,*
   691 F.3d 747 (6th Cir.2012) ........................... 22

*Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.,*
   550 F. Supp. 2d 657 (W.D. Tex. 2008).................... 31, 32

*Breitling v. LNV Corp.,*
   No. CV 3:15-CV-0703-B, 2015 WL 5896131 (N.D. Tex. Oct. 5, 2015) .............. 7, 11, 12

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,*
   532 U.S. 598 (2001)........................... 22

*Cadkin v. Loose,*
   569 F.3d 1142 (9th Cir.2009) ........................ 22

*Carson v. Dynegy, Inc.,*
   344 F.3d 446 (5th Cir. 2003) ...................... 32

*CHM Indus., Inc. v. Structural & Steel Products, Inc.,*
   2008 WL 4777679 (N.D. Tex. 2008)..................... 29, 30

*Clinton E. Worden & Co. v. Cal. Fig Syrup Co.,*
   187 U.S. 516 (1903)........................... 33

*Cold War Museum, Inc. v. Cold War Air Museum, Inc.,*
   586 F.3d 1352 (Fed. Cir. 2009)........................ 17, 18

*Cottonwood Fin. Ltd. v. Cash Store Fin. Services, Inc.,*
   778 F. Supp. 2d 726 (N.D. Tex. 2011) ........................ 20

*Detenbeck v. v. Koester,*
   886 S.W.2d 477 (Tex. App.—Houston [1st Dist.] 1994, no writ)................ 7, 8

*DP Sols., Inc. v. Rollins, Inc.,*
   353 F.3d 421 (5th Cir. 2003) ......................... 10

*Gillum v. Republic Health Corp.*,
    778 S.W.2d 558 (Tex. App.—Dallas 1989, no writ) ........................................................ 9

*GlobeRanger Corp. v. Software AG*,
    27 F. Supp. 3d 723 (N.D. Tex. 2014) ......................................................... 9, 10

*Hancock v. Variyam*,
    400 S.W.3d 59 (Tex. 2013)....................................................................... 13, 14, 15

*Healthpoint, Ltd. v. Ethex Corp.*,
    273 F. Supp. 2d 817 (W.D. Tex. 2001)........................................................ 34

*Hunt v. Baldwin*,
    68 S.W.3d 117 (Tex. App.—Hous. [14th Dist.] 2001, no pet.)....................... 7

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015)...................................................................... 14

*Klein & Assocs. Political Relations v. Port Arthur ISD*,
    92 S.W.3d 889 (Tex. App.—Beaumont 2002, pet. denied).............................. 7

*Lightsource Analytics, LLC v. Great Stuff, Inc.*,
    A-13-CV-931 LY, 2014 WL 4744789 (W.D. Tex. Sept. 23, 2014)................... 22, 23, 24

*Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC*,
    745 F.3d 877 (8th Cir. 2014) ...................................................... 17, 18, 19, 20

*Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*,
    797 F.2d 227 (5th Cir.1986) ...................................................................... 10

*Matsushita Elec. Indus.* Co. *v. Zenith Radio Corp.*,
    415 U.S. 475 (1986)................................................................................... 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .......................................................... 24, 27, 28, 29

*Primesource Bldg. Products, Inc. v. Hillman Group, Inc.*,
    3:14-CV-2521-B, 2015 WL 11121367 (N.D. Tex. Mar. 31, 2015)................... 20

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*,
    655 F. Supp. 2d 679 (S.D. Tex. 2009) ......................................................... 31

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)................................................................................... 6

*Reservoir, Inc. v. Truesdell*,
   1 F. Supp. 3d 598 (S.D. Tex. 2014) .............................................. 32, 33

*Riviera Distribs., Inc. v. Jones*,
   517 F.3d 926 (7th Cir. 2008) ........................................................ 22

*RRR Farms Ltd. v. American Horse Prot. Ass'n*,
   957 S.W.2d 121 (Tex. App.—Hous. [14th Dist.] 1997, pet. denied) ............ 7, 8

*S & A Marinas, Inc. v. Leonard Marine Corp.*,
   875 S.W.2d 766 (Tex. App.—Austin 1994, writ denied) ................................. 9

*S. Snow Mfg. Co. v. Sno Wizard Holdings, Inc.*,
   CIV.A. 06-9170, 2011 WL 6300370 (E.D. La. Apr. 18, 2011) ....................... 17

*Source, Inc. v. SourceOne, Inc.*,
   2006 WL 2381594 (N.D.Tex. Aug. 16, 2006) .................................... 32

*Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*,
   553 F. Supp. 2d 680 (N.D. Tex. 2008) ...................................... 11, 13

*Tesco Corp. v. Weatherford Int'l, Inc.*,
   632 F.Supp.2d 654 (S.D.Tex.2009) ........................................... 33

*Texas Int'l Prop. Associates v. Hoerbiger Holding AG*,
   624 F. Supp. 2d 582 (N.D. Tex. 2009) .......................................... 12

*Torres–Negron v. J & N Records, LLC*,
   504 F.3d 151 (1st Cir. 2007) ...................................................... 23

*US Risk Ins. Group, Inc. v. U.S. Risk Mgmt., LLC*,
   3:11-CV-2843-M-BN, 2013 WL 4504754 (N.D. Tex. Aug. 20, 2013) .................. 17, 18

**Statutes**

15 U.S.C. § 1052(f) ................................................................. 17, 22

15 U.S.C. § 1115 ...................................................................... 22

15 U.S.C. § 1120 ...................................................................... 12

17 U.S.C. § 101 .................................................................... 27, 28

17 U.S.C. § 412 ................................................................ 24, 29, 30

17 U.S.C. § 505 ....................................................................... 23

**Other Authorities**

McCarthy on Trademarks and Unfair Competition § 20:52 (4th ed.) ......................................... 18

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................... 5

Fed. R. Civ. P. 56(c)(1)(A) & (8) ...................................................................................... 6

TEX. CIV. PRAC. & REM. CODE § 16.00214.......................................................................

## I.    INTRODUCTION

Plaintiffs The Leader's Institute and Doug Staneart ("Plaintiffs") file this Motion for Partial Summary Judgment, and respectfully request that this Court enter summary judgment in Plaintiffs' favor on Defendants Robert Jackson and Magnovo Training Group, LLC's ("Defendants") counterclaims of abuse of process, tortious interference with business relations, fraud, defamation, cancellation of Plaintiffs' BUILD-A-BIKE Mark ("Mark"), and copyright infringement, Defendants' claim for attorney's fees based on the dismissal without prejudice of Plaintiffs' copyright claims, and Defendants' defenses under 15 U.S.C. § 1115(b)(4), 15 U.S.C. § 1052, laches, estoppel, and unclean hands.

## II.    STATEMENT OF FACTS

### Procedural History

1.    In September of 2013, Plaintiffs filed a lawsuit against Defendants in Texas state court. Ex. 16, 2016 07 07 Staneart Dep., 141:19-142:13 [APP 323-324].

2.    Plaintiffs first learned that Defendants were infringing Plaintiffs' Mark in late 2013. Ex. 16, 2016 07 07 Staneart Dep., 191:8-192:17 [APP 332-333].

3.    Plaintiffs provided Defendants with written notice of Defendants' trademark infringement no later than September 9, 2014. Ex. 10, Magnovo Cease and Desist Letter (exhibits excluded) [APP 206-224].

4.    Plaintiffs nonsuited their Texas state court action against Defendants around March of 2014. Ex. 16, 2016 07 07 Staneart Dep., 194:19-195:16 [APP 335-336].

5.    Plaintiffs nonsuited their Texas state court action after discovering Defendants' trademark infringement on the basis that Texas state court was not the proper place for their trademark claims. Ex. 16, 2016 07 07 Staneart Dep., 195:11-16 [APP 336].

6.      On October 2, 2014, The Leaders Institute, LLC and Doug Staneart filed this lawsuit in the Northern District of Texas. Dkt No. 1.

7.      On December 30, 2014, Plaintiffs filed their First Amended Original Complaint. Dkt No. 36.

8.      On July 24, 2015, this Court dismissed Plaintiffs' Federal Copyright Infringement claims against Defendants for lack of personal jurisdiction and without prejudice to refile in another forum. Dkt No. 54, pp. 42-43.  Ex. 3 [APP 85-127].

9.      On September 9, 2015, Plaintiffs filed their Second Amended Complaint. Dkt No. 66.

10.      On December 17, 2015, Plaintiffs filed their Third Amended Complaint. Dkt No. 82.  Ex 1 [APP 6-49].

11.      On January 11, 2016, Defendants filed their Answer, Defenses, and Counterclaims to Plaintiffs' Third Amended Complaint. Dkt No. 91. Ex. 2 [APP 51-83].

### *Defendants' Abuse of Process Claim*

12.      Defendants have affirmatively stated that they are seeking no damages related to their claim for abuse of process other than attorney's fees. Ex. 17, 2016 07 18 Magnovo Dep., 141:7-10 [APP 350].

13.      Defendants have not alleged any abuse beyond merely being sued and having certain customers served with third-party subpoenas. Ex. 5, Interrogatory Response No. 5 [APP 148-149].

### *Defendants' Tortious Interference with Business Relations Claim*

14.      Defendants have not identified any contract that has allegedly been interfered with by Plaintiffs. Ex. 5, Interrogatory Response No. 6 [APP 149-150].

2

15.     Defendants have affirmatively stated that they are seeking no damages related to their claim for tortious interference with business relations other than attorney's fees. Ex. 17, 2016 07 18 Magnovo Dep., 141:3-6 [APP 350].

### Defendants' Fraud Claim

16.     On or about November 13, 2015, Defendant Magnovo filed a Notice of Opposition against U.S. Application Serial No. 86/653,801 for "MAGNOVO."

17.     By and through their counsel, Plaintiffs notified Defendants' counsel on December 4, 2015 that Plaintiffs would not defend the Opposition.

18.     As a result of Plaintiffs taking no action to defend the Opposition, the Opposition proceeding was terminated, and U.S. Application Serial No. 86/653,801 for "MAGNOVO" was deemed abandoned by the United States Patent and Trademark Office.  No registration was issued to Plaintiffs for the MAGNOVO trademark.  Ex.  15 [APP  318].

19.     Defendants have affirmatively stated that they are seeking no damages related to their claim for fraud other than attorney's fees. Ex. 17, 2016 07 18 Magnovo Dep., 141:11-14 [APP 350].

### Defendants' Defamation Claim

20.     Defendants have affirmatively stated that they are seeking no damages related to their claim for defamation other than attorney's fees and the cost of this lawsuit. Ex. 17, 2016 07 18 Magnovo Dep., 141:15-23 [APP 350].

### Defendants' Trademark Cancellation Claim and Affirmative Defenses

21.     Plaintiffs' Build-A-Bike Mark ("Plaintiffs' Mark") was first used in commerce on or before October 15, 2005.

22.     On November 18, 2008, Plaintiffs' Mark was granted registration on the Supplemental Register. Ex. 1 [APP 47].

23.     On June 3, 2014, Plaintiffs' Mark was granted registration on the Principal Register. Ex. 1 [APP 49].

24.     On November 7, 2014, Plaintiffs sent Odyssey Teams, Inc. a cease and desist letter regarding infringement of Plaintiffs' Mark. Ex. 11 [APP 226-270].

25.     On November 7, 2014, Plaintiffs sent Best Corporate Events a cease and desist letter regarding infringement of Plaintiffs' Mark. Ex. 11, [APP 271-295].

26.     On June 24, 2015, Plaintiffs filed a proceeding pursuant to the Uniform Domain-Name Dispute-Resolution Policy Proceeding ("UDRP") of Internet Corporation for Assigned Names and Numbers ("ICANN") seeking to recover the domain names "letsbuildabike.com," "buildabikecharity.com," "buildabikeforcharity.com," and "charitybuildabike.com" (the "Infringing Domains") from Defendants (the "UDRP Proceeding"). Ex. 9, UDRP Opinion, p. 1 [APP 198].

27.     During the UDRP Proceeding, Plaintiffs contended that the Infringing Domains were confusingly similar to Plaintiffs' Mark, that Defendants had no right or legitimate interest in the Infringing Domains, and that Defendants had engaged in bad faith registration of the Infringing Domains. Ex. 9, UDRP Opinion, pp. 2-3[APP 199-200].

28.     Defendants contended that the Infringing Domains were "not confusingly similar to [Plaintiffs'] mark because the domain names are comprised of generic terms and because the domain names omit the hyphens found in the BUILD-A-BIKE mark." Ex. 9, UDRP Opinion, p. 3 [APP 200].

29.     On August 8, 2015, the UDRP Panel issued its opinion. Ex. 9, UDRP Opinion, p. 7 [APP 204].

30.     In its Opinion, the UDRP panel found that the Infringing Domains were confusingly similar to Plaintiffs' Mark. Ex. 9, UDRP Opinion, pp. 4-5 [APP 201-202].

31.     The UDRP panel also found that Defendants did not have a legitimate right to the Infringing Domains. Ex. 9, UDRP Opinion, pp. 5-6 [APP 202-203].

32.     The UDRP panel further found that Defendants registered the Domain Names in bad faith. Ex. 9, UDRP Opinion, pp. 6-7 [APP 203-204].

33.     The UDRP Panel ordered the transfer of the Infringing Domains to Plaintiffs. Ex. 9, UDRP Opinion, p. 7 [APP 204].

### *Defendants' Copyright Claims*

34.     Defendants have asserted copyright infringement of two works (collectively, "Works"). Dkt No. 91, pp. 22-23.

35.     On December 4, 2016, counsel for Defendants emailed counsel for Plaintiffs setting forth Defendants' theory of copyright infringement. Ex. 13, Dec. 4, 2015 Doss Email [APP 310-311].

36.     On December 7, 2016, Defendants filed applications to register their Works with the Copyright Office. Ex. 2, Copyright Registration Application; Copyright Registration Application [APP 76-83].

37.     Defendants listed the date of first publication for both Works as December 5, 2016 in their applications for registration to the Copyright Office. Ex. 2, Copyright Registration Application; Copyright Registration Application [APP 76-83].

38.     Defendants have not pled any actual damages related to their allegations of infringement of their Works. Ex. 2, Answer and Counterclaims [APP 51-83]; Ex. 4, Disclosures [APP 129-137].

39.     Defendants have admitted that they have no actual damages related to their allegations of infringement of their Works. Ex. 17, 2016 07 18 Magnovo Dep., 142:3-145:1 [APP 351-354].

### III.      SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus.* Co. *v. Zenith Radio Corp.,* 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (8).

If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita,* 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

## IV.    ARGUMENT

**A.    As a matter of law, Plaintiffs have not committed abuse of process.**

As this Court has recently explained, the elements of an abuse of process claim in Texas are:

(1)    the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process;

(2)    the defendant had an ulterior motive or purpose in exercising such illegal, improper, or perverted use of the process; and

(3)    damage resulted to the plaintiff as a result of such act.

*Breitling v. LNV Corp.*, No. CV 3:15-CV-0703-B, 2015 WL 5896131, at *6 (N.D. Tex. Oct. 5, 2015) (quoting *Am. Bd. of Obstetrics and Gynecology, Inc. v. Yoonessi*, 286 S.W.3d 624, 628 (Tex.App.—Dallas 2009, pet. denied).

"[B]y definition, the abuse of process tort is not based on the filing and maintenance of a suit." *Klein & Assocs. Political Relations v. Port Arthur ISD,* 92 S.W.3d 889, 898 (Tex. App.—Beaumont 2002, pet. denied). *See also Detenbeck v. v. Koester,* 886 S.W.2d 477 (Tex. App.—Houston [1st Dist.] 1994, no writ). This is because the purpose of a lawsuit is to obtain a settlement or judgment against the defendant, so attempts to coerce a settlement from the defendant via a lawsuit does not constitute an abuse of process. *Detenbeck,* 886 S.W.2d at 481. A party's ulterior motive alone does not convert a proper use of process into an abuse of the process. *Hunt v. Baldwin,* 68 S.W.3d 117, 130 (Tex. App.—Hous. [14th Dist.] 2001, no pet.).

Thus, an abuse of process claimant must "show something more than the damages that are incidental to the filing of the lawsuit." *RRR Farms Ltd. v. American Horse Prot. Ass'n,* 957 S.W.2d 121, 134 (Tex. App.—Hous. [14th Dist.] 1997, pet. denied). "[A]n abuse of process claim requires a showing of a wrongful seizure of property or an actual interference with the person." *Id*.

7

As the facts in *Detenbeck* show, no matter how illicit a plaintiff's motives are in bringing suit, an abuse of process action fails if the claimant alleges nothing more than bringing of suit and attempting to coerce a settlement. In *Detenbeck*, a doctor sued a former patient for abuse of process after the former patient sued for malpractice. The doctor alleged that the former patient had threatened to "tie him up for two weeks in trial" in an attempt to coerce a settlement. *Detenbeck*, 886 S.W.2d at 481. In dismissing the lawsuit for failure to state a claim, the court explained that "[e]ven if we were to assume that [the patient] instituted the malpractice suit without probable cause, and with the malicious intent of coercing a settlement, [the doctor's] pleadings remain defective because they do not allege an improper use of the process." *Id.*

Here, Defendants have failed to set forth *any* specific factual allegations, nor do they have any facts to support their bare allegations that Plaintiffs made an "illegal, improper or perverted use of the process" with an "ulterior motive or purpose," or that Defendants suffered injury as a result. *Id.* at 480. Defendants have alleged nothing more than that Plaintiffs filed their original lawsuit, dismissed it, then filed this lawsuit. Ex. 2, Defendants' Answer, Defenses, and Counterclaims to Plaintiffs' Third Amended Complaint pp. 17-18 [APP 67-68]. *See also* Undisputed Fact Nos. 1-6. These allegations cannot support a claim for abuse of process, and Defendants have produced no evidence that would support such a claim.

Moreover, Defendants have produced no evidence showing any alleged injury. Damages incidental to litigation cannot support an abuse of process cause of action. *RRR Farms Ltd.*, 957 S.W.2d at 134. In deposition, Defendants affirmatively stated that they are not seeking any damages for this claim other than attorney's fees. Undisputed Fact No. 12. Thus, under the relevant case law, Defendants have failed to produce evidence of an essential element of their abuse of process cause of action.

8

Accordingly, this Court should grant summary judgment for Plaintiffs on Defendants' abuse of process counterclaim.

**B.     Without evidence of a contractual relationship or damages, summary judgment should be granted on Defendants' tortious interference claim.**

Defendants' tortious interference claim fails for multiple reasons. As this Court has explained, to establish this claim under Texas law, Defendants must prove the following elements:

(1)     an existing contract subject to interference;

(2)     a willful and intentional act of interference with the contract;

(3)     that proximately caused the injury; and

(4)     caused actual damages or loss.

*See GlobeRanger Corp. v. Software AG,* 27 F. Supp. 3d 723, 751 (N.D. Tex. 2014) (quoting *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc*., 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex. 1997)).

Here, Defendants have failed to identify any contract that has allegedly been interfered with by Plaintiff. "It is axiomatic that a cause of action for tortious interference with a contract will not lie in the absence of a contract." *S & A Marinas, Inc. v. Leonard Marine Corp.*, 875 S.W.2d 766, 768 (Tex. App.—Austin 1994, writ denied). Thus, Defendants cannot "sustain a cause of action for tortious interference with a contract," without proof of "a valid, existing contract subject to interference." *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 565 (Tex. App.—Dallas 1989, no writ). Since they have failed to produce any evidence of any contract that has been interfered with by Plaintiffs, summary judgment should be granted on this cause of action. *See GlobeRanger*, 27 F. Supp. 3d at 752 (granting summary judgment on tortious interference claim where plaintiff failed to produce evidence of an existing contract). And Defendants cannot now identify some new contractual relationship in an effort to defeat

9

summary judgment. As in *GlobeRanger*, this Court should decline to consider any alternative theory that Defendants might want to offer, for the first time, in a response to this summary judgment motion. *Id.* at 754.

Summary judgment is also appropriate because Defendants have conceded that they have no evidence and are not even seeking to recover any actual damages or loss, the fourth element of this cause of action. In deposition, Defendants' corporate representative admitted that they are not seeking any damages related to this claim other than attorney's fees. Undisputed Fact No. 15. Since they have no evidence of any actual damages that were proximately caused by Plaintiffs, summary judgment should be granted for this reason as well.

Defendants' argument that they can recover attorney's fees on this cause of action is frivolous. First, under Texas law, a party prevailing on a claim of tortious interference cannot recover attorney's fees. *See Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.,* 797 F.2d 227, 234 (5th Cir.1986). Here, Defendants cannot prevail since they have no evidence to meet the necessary elements of the cause of action. And even if they could meet these elements, Texas law would not allow recovery of attorney's fees.

Second, even under a very limited equitable exception to the rule against awarding attorney's fees, Defendants could not recover legal fees. In *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421 (5th Cir. 2003), the Fifth Circuit made an *Erie* guess as to whether the Texas Supreme Court would permit recovery of attorney's fees as an equitable exception to the general rule. *Id.* at 430-31. But as this Court has explained in rejecting a claim that *DP Solutions* means that attorney's fees are now available to a prevailing party on a tortious interference claim:

> While *DP Solutions* did hold that attorneys fees incurred in previous litigation can be recovered in a later suit for tortious interference with a contract, it limited this holding to situations "where the natural and proximate results and consequences of prior wrongful acts had been to involve a plaintiff . . . in litigation with and

10

against third parties and other parties." *DP Solutions*, 353 F.3d at 431(*quoting Tex. Beef Cattle Co. v. Green*, 883 S.W.2d 415, 430 (Tex.App.—Beaumont 1994), *rev'd on other grounds*, 921 S.W.2d 203 (Tex.1996)).

*Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A*., 553 F.Supp.2d 680, 694 n. 13 (N.D. Tex. 2008).

Since Defendants' allegations do not fit this limited exception, Defendants cannot recover attorney's fees even if they could survive summary judgment on this cause of action. Summary judgment should be granted on Defendants' tortious interference claim and their request for attorney's fees on this claim.

**C.      Defendants' fraud claim fails because they have no evidence of reliance and there can be no claim for fraud on the Patent and Trademark Office regarding a trademark not being asserted in this lawsuit.**

Count III of Defendants' counterclaims is labeled "Fraud and Defamation." These are, of course, very different causes of action, and are addressed separately in this Motion. To prevail on their fraud counterclaim under Texas law, Defendants must show that Plaintiffs:

(1)     made a material representation that was false;

(2)     knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;

(3)     intended to induce Defendants to act upon the representation; and

(4)     that Defendants actually and justifiably relied upon the representation and thereby suffered injury.

*See Breitling v. LNV Corp.*, No. CV 3:15-CV-0703-B, 2015 WL 5896131, at *8 (N.D. Tex. Oct. 5, 2015) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Here, Defendants' fraud claim cannot survive summary judgment because Defendants have not alleged reliance nor do they have any evidence of reliance or actual damages. Nowhere in paragraphs 236 through 243 of Defendants' Answer and Counterclaims do Defendants claim to have relied on any false representation made by Plaintiffs. The allegations of fraud are

directed to alleged false statements made to others, not Defendants. For example, Defendants assert: "[t]he Leaders Institute, LLC *fraudulently represented to the USPTO* that it was the owner of the trademark sought to be registered . . . ." *See* Ex. 2, Answer, ¶ 241 (emphasis added) [APP 70]. Defendants have not identified any other material representation that is allegedly false that was made to Defendants and upon which Defendants relied to their detriment. As this Court concluded in *Breitling*, in the absence of any sort of representation made to the party that is asserting the claim (let alone one that was knowingly or recklessly false), a fraud claim must fail. *See Breitling*, 2015 WL 5896131, at *8.

To the extent Defendants intend their fraud claim to reach alleged "fraud on the Patent & Trademark Office," this claim fails because the allegedly false trademark application concerned MAGNOVO, not the BUILD-A-BIKE trademark at issue in this case. *See* Ex. 2, Answer, ¶¶ 240-41, 243 [APP 70]. Moreover, the trademark application was ultimately deemed abandoned by the USPTO as a result of Plaintiffs taking no action to defend the Opposition proceeding. *See* Ex. 15 [APP318]. Hence, the USPTO never issued a registration to Defendants for the MAGNOVO trademark. So, Defendants cannot state a claim for fraudulent registration of a trademark, since no trademark was procured. *See* 15 U.S.C. §1120. Without an issued registration, there was no reliance by the USPTO on any allegedly false statement, so there cannot be claim for fraud in connection with procurement of a federal trademark. *See Texas Int'l Prop. Associates v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 592 (N.D. Tex. 2009) (identifying elements of a claim for fraudulent procurement of a trademark, including reliance). *See also* Ex. 7, Interrogatory Response No. 6. [APP 178-179].

Further, Defendants have admitted they have suffered no actual damages as a result of any alleged fraud, and thus have suffered no injury. *See* Undisputed Fact No. 19. Accordingly, in

12

the absence of any evidence of reliance or injury, Defendants' "fraud" counterclaim cannot

survive summary judgment. Therefore, Plaintiffs request that the Court enter summary judgment

in their favor on Defendants' fraud claim.

**D.      Defendants' defamation fails because they cannot prove that any published false
         statements caused any damages.**

To the extent Count III of Defendants' counterclaims attempts to state a claim for

defamation, this cause of action also fails. In *Super Future Equities*, this Court identified the

following elements of a defamation claim:

  (1)      the defendant published a statement;

  (2)      that was defamatory concerning the plaintiff;

  (3)      while acting with either actual malice if the plaintiff was a public official
           or public figure, or negligence, if the plaintiff was a private individual,
           regarding the truth of the statement.

*Super Future Equities, Inc.*, 553 F. Supp. 2d at 686 (citing *WFAA–TV, Inc. v. McLemore,* 978

S.W.2d 568, 571 (Tex.1998)).

More recently, the Texas Supreme Court has addressed the damages available in

defamation cases, drawing a sharp distinction between defamation *per se* and *per quod*:

  Historically, defamation *per se* has involved statements that are so obviously
  hurtful to a plaintiff's reputation that the jury may presume general damages,
  including for loss of reputation and mental anguish. A statement that injures a
  person in her office, profession, or occupation is typically classified as
  defamatory *per se*.

*Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013).

If a statement is not defamatory *per se*, then damages are not presumed, and a claimant

such as Defendant Jackson can only recover any actual damages (or exemplary damages, if

proven). *Id.* at 65. "A statement constitutes defamation *per se* if it 'injures a person in his office,

profession, or occupation.'" *Id.* at 66 (quoting *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt.

Holdings, Inc.,* 219 S.W.3d 563, 581 (Tex.App.–Austin 2007, pet. denied). "[W]hether a

statement qualifies as defamation per se is generally a question of law." *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015). In *Hancock*, the Texas Supreme held that accusing a physician of being dishonest was not defamation *per se*, and therefore vacated all damages awarded for defamation for lack of evidence. *Hancock*, 400 S.W.3d at 66-68.

Here, Defendant Jackson's allegations of defamation fail for multiple reasons, including lack of evidence of any defamation, the alleged statements do not constitute defamation *per se*, and the absence of evidence of actual damages. In paragraphs 237 and 242 of its Answer and Counterclaims (Ex. 2) [APP 69-70], Defendants allege that Plaintiff Staneart defamed Defendant Jackson through statements made to other current or former TLI employees. Defendant Jackson alleges that these statements, about being under investigation by the FBI, are defamatory *per se* under Texas law. In discovery responses, Defendants provided slightly more information about this claim, accusing Staneart of having told TLI employees Chris McNeany, Joe Jessop, and Ellen Patnaude that Jackson was under FBI investigation for apparently unspecified crimes and that his company's phones were tapped. Ex. 5 [APP  151-152].  Recently, Defendants also identified additional emails and alleged communications as defamatory. Ex. 7 [APP  180-181]; Ex. 12 [App 296-308]; Ex. 18, [APP  364-367].

First, Defendant Jackson has produced no admissible evidence supporting his claim that Chris McNeany, Joe Jessop, or Ellen Patnaude ever made any such defamatory statements. No witness has provided any sworn statement or testimony that Plaintiff Staneart said what he is accused of saying. In the absence of this evidence, summary judgment is appropriate.

Second, any claim for defamation based on any allegations made more than a year before filing is barred by the statute of limitations, including statements allegedly made around September 26, 2013 and the May 20, 2014 email. TEX. CIV. PRAC. & REM. CODE § 16.002.

14

Third, none the alleged statements would constitute defamation *per se* because they do not injure Defendant Jackson in his office, profession, or occupation. Such claims would not uniquely injure him and affect his ability to teach corporate training classes. Thus, as in *Hancock*, where allegations that a doctor dealt in half-truths were held not to be defamatory *per se*, the alleged statements here cannot meet the defamation *per se* threshold. Fourth, Defendant Jackson has effectively conceded that he has no evidence of any actual damages that were proximately caused by any allegedly defamatory statements. Ex. 17, 2016 07 18 Magnovo Dep., 110:2-112:6; 141:15-23 [APP 347-348-1; APP 350]. If, for example, Defendant Jackson were claiming mental anguish, he would have needed to provide evidence of such damages and disclose this in discovery. *Hancock*, 400 S.W.3d at 68. But he has not alleged mental anguish damages and he has produced no evidence of this. Ex. 2, Defendants' Answer, Defenses, and Counterclaims to Plaintiffs' Third Amended Complaint, pp. 19-20 [APP 69-70]; Ex. 4, Defendants Rule 26 Disclosures [APP 129-137].

For these reasons, summary judgment should be granted in Plaintiffs' favor on this cause of action.

**E.    Plaintiffs are entitled to summary judgment on Defendants' counterclaim to cancel Plaintiffs' Mark because Defendants cannot meet their initial burden of making a prima facie case that Plaintiffs' Mark has no secondary meaning.**

***The Build-A-Bike Mark.*** Plaintiffs' Mark has been in commercial use since at least as early as October 15, 2005. Ex. 1 [APP 49]. The USPTO granted registration of Plaintiffs' Mark on the Supplemental Register on November 18, 2008. Ex. 1 [APP 47]. Plaintiffs' Mark was then granted registration on the Principal Register on June 3, 2014, upon submission of Plaintiffs' proof of acquired distinctiveness/secondary meaning under Section 2(f) of the Trademark Act. Ex. 1 [APP 49].

Plaintiffs have also endeavored to protect their Mark. For example, in addition to the present action, Plaintiffs filed a proceeding pursuant to the Uniform Domain-Name Dispute-Resolution Policy ("UDRP") of the Internet Corporation for Assigned Names and Numbers ("ICANN") to effectuate the transfer of domain names containing their trademark from Defendants to Plaintiffs (the "UDRP Proceeding"). These domain names included "letsbuildabike.com," "buildabikecharity.com," "buildabikeforcharity.com," and "charitybuildabike.com" (the "Infringing Domains"). Undisputed Fact No. 26. After considering argument from Plaintiffs and Defendants, the UDRP Panel ordered the transfer of the Infringing Domains from Defendants to Plaintiffs, and found that Defendants had no legitimate right to the domains and that Defendants had registered the Infringing Domains in bad faith. Undisputed Fact Nos. 27-33. Defendants' only defense during that proceeding was that Plaintiffs' Mark was "generic," which the UDRP panel rejected. *See id.*

Plaintiffs have also taken action against other infringers and sent cease and desist letters to numerous more. For example, Plaintiffs have sent cease and desist letters to Odyssey Teams, Inc. and Best Corporate Events based on these companies' infringing use of Plaintiffs' Mark. Further, Plaintiffs sued a company called TeamBonding for infringing Plaintiffs' Mark because it refused to comply with Plaintiffs' cease and desist demand, which it has settled. Ex. 16, 2016 07 07 Staneart Dep., 173:23-174:10, 175:18-21 [APP 326-328].

***Defendants' Counterclaims and Defenses.*** Defendants have counterclaimed for cancellation of Plaintiffs' Mark. As explained below, Defendants are unable to meet their initial burden of making a prima facie case for cancellation, and thus Plaintiffs are entitled to summary judgment on Defendants' claim for cancellation.

1. **Plaintiffs' Mark is entitled to a strong presumption of validity, including a presumption that it has acquired distinctiveness.**

The Lanham Act affords registered trademarks a statutory presumption of validity, including a presumption that the registered trademark is distinctive. *US Risk Ins. Group, Inc. v. U.S. Risk Mgmt., LLC*, 3:11-CV-2843-M-BN, 2013 WL 4504754, at *21 (N.D. Tex. Aug. 20, 2013); *S. Snow Mfg. Co. v. Sno Wizard Holdings, Inc.*, CIV.A. 06-9170, 2011 WL 6300370, at *1 (E.D. La. Apr. 18, 2011) (citing *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir.1979)). Section 2(f) of the Lanham Act provides that "nothing . . . shall prevent the registration of a mark used by the applicant that has become distinctive of the applicant's goods [or services] in commerce." 15 U.S.C. § 1052(f).

Thus, under § 2(f), a descriptive mark can still be placed on the principal register if the applicant shows that the mark has become distinctive. *See id.*; *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1356 (Fed. Cir. 2009); *S. Snow Mfg.*, 2011 WL 6300370 *1. "[T]he presumption of validity that attaches to a Section 2(f) registration includes a presumption that the registered mark has acquired distinctiveness." *Cold War Museum*, 586 F.3d at 1356 (Fed. Cir. 2009). *See also US Risk Ins. Group*, 3:11-CV-2843-M-BN, 2013 WL 4504754, at *21 (N.D. Tex. Aug. 20, 2013); *Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC*, 745 F.3d 877, 884-85 (8th Cir. 2014) (citing *Cold War Museum*, 586 F.3d at 1358).

2. **In order to move forward with its counterclaim to cancel Plaintiffs' Mark, Defendants must first make a prima facie case that Plaintffs' Mark has no acquired distinctiveness.**

Because Plaintiffs' Mark is presumed distinctive, Defendants' burden on their cancellation counterclaim is not to prove that Plaintiffs' Mark is descriptive; rather, they have to prove that Plaintiffs' Mark is ***merely*** descriptive by proving that Plaintiffs' Mark has not acquired distinctiveness.

17

*Defendants' Burden.* To rebut the presumption of validity, Defendants must first make a prima facie case that Plaintiffs' Mark has not acquired distinctiveness. *S. Snow Mfg.*, 2011 WL 6300370 *1 (internal citations omitted) (the "presumption of validity has a 'burden-shifting effect' that requires the party challenging a registered mark to produce sufficient evidence to establish that the mark is . . . merely descriptive *without secondary meaning*") (emphasis added); *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1359 (Fed. Cir. 2009); *Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC*, 745 F.3d 877, 883 (8th Cir. 2014) (citing *Yamaha Int'l Corp. v. Hoshino Gakki Co.,* 840 F.2d 1572, 1579 n. 9 (Fed.Cir.1988)) ("[i]n a § 2(f) case, this means that the party seeking cancellation must establish a prima facie case of no acquired distinctiveness"). Only after they have met their burden of making a prima facie case for cancellation can their claim move forward.

If a party is able to make a prima facie case for cancellation, then the burden of production shifts to the trademark holder to present evidence of distinctiveness. *S. Snow Mfg.*, 2011 WL 6300370 *1; *Lovely Skin*, 745 F.3d at 883. The evidence presented by the trademark holder to the patent and trademark office regarding distinctiveness suffices to meet the shifted burden of production. *Cold War Museum,* 586 F.3d at 1358. The ultimate burden of persuasion remains with the party seeking cancellation, and it must prove that the challenged mark is not distinctive by a preponderance of the evidence. *See also US Risk*, 2013 WL 4504754 at *21; *Cold War Museum*, 586 F.3d at 1359; *Lovely Skin*, 745 F.3d 877, 883 (8th Cir. 2014).

*Elements of Cancellation.* A party seeking cancellation must prove "(1) that it has standing; and (2) that there are valid grounds for canceling the registration." *US Risk Ins. Group, Inc. v. U.S. Risk Mgmt., LLC*, 3:11-CV-2843-M-BN, 2013 WL 4504754, at *19 (N.D. Tex. Aug. 20, 2013) (citing *Cunningham v. Laser Golf Corp.,* 222 F.3d 943, 945 (Fed.Cir.2000)). Where a

18

registered mark has been on the principal register for less than five years, "any ground that **would have prevented registration in the first place** qualifies as a valid ground for cancellation." *Cunningham*, 222 F.3d at 945-46; 3 McCarthy on Trademarks and Unfair Competition § 20:52 (4th ed.) ("for Principal Register marks not yet five years on the register, cancellation may be based on any ground in the Lanham Act that would have barred registration in the first instance"). As explained above, in a § 2(f) case, this means that the party seeking cancellation must show that the contested mark lacked distinctiveness at the time of registration. *See, e.g.*, *Lovely Skin*, 745 F.3d at 883.

For example, in *Lovely Skin*, the defendant argued that the plaintiff's trademarks should be cancelled based on its allegation that plaintiff's marks were not substantially exclusive for the five years before registration. *Id.* at 881. Plaintiff's trademarks, "LOVELYSKIN" and "LOVELYSKIN.COM," were initially placed on the supplemental register as "merely descriptive," and later placed on the principal register pursuant to § 2(f) five years later upon a showing that plaintiff's marks had acquired distinctiveness. *Id.* at 884.

In support of its argument, the defendant offered several federal trademark registrations and state business entity registrations of third parties, including a federal trademark registration for "LOVE YOUR SKIN," a business incorporated as "Lovely Skin, Inc.," and a business operating as "Lovely Nails & Skin Care." *Id.* at 885. Defendant also offered testimony from three witnesses involved in the application process for plaintiff's marks.

On review, the Eight Circuit Court of Appeals held that the defendant "did not satisfy its initial burden to establish a prima facie case that [plaintiff's] trademarks had not acquired distinctiveness at the time of their registration." *Id.* at 886. The court noted that while evidence of third parties using similar marks can demonstrate that a trademark lacks substantial

exclusivity and thus lacks acquired distinctiveness, "[t]he significance of third-party trademarks depends wholly upon their usage." *Id.* at 885 (internal citations omitted). Namely, the court noted that where "other marks were not used in a ***meaningful way***, they do not demonstrate that the use of [plaintiff's] trademarks was not substantially exclusive or prevent [plaintiff's] trademarks from acquiring distinctiveness." *Id. See also Cottonwood Fin. Ltd. v. Cash Store Fin. Services, Inc.*, 778 F. Supp. 2d 726, 752 (N.D. Tex. 2011) ("Requiring only 'substantially' exclusive use 'makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim.'") (quoting *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999)).

In analyzing defendant's evidence, the court noted that the defendant did not present evidence on (1) how the third parties had used the identified marks in the five years preceding plaintiff's registration; (2) whether the third parties had promoted or advertised the marks during the relevant time period; or (3) whether the public recognized the third party marks. *Lovely Skin*, 745 F.3d at 885. In view of this, the court held that defendant's evidence could not "overcome the strong presumption of validity and establish a prima facie case that [plaintiff's] marks had not acquired distinctiveness at the time of their registrations." *Id. C.f. Primesource Bldg. Products, Inc. v. Hillman Group, Inc.*, 3:14-CV-2521-B, 2015 WL 11121367, at *10 (N.D. Tex. Mar. 31, 2015) (noting that "database of dozens of third-party registrations . . . do not establish that these similar marks were ever 'used [in commerce] by third parties, that they were well promoted or that they were recognized by consumers'" and thus did not support contention of diminished strength of marks) (quoting *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167, 1173 (2d Cir. 1976)).

**3.      Defendants lack sufficient evidence to establish a prima facie case that Plaintiffs' Mark lacks acquired distinctiveness; as such, Plaintiffs are entitled to summary judgment on Defendants' cancellation counterclaim.**

Here, Defendants cannot establish a prima facie case for cancellation. Defendants allege that Plaintiffs' Mark is "descriptive." Ex. 7 [APP 180-181]. However, for the purposes of Defendants' cancellation claim, the relevant inquiry is whether Plaintiffs' Mark had acquired distinctiveness at the time of registration.[1] Defendants have produced no evidence showing that Plaintiffs' Mark had not acquired distinctiveness at the time of registration. For example, Defendants have not produced any evidence on how any third parties have used Plaintiffs' Mark as a trademark to identify their goods or services, or whether any alleged third-party use was recognized by consumers. As such, Defendants cannot make even a prima facie showing to overcome the strong presumption that Plaintiffs' Mark had acquired distinctiveness at the time of registration. Thus, summary judgment is appropriate and Defendants' cancellation counterclaim should be dismissed.

In their discovery responses, Defendants have also asserted that "[u]pon information and belief, Staneart's BUILD-A-BIKE® marks are being used in commerce solely in connection with the services of team building and not for any of the other services listed in their registrations." Ex. 7,  Interrogatory Response No. 8 [APP 180-181]. However, Defendants have offered absolutely no evidence in support of this conclusory allegation.

Because Defendants cannot make even the prima facie showing required for cancellation, Plaintiffs are entitled to summary judgment in their favor on Defendants' claim for cancellation.

Further, Defendants' defense stated in Paragraph 204 of its Answers and Counterclaims,

---

[1] Further, to the extent Defendants seek to cancel Plaintiffs' supplemental registration, such a claim would also fail as a matter of law. A supplemental registration cannot be cancelled on the basis of descriptiveness, but rather only on the basis of being generic or fraud, neither of which Defendants have alleged. *See* 15 U.S.C. § 1064.

also based on Section 2(f) (15 U.S.C. § 1052) fails for the same reasons. Ex. 2, Defendants'

Answer, Defenses, and Counterclaims [APP 65]. And Defendants' defense stated in Paragraph

203 misunderstands 15 U.S.C. § 1115(b)(4), which does not act to bar a plaintiff's claims. *Id*.

Thus, Plaintiffs are also entitled to summary judgment in their favor on Defendants' defenses in

Paragraphs 203 and 204 of their Answers and Counterclaims.

**F.     Defendants are not entitled to attorney's fees based on the dismissal without prejudice of TLI's copyright claims because Defendants are not "prevailing parties" as required by the Copyright Act.**

In an action for copyright infringement, a court may "award a reasonable attorney's fee to

the prevailing party." 17 U.S.C. § 505. But before a court may award any attorney's fee, it must

first find that the party requesting attorney's fees is a "prevailing party." *See id.*

**1.     A party that has been dismissed without prejudice is not a "prevailing party" under the Copyright Act.**

In analyzing whether a party is a "prevailing party" for the purposes of § 505, courts

routinely apply the United States Supreme Court's standard set out in *Buckhannon Bd. & Care

Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 (2001). There, the

Supreme Court explained that a prevailing party "is one who has been awarded some relief by

the court" such that there has been a "judicially sanctioned change in the legal relationship of the

parties." *Buckhannon*, 532 U.S. at 603, 605. *See also Lightsource Analytics, LLC v. Great Stuff,

Inc.*, A-13-CV-931 LY, 2014 WL 4744789, at *4 (W.D. Tex. Sept. 23, 2014) (report and

recommendation of United States Magistrate Judge Andrew W. Austin, approved and accepted

by United States District Judge Lee Yeakel on October 27, 2014 (Dkt No. 55)); *Balsley v. LFP,

Inc.*, 691 F.3d 747, 772 (6th Cir.2012) (applying Buckhannon to the Copyright Act); *Cadkin v.

Loose*, 569 F.3d 1142, 1145 (9th Cir.2009) (same); *Riviera Distribs., Inc. v. Jones*, 517 F.3d 926,

928 (7th Cir.2008) (same); *Torres–Negron v. J & N Records, LLC*, 504 F.3d 151, 164 & n. 9 (1st Cir.2007) (same).

Where a case is dismissed without prejudice, there is no "award[] of any relief by the Court" and there is no "judicially sanctioned change in the legal relationship of the parties." *Lightsource Analytics*, 2014 WL 4744789 at *5. Under such circumstances, the dismissed party is not a "prevailing party" under the Copyright Act, and cannot be awarded its attorney's fees. *Id.*

For example, in *Lightsource Analytics*, Lightsource brought suit on a number of causes of action, including copyright infringement. *Lightsource Analytics*, 2014 WL 4744789 at *1. Lightsource ultimately filed a voluntary notice of dismissal requesting that the district court dismiss its action without prejudice. *Id.* After the district court dismissed the action without prejudice, the defendants filed a motion for attorney's fees claiming they were a prevailing party under 17 U.S.C. § 505. *Id.* Ultimately, the district court denied the defendants' because Lightsource's copyright claim was dismissed without prejudice; thus, "[b]ecause there was no court-ordered change in the legal relationship between Lightsource and Defendants, Defendants [were] not prevailing parties under the Copyright Act and [were] therefore not entitled to attorney's fees." *Id.* at *5.

> **2.   TLI's copyright infringement claims against Defendants were dismissed without prejudice; therefore, Defendants cannot recover any attorney's fees in connection with TLI's copyright infringement claims.**

Here, TLI brought copyright infringement claims against Defendants. Dkt No. 1. This Court determined that TLI had not made out a prima facie case of personal jurisdiction with respect to its copyright claims, among others. Dkt No. 54 at 42. Ultimately, this Court dismissed TLI's federal copyright infringement claims against Defendants for lack of personal jurisdiction, but "***without prejudice to refile in another forum***." *Id.* at 42-43. Like in *Lightsource Analytics*, this Court's order did not change the legal relationship between TLI and Defendants. *See*

*Lightsource Analytics*, 2014 WL 4744789 at *5. As such, Defendants are not the prevailing parties under the Copyright Act, and, as a matter of law, are not entitled to attorney's fees. *See id.*

**G.     TLI is entitled to summary judgment of non-infringement on Defendants' copyright infringement claims.**

TLI is entitled to summary judgment that it does not infringe Defendants' copyrights because TLI's alleged actions do not constitute copyright infringement as a matter of law. Further, any claim for statutory damages or attorney's fees is barred by 17 U.S.C. § 412.

**1.     TLI is entitled to summary judgment of non-infringement because "framing," "linking," or otherwise redirecting Internet traffic does not constitute copyright infringement as a matter of law.**

Defendants claim that TLI infringed their copyrights by "linking" or "framing" Defendants' website. But framing does not constitute copyright infringement as a matter of law. In order to understanding framing or linking, certain technical background information is provided below.

**a.     Technical Background[2]**

When a user visits a website, it uses a web browser (*e.g.*, Microsoft Internet Explorer, Google Chrome, etc.) to send a request to the appropriate web server hosting the desired web page. For example, when a user types "amazon.com" into Google Chrome, the web browser finds the appropriate web server and sends it a request for the web page. When the webserver receives the request, it returns computer code to the web browser.

---

[2] The Ninth Circuit has provided a similar explanation in the analogous context of linked images in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155–56 (9th Cir. 2007).



Fig. 1

The returned code is basically a set of instructions that tell the web browser what to do. The web browser presents the requested webpage to the user by interpreting the returned code. For example, the code might tell the web browser to display an image in the center of the page, text under that image, or provide input boxes that the user can type their shipping and billing information into.

The returned code can also contain instructions telling the web browser to make requests to *other* unrelated webservers. This is the foundation of "framing," "linking," or "masking." Although the technical manner in which each works can differ, the underlying result is the same.

**b.      Example of Framing**

For example, a web browser could request a webpage from Webserver A that returned instructions telling the web browser to get additional code from Webserver B. Upon receiving the instructions from Webserver A, the web browser would then make a request to Webserver B for these additional instructions. Upon receiving the additional instructions from Webserver B,

25

the web browser would interpret the received code and display the webpage to the user. In this scenario, there is no need for Webserver A to have a copy of the code on Webserver B or vice versa in order for the web browser to display the aggregate web page.



Fig. 2

Further, Webserver A never copies any materials from Webserver B. Webserver A simply tells the user's web browser to go get whatever information Webserver B is willing to send.

26

        c.     ***Perfect 10, Inc. v. Amazon.com, Inc.***

Although the Fifth Circuit has not directly addressed this issue, the Ninth Circuit has.

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-63 (9th Cir. 2007). In *Perfect 10*, the

plaintiff sued a number of companies for alleged copyright infringement, including Google. *Id.* at

1154-55. Among other theories, the plaintiff alleged that Google infringed its copyright by

framing linked images that appeared on the user's computer screen giving the impression that

Google was showing the image within a single Google webpage. *Id.* at 1161. The Ninth Circuit

noted that "[w]hile in-line linking and framing may cause some computer users to believe they

are viewing a single Google webpage, the Copyright Act, unlike the Trademark Act, does not

protect a copyright holder against acts that cause consumer confusion." *Id.* The Ninth Circuit

further explained that:

> Because Google's computers do not store the photographic images, Google does
> not have a copy of the images for purposes of the Copyright Act. In other words,
> Google does not have any "material objects . . . in which a work is fixed . . . and
> from which the work can be perceived, reproduced, or otherwise communicated"
> and thus cannot communicate a copy. 17 U.S.C. § 101. ***Instead of
> communicating a copy of the image, Google provides HTML instructions that
> direct a user's browser to a website publisher's computer that stores the full-size
> photographic image.***

*Id.* at 1161-61 (emphasis added). The Ninth Circuit went on to explain that providing HTML

instructions only tell the user's web browser where to get an image, and that the user's browser

then interacts with the server that actually stores the image in order to retrieve it. *Id.* at 1161. For

example, in Figure 2 above, the user's web browser sends a request to Webserver A, where it

gets a Web Page A. Web Page A simply instructs the user's browser to send a request to

Webserver B where the user's browser downloads Web Page B, including a copy of a picture.

This picture was never stored on Webserver A, only on Webserver B. Web Page A only told the

user's browser where to find Web Page B.

The Ninth Circuit went on to explain that a finding of contributory or vicarious infringement first requires a finding of direct infringement by a third party. *Id.* at 1169. Here, the only third party would be the individual Internet users browsing the web. However, courts have held that an individual user's visit to a webpage is noncommercial, transformative fair use that is no more than is necessary to assist the user in Internet use. *Id.* Were this not the case, every single person browsing the Internet would be committing copyright infringement simply by looking at webpages.

#### d. The Accused Framing

Defendants' copyright infringement allegations are based entirely on framing, and are nearly identical to those rejected in *Perfect 10*. Ex. 13, Dec. 4, 2015 Doss Email [APP 318]; Ex. 7, Response to Interrogatory No. 13 [APP 183-184]. Specifically, Defendants claim that the following code made available on TLI's website constitutes copyright infringement:

```
<!DOCTYPE HTML PUBLIC "-//W3C//DTD HTML 4.01//EN"
  "http://www.w3.org/TR/html4/strict.dtd">
<html>

<head>
  <title>bicycleteambuilding.org</title>  THIS IS YOUR CLIENT'S DOMAIN CONTAINING THIS CODE

</head>
<frameset rows="100%,*" border="0">
  <frame src="http://bicycle-team-building-events.com" frameborder="0" />  THIS IS WHAT LINKS TO MY CLIENT'S WEBSITE
  <frame frameborder="0" noresize />
</frameset>

<!-- pageok -->
<!-- 06 -->
<!-- -->
</html>
```

Fig. 3, Ex. 1, Dec. 4, 2015 Doss Email [APP 318]

But this is not a copy of either work claimed by Defendants. Rather, it is only a set of instructions telling a user's web browser to go to Defendants' website and download whatever code it finds there. TLI never had or served a copy of any of Defendants' works; TLI only provided directions on where to find them—on Defendants' web server. Like *Perfect 10*, TLI

"does not have any 'material objects . . . in which a work is fixed . . . and from which the work

can be perceived, reproduced, or otherwise communicated' and thus cannot communicate a

copy." 508 F.3d at 1161-61 (citing 17 U.S.C. § 101). As such, TLI is entitled to summary

judgment of non-infringement.

> **2.      In any event, Defendants are barred from recovering any damages for the
> alleged copyright infringement as a matter of law.**

Defendants are not entitled to any damages on their copyright infringement claim.

Defendants' claims for statutory damages and attorney's fees are barred by 17 U.S.C. § 412, and

Defendants have already stated that they are not seeking any actual damages for the alleged

copyright infringement. Undisputed Fact Nos. 38-39.

### a.      Overview of 17 U.S.C. § 412

The Copyright Act explains that no award of statutory damages or attorney's fees can be

made if:

> (1)     any infringement of copyright in an unpublished work commenced before
> the effective date of its registration; or
>
> (2)     any infringement of copyright commenced after first publication of the
> work and before the effective date of its registration, unless such
> registration is made within three months after the first publication of the
> work.

17 U.S.C. § 412. Where copyright infringement is alleged based on an ongoing series of separate

infringing acts, infringement "commenced" at the time of the first act in the accused series of

acts. *See CHM Indus., Inc. v. Structural & Steel Products, Inc.*, 2008 WL 4777679, *3 (N.D.

Tex. 2008).

### b.      Timeline of Alleged Infringement

Defendants have only alleged infringement of two works in this case. Ex. 2 [App 66-67;

72-73]. Defendants applied to the Copyright Office to register both works on December 7, 2015.

Ex. 2, copyright registration applications [APP 76-83]. Defendants claimed that both works were first published on December 5, 2015. *Id.*

On December 4, 2015, before submitting their applications to the Copyright Office, Defendants' attorney Will Doss emailed TLI's counsel setting out Defendants' theory of copyright infringement. Defendants' theory is explained in more detail in Section 1.d above. Defendants' theory of infringement can only be described as one based on an alleged "series of on-going separate infringing acts." *See CHM Indus.*, 2008 WL 4777679 at *3. Taking Defendants' claims at face value, the alleged infringement commenced no later than December 4, 2015. But Defendants claim that the infringed works were not published until December 5, 2015, and it is indisputable that Defendants did not apply to register their works until December 7, 2015. Ex. 2, copyright registration applications [APP 76-83]. Because the alleged infringement commenced prior to Defendants' claimed date of publication and registration, 17 U.S.C. § 412 bars Defendants' claim for statutory damages and attorney's fees. *CHM Indus.*, 2008 WL 4777679 at *5.

### c.   Actual Damages

During deposition, Defendants affirmatively stated that they were not seeking actual damages in connection with their copyright infringement claims. Ex. 17, July 18, 2016 30(b)(6) Magnovo Dep. [APP 353-354]. Further, Defendants have not disclosed an expert on their damages in this case. As such, Defendants are not entitled to any actual damages in connection with their copyright infringement claims.

Because Defendants' theory of copyright infringement fails as a matter of law, TLI requests that this Court grant summary judgment of non-infringement in TLI's favor. Alternatively, even if this Court disagrees regarding Defendants' theory of copyright infringement, it is indisputable that Defendants are not entitled to recovery any damages in this

case. Therefore, TLI further requests that this Court grant summary judgment in TLI's favor on Defendants' claims for statutory damages and attorney's fees in connection with Defendants' copyright infringement claims.

**H.    Summary Judgment Should be Granted on Defendants' "Equitable" affirmative defenses.**

Defendants assert a series of what they label "equitable" affirmative defenses, including laches, estoppel, and waiver. "On their affirmative defenses, the defendants have the burden to bring forth facts demonstrating that there are material issues of fact precluding summary judgment for RE/MAX." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC,* 655 F. Supp. 2d 679, 709 (S.D. Tex. 2009) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)). Here, Defendants have not offered any support in discovery for any of these affirmative defenses.

*Laches.* First, Defendants assert a defense of "laches." In the trademark context, "laches comprises three elements:

    (1)    delay in asserting one's trademark rights;

    (2)    lack of excuse for the delay; and

    (3)    undue prejudice to the alleged infringer caused by the delay.

*Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 665 (W.D. Tex. 2008) (internal cites omitted). The period for laches begins when the plaintiff knew or should have known of the infringement." *Id.* Here, Plaintiffs filed suit within about one year of learning of Defendants' infringing acts. *See* Undisputed Fact Nos. 1-6. Initially, Plaintiffs filed suit in state court, but after adding a claim for copyright infringement the case was voluntarily dismissed and this action was filed. *See id.* But even before filing suit, Plaintiffs provided written notice to Defendants about their infringement. Ex. 10 [APP 206-224]. This occurred September 9, 2014, within a year of learning of the infringement. Ex. 10 [APP 206-224]. Since the key issue for a laches defense is whether there was an "*inexcusable* delay in

31

asserting one's trademark rights," summary judgment is appropriate on Defendants' affirmative

defense. *Id.* at 667-68 (emphasis in original).

      *Estoppel.* Next, Defendants plead "estoppel" as a defense but offer no explanation of the

basis for this defense. Equitable estoppel "requires the defendant to prove intentional deception

through concealment or inaction or gross negligence amounting to constructive fraud." *Source,*

*Inc. v. SourceOne, Inc.,* 2006 WL 2381594, at *8 (N.D. Tex. Aug. 16, 2006) (citing *Matter of*

*Henderson,* 577 F.2d 997, 1001 (5th Cir.1978)). There is a question about whether equitable

estoppel applies in the trademark context. *Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 611–

12, n. 23 (S.D. Tex. 2014); *RE/MAX Int'l,* 655 Supp.2d at 711 n. 12 ("It is unclear whether the

Fifth Circuit recognizes a separate defense of waiver or estoppel in the trademark context"). But

applying the Fifth Circuit test for equitable estoppel in the context of copyright infringement, as

the Southern District did in *Reservoir*, the Defendants here must prove that:

    (1)     the plaintiff knew the facts of the defendant's infringing conduct;

    (2)     the plaintiff intended that its conduct be acted on or must so act that the
           defendant has a right to believe that it is so intended;

    (3)     the defendant was ignorant of true facts; and

    (4)     the defendant relied on the plaintiff's conduct to its injury.

*Carson v. Dynegy, Inc.,* 344 F.3d 446, 453 (5th Cir. 2003). But no such facts have been pled or

can be proven here. There is simply no evidence that Plaintiffs took any action to induce

Defendants' ignorant reliance to their detriment. Absent such facts, summary judgment must be

granted in favor of Plaintiffs on this affirmative defense.

      *Waiver.* Defendants also assert "waiver" as an affirmative defense, again offering no

factual basis for the application of this doctrine. Again, it is unclear that the Fifth Circuit

recognizes such a defense in the trademark context. *See, e.g., RE/MAX Int'l, Inc.,* 655 F.Supp.2d

at 711. But it does not matter in this case because none of the elements can be supported

factually. As the court explained in *Reservoir, Inc.*, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Tesco Corp. v. Weatherford Int'l, Inc.,* 632 F.Supp.2d 654, 658 (S.D.Tex.2009) (citing *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 778 (Tex. 2008)) (addressing waiver defense to claim of patent infringement). To establish waiver, a defendant must show that:

(1)    the plaintiff held an existing right, benefit, or advantage;

(2)    the plaintiff's actual knowledge of the existence of that right, benefit, or advantage; and

(3)    the plaintiff's "actual intent to relinquish that right, or intentional conduct inconsistent with that right."

*Reservoir, Inc.*, 1 F. Supp. 3d at 611 (S.D. Tex. 2014). Here, Defendants cannot show that Plaintiffs ever took actions to relinquish any of their rights or showed any intent to do so. This defense is inapplicable in this case,and summary judgment is appropriate.

   ***Unclean hands.*** Finally, Defendants assert "unclean hands," and again offer no explanation or evidence for this defense. The Tenth Circuit has addressed this defense in some detail in recent trademark litigation, explaining that:

> the doctrine of unclean hands does not empower a court of equity to deny relief for any and all inequitable conduct on the part of the plaintiff. Rather, a plaintiff's unclean hands will bar recovery for trademark infringement only if the inequitable conduct is related to the plaintiff's cause of action. We said that courts have found such a relationship in two situations: First, there is such a relationship when the plaintiff has engaged in inequitable conduct toward the public, such as deception in or misuse of the trademark itself, resulting in harm to the public such that it would be wrong for a court of equity to reward the plaintiff's conduct by granting relief. Second, the plaintiff's misconduct is sufficiently related to the cause of action when the plaintiff has acted inequitably toward the defendant *in relation to the trademark.*

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1255 (10th Cir. 2013) (internal citations and quotations omitted). *See also Clinton E. Worden & Co. v. Cal. Fig Syrup Co.*, 187 U.S. 516

(1903) (refusing to grant relief to owner of "Syrup of Figs" trademark where the mark itself misrepresented that the product contained fig juice).

Indeed, as the Western District of Texas has explained, the unclean hands doctrine applies in the trademark context when "plaintiff's own unclean acts regarding the product can deceive the public or are essentially the same as the conduct of which plaintiff is complaining." *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 851 (W.D. Tex. 2001). Defendants have not made any such allegation and have not offered any such evidence. Thus, the conclusion by the *Healthpoint* court applies. "[I]f the party raising the defense cannot prove the allegations of unclean conduct or if the alleged acts are not related to the opponent's claims, the unclean hands doctrine will be rejected." *Id.* Defendants' unclean hands defense should be dismissed.

## V.    CONCLUSION

For the reasons explained above, Plaintiffs request that this Court enter summary judgment in Plaintiffs' favor on Defendants' counterclaims of abuse of process, tortious interference with business relations, fraud, defamation, cancellation of Plaintiffs' Mark, and copyright infringement, Defendants' claim for attorney's fees based on the dismissal without prejudice of Plaintiffs' copyright claims, and Defendants' defenses under 15 U.S.C. § 1115(b)(4), 15 U.S.C. § 1052, laches, estoppel, and unclean hands.

Dated:  August 1, 2016                         Respectfully submitted,

                                              */s/ Gary R. Sorden*
                                              Gary R. Sorden (lead counsel)
                                              State Bar No. 24066124
                                              Darin M. Klemchuk
                                              State Bar No. 24002418
                                              Roxanne Edwards
                                              State Bar No. 24026817
                                              **KLEMCHUK LLP**
                                              8150 N. Central Expressway
                                              10th Floor
                                              Dallas, Texas 75206
                                              Tel. 214.367.6000
                                              Fax 214.367.6001
                                              gary.sorden@klemchuk.com
                                              darin.klemchuk@klemchuk.com
                                              roxanne.edwards@klemchuk.com

                                              Cynthia A. Cook
                                              State Bar No. 04508025
                                              **BROWN, PC**
                                              500 Main Street, Suite 400
                                              Fort Worth, Texas 76102
                                              Tel. 817.8700025
                                              Fax 817.870.0515
                                              cynthia.cook@brownpc.com

                                              **ATTORNEY FOR PLAINTIFFS**
                                              **THE LEADER'S INSTITUTE, LLC**
                                              **AND DOUG STANEART**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on August 1, 2016, with a copy of this document via the Court's CM/ECF system per Local Rule 5.1(d).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Gary R. Sorden*
Gary R. Sorden

36