# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE LEADER'S INSTITUTE, LLC | § | |
| And DOUG STANEART | § | |
| | § | |
| VS | § | |
| | § | |
| ROBERT JACKSON and MAGNOVO | § | Case No. 3:14-cv-03572-B |
| TRAINING GROUP, LLC, | § | |
| | § | JURY TRIAL DEMANDED |

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

Plaintiff, The Leader's Institute, LLC, a Texas limited liability company, and Plaintiff Doug Staneart, a resident of Tarrant County, Texas, (referred to herein collectively as "Plaintiffs"), make and file this, Plaintiffs' Third Amended Complaint, against Robert Jackson and Magnovo Training Group, LLC (referred to herein collectively as "Defendants"), and allege as follows:

**I.**

**PARTIES**

1.      The Leader's Institute, LLC (hereinafter "Plaintiff TLI"), is a Texas limited liability company duly organized and existing under the laws of the state of Texas with its principal place of business at 6703 Coronation Court, Arlington, Texas, 76017.

2.      Plaintiff, Doug Staneart (hereinafter "Plaintiff Staneart"), is a natural person who resides in Tarrant County, Texas.

3.      Defendant, Robert Jackson (hereinafter "Defendant" and/or "Jackson") is a natural person who resides and conducts business at 5328 Sandwood Drive, Indianapolis, Indiana 46235. Defendant Jackson has been served with process herein.

4.      Defendant, Magnovo Training Group, LLC (hereinafter "Defendant" and/or "Magnovo"), is an Indiana limited liability company whose principal place of business is at 5328 Sandwood Drive, Indianapolis, Indiana 46235.  Defendant Magnovo has been served with process herein.

## II.

## JURISDICTION and VENUE

5.      This Court has subject matter jurisdiction to adjudicate Plaintiffs' claims against Defendants pursuant to 28 U.S.C. § 1332(a).  This Court has original jurisdiction over this case and controversy because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  Plaintiff TLI and Plaintiff Staneart are citizens of the State of Texas and Defendants are citizens of the State of Indiana.

6.      This is a civil action for, *inter alia*, trademark violations under 15 U.S.C. § 1051 *et seq.,* and therefore, this Court also has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1338 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over Defendants because, as alleged more specifically below, Defendants conducted business in Texas and purposely availed themselves of the laws of the State of Texas, by, among other things, advertising, selling and providing their services in the State of Texas and in this venue.

8.      This Court also has jurisdiction over Defendants because they committed torts, including *inter alia*, trademark infringement and cybersquatting, as alleged more specifically below, intentionally directed at Texas with the effect of injuring Plaintiffs at their principal place of business in Texas.

## III.

## SUMMARY OF JURISDICTIONAL FACTS

9.     The Court has personal jurisdiction over Defendants because they committed numerous intentional torts intentionally and expressly directed at the state of Texas, which had the effect of injuring Plaintiffs at their principal place of business located in Texas; such torts give rise to the claims made the basis of this suit.

10.     More specifically, the Court also has personal jurisdiction over Defendants due to their intentional and flagrant infringement on Plaintiff TLI's trademark including, among other things, their infringement of Plaintiff TLI's Build-A-Bike® service mark.  Defendants registered, used, and maintained domain names, including "letsbuildabike.com", "charitybuildabike.com", "buildabikecharity.com", and "buildbikeforcharity.com", among others, and placed Plaintiff TLI's service mark within Defendants' interactive websites and in their metadata directed at the Texas forum so that Texas residents searching the internet for "Build-A-Bike®" would be directed to Defendant Magnovo's website.  Defendants' willful infringement of Plaintiff, TLI's trademark occurred because Defendants hoped to obtain new clients at the behest of Plaintiff's brand name and advertising.

11.     Because Defendants intentionally directed their tortious web-based advertising of team-building events at the Texas forum with the effect of injuring Plaintiffs at their principal place of business in Texas, such conduct confers to the Court personal jurisdiction over Defendants pursuant to the Texas long-arm statute.

12.     On its website, Defendant Magnovo admits that it does business in Texas, wherein it states:

> Texas Team Building.  Magnovo delivers team building workshops and training
> events all across Texas.  . . . If you're looking for corporate training and

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

leadership development, we offer many workshops that can be delivered at your chosen location in Texas."

13.     Among the Texas cities identified as Magnovo Team Building Cities are:  Austin, Dallas, Fort Worth, Houston, Plano, San Antonio and Waco.

14.     Additionally, Defendant Magnovo's interactive website advertised Bicycle Team Building Locations across the country including Texas, specifically identifying Dallas, Texas as a site in which its services were available.  *See*

http://www.bicycleteambuildingevent.com/bicycle-team-building-locations;

http://charityteambuildingevents.com/teambuilding-locations/central/texas;

http://magnovo.com/locations/centeral/texas-team-building/.[1]

15.     Additionally, Defendants' interactive website has a separate page dedicated to and directed at each of the following Texas cities:   "Dallas Team Building"; "Austin Team Building"; "Fort Worth Team Building"; "Houston Team Building" and "Plano Team Building".

16.     Defendants also admitted to selling services to Texas residents, including a speaking seminar taught in Texas in August 2013 and two building workshops conducted in Texas in October 2014.  (See Appendix to Defendant Robert Jackson and Magnovo Training Group, LLC's Motion to Dismiss, [Doc. 27-1, pg. 4, ¶ 7 and pg. 8, ¶ 8].

17.     This Court also has personal jurisdiction over Defendant Jackson because he conducted business in Texas and purposefully availed himself of the laws of the state of Texas by entering into contracts with Texas residents, including Plaintiff TLI, which contract was to be performed, in part, in Texas and which contract is made the basis of this suit.

18.     More specifically, Defendant Jackson contacted Plaintiff TLI in Texas on multiple

---

[1] Since Plaintiffs' initial suit against Defendant Magnovo in State court, which was voluntarily non-suited by Plaintiffs, Plaintiffs have observed many changes to the foregoing websites deleting information regarding Texas locations, but Plaintiffs have preserved screenshots containing the cited content.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

occasions during the period of August through November 2010 with the express purpose of re-entering into an independent contractor relationship with Plaintiff TLI.

19.     In November 2010, Defendant Jackson traveled to Texas at his own expense and at his request to teach a class for Plaintiff TLI during which visit, Defendant Jackson met with Plaintiff TLI to discuss the prospect of Jackson re-entering into an Independent Contractor Agreement with TLI.  As a result of such meeting, Plaintiff TLI and Jackson agreed to enter into a new Independent Contractor Agreement, part of which contract was performable and was actually performed in Texas, both by Plaintiff TLI and Defendant Jackson.

20.     The formal contract memorializing the parties' agreement was later signed by Defendant Jackson and returned to Plaintiff Staneart in Texas.

21.     In performing as an independent contractor[2] for Plaintiff TLI, Defendant Jackson directly contacted Texas residents for the purpose of selling them Plaintiffs' services in the state of Texas.

22.     Additionally, Defendant Jackson did, in fact, sell such services to Texas residents and, on several occasions, personally delivered such services to Texas residents in Texas, as follows:

     a.   Sales to Texas Residents: 2011 - eleven (11) sales to customers in Dallas, Austin and Houston; 2012 – twelve (12) sales to customers in Dallas and Houston.

     b.   Classes Taught to Texas Residents: 2010 – one (1) class in Grapevine; 2011 – three (3) classes taught in Dallas and Houston; 2012 – three (3) classes taught in Houston; 2013 – one (1) class taught in Dallas.

23.     Moreover, this Court has personal jurisdiction over Defendant Jackson because while performing his obligations under the Independent Contractor Agreement, Defendant Jackson tortiously interfered with Plaintiffs' prospective business relations with their long-term

---

[2] Defendant Robert Jackson has filed a separate lawsuit in the Southern District of Indiana, Indianapolis Division wherein he contends that he was an employee of The Leaders Institute and therefore entitled to overtime wages.  See

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

customers, at least one of which is a resident of Texas, by entering into contracts on behalf of Plaintiff TLI and Defendant Magnovo for the provision of the same services which Plaintiff TLI was providing to such customers and which Defendant Jackson provided to such customers as an independent contractor for Plaintiff TLI.

24.    More specifically, on information and belief, Defendants Jackson/Magnovo secured the contract for the Texas seminar Defendant Jackson taught in Houston in August 2013, the same month he terminated his relationship with Plaintiff TLI, from a current customer of Plaintiff TLI during the time period that Defendant Jackson was still working for Plaintiff TLI and subject to the non-compete clause in the Independent Contractor Agreement. Such tort was committed via Defendant Jackson's direct and purposeful contact with a Texas resident, which contact injured Plaintiffs in Texas.

25.    Plaintiffs' claims for misappropriation of trade secrets, breach of contract and tortious interference with contract arise out of and/or relate to Defendants' above described contacts with Texas.

### IV.

### VENUE

26.    Venue is proper in this Court under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to these claims has occurred in this judicial district.

### V.

### NATURE OF THE ACTION

27.    This is an action for false designation of origin and trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and related causes of action, arising

---

*Robert C. Jackson and Colette Johnston v. The Leader's Institute, LLC and Doug Staneart*, Case No. 1:14-cv-193-TWP-DML, In the United States District Court Southern District of Indiana, Indianapolis Division.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                                                 Page 6

from the use by Defendants of the Build-A-Bike® mark in violation of Plaintiff TLI's rights in

the federally registered mark Build-A-Bike® arising under federal and state trademark law and

other confidential information of Plaintiffs.

## VI.

## FACTUAL BACKGROUND

28.     Plaintiffs allege and hereby incorporate by reference each and every allegation made in

the foregoing paragraphs of this Complaint as if each were separately set forth herein.

29.     Plaintiff Staneart is the founding owner and CEO of Plaintiff TLI.

30.     Plaintiffs have been engaged in the business of conducting corporate leadership, team-

building and public speaking seminars since December 2002.

31.     Plaintiffs provide training to organizations and individuals in leadership and management

skills development, public speaking skills, and team-building training.   Plaintiff TLI also

organizes and puts on corporate charity events, which allow for both the development of team

building skills and charitable giving by its organizational clients.

32.     Plaintiff Staneart filed for and was granted several registrations for service marks

registered with the United States Patent and Trademark Office ("USPTO"), including without

limitation, the following registrations:

| MARK | REG. NO. | SERVICES | FIRST USE DATE |
|---|---|---|---|
| Build-A-Bike® | 3,535,706 | Education services, namely, providing classes, seminars, and workshops in the field of team building and leadership | As early as October 15, 2005 |
| BUILD-A-BIKE® | 4,542,884 | Educational services, namely, conducting classes, seminars, workshops, lectures, and self-paced training programs in the field of personal and professional development, leadership, communication, and team building | As early as October 15, 2005 |

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

| MARK | REG. NO. | SERVICES | FIRST USE DATE |
|------|----------|----------|----------------|
|      |          | and distribution of educational materials in connection therewith; Personal coaching services in the field of personal and professional development for individuals and groups | |

33.     The USPTO registrations are currently valid, subsisting and in full force and effect.  True and correct copies of the registration certificates are attached hereto as Exhibits A and B.  The federal registration rights and common law rights of Plaintiffs in the mark BUILD-A-BIKE® are collectively referred to hereafter as the "Build-A-Bike® Mark."

34.     On December 1, 2015, Plaintiff Staneart and Plaintiff TLI executed an assignment whereby Plaintiff Staneart assigned all rights, title, and interest in the Build-A-Bike® Mark to Plaintiff TLI (the "Trademark Assignment").  The Trademark Assignment was recorded by the USPTO on December 8, 2015 under Reel/Frame 5684/0533.

35.     Plaintiffs have continuously used the Build-A-Bike® Mark in interstate commerce since as early as October 15, 2005 in connection with leadership and team building workshops and related goods and services and have utilized the proper trademark notice with use of the ®, ™ or SM symbols.

36.     The Build-A-Bike® Mark is used on a variety of advertising media including brochures, Internet websites, training and course materials, and other advertising and promotional items.

37.     Plaintiffs have invested a significant amount of time, effort and money into developing, promoting, advertising and maintaining the Build-A-Bike® Mark, among other trademarks owned by Plaintiffs, throughout the United States over the course of many years.

38.     As a result of the foregoing, the Build-A-Bike® Mark has become widely and favorably known as identifying charitable team building workshops and related goods and services

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

originating from, sponsored by, or associated with Plaintiffs.

39.      In connection with the development of their business, Plaintiffs have expended substantial time, labor and money to develop and create course and event materials and instruction techniques, customer/client lists, client contact information, pricing methods, training materials, sales and marketing materials and strategies, financial information and other information which, singularly and collectively, constitute Plaintiffs' trade secrets, confidential information and copyrighted works.

40.      In addition to Plaintiffs' trademarks, name, and reputation, they have developed many valuable trade secrets and other confidential information, which are key to their continued success.

41.      One valuable trade secret is Plaintiffs' customer lists, which include contact information for individuals within each organization that are responsible for purchasing the services that Plaintiff TLI sells, as well as other details about the customers compiled during the course of the business relationships.

42.      Plaintiffs' customer lists include over 400 of the Fortune 500 companies and the contacts within the customer lists are a very niche group of people who are extremely difficult and costly to identify.

43.      Extensive time and money have been spent since the formation of Plaintiffs developing, expanding and protecting Plaintiffs' customer lists.

44.      Plaintiffs spent millions of dollars on advertising focused on their potential customer base, which was designed to and did, in fact, aid and assist in the development of the specific customer lists and contacts that they hold and protect as trade secrets.

45.      There is not another way to obtain the extensive and detailed customer information,

which Plaintiffs have compiled without years of extensive effort and enormous expense.

46.     Plaintiffs' trade secrets, including their customer lists, are not known to their competitors or to the public and are even protected within their own internal system by passwords and non-disclosure agreements.

47.     Plaintiffs' customer lists are maintained in Plaintiffs' CRM system, which is password protected.  Only Plaintiffs' employees and independent contractors who have a specific need to access such information for the development of Plaintiffs' business are given password access the CRM system; access to such information is for the exclusive purpose of carrying out and in furtherance of Plaintiffs' business.   Other trade secrets of Plaintiffs' are similarly protected and kept in a protected form.

48.     During all times relevant to this suit, Plaintiff TLI's independent contractors, including seminar instructors and sales personnel, including Defendant Jackson, were engaged subject to the terms of the Independent Contractor Agreement for The Leader's Institute (TLI) Consultants, which agreement included a non-compete clause prohibiting the use of Plaintiffs' customer lists for a period of 18 months after termination of such agreements.

49.     Additionally, all employees and independent contractors, including Defendant Jackson, who are given access to Plaintiffs' trade secrets, including course and event materials and instruction techniques, customer/client lists, client contact information, pricing methods, training materials, sales and marketing materials and strategies, financial information, *inter alia*, are advised orally that such information is confidential and proprietary to Plaintiffs and must not be disclosed.

50.     More recently, employees, independent contractors and licensees of Plaintiff TLI, as a condition of gaining access to Plaintiffs' trade secrets and other confidential information in

printed form, are required to sign a non-disclosure agreement whereby they are advised and agree that such information constitutes trade secrets and that each has a fiduciary responsibility to Plaintiffs to keep confidential Plaintiffs' trade secrets.

## VII.

### Defendants Jackson and Magnovo

51.     Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

52.     Defendant Jackson first entered into an independent contractor relationship with Plaintiff TLI to conduct public speaking seminars in December 2006, and worked in such capacity with Plaintiff TLI until approximately January 2009.  During such time period, Defendant Jackson became Vice President of Instruction for Plaintiff TLI.

53.     As an officer of Plaintiff TLI, Defendant Jackson had a fiduciary duty to Plaintiffs and was also in a confidential relationship with Plaintiffs.  Part of Defendant Jackson's duties as Vice President of Instruction included advising all instructors for Plaintiff TLI of the confidentiality of Plaintiffs' customer lists and the need to keep such information confidential.

54.     In January 2009, Plaintiff TLI terminated its relationship with Defendant Jackson when it learned that Jackson and another independent contractor of Plaintiff TLI were engaging in direct competition with Plaintiffs through a business Jackson established in Texas, namely Magnovo, LLC, a Texas limited liability company with offices in Dickinson and Houston Texas, and which is the predecessor to Defendant Magnovo.

55.     Thereafter, in or about September 2010, Defendant Jackson contacted Plaintiff Staneart in Texas seeking to join Plaintiff again as a contractor.

56.     Defendant Jackson contacted Plaintiff Staneart in Texas again in October of 2010,

requesting to become an independent contractor of Plaintiff TLI and offering to instruct classes wherever available across the United States and to pay his own travel expenses.

57.     In November 2010, Defendant Jackson again contacted Plaintiff Staneart in Texas regarding work, at which time Staneart offered Jackson an upcoming Build-A-Bike® leadership and team building event in Texas if Defendant Jackson was willing to pay his own travel expenses.

58.     Defendant Jackson agreed to teach the course and flew to Texas at his own expense and taught the class in Grapevine, Texas.

59.     While in Texas, Defendant Jackson and Plaintiff Staneart met to discuss further Defendant Jackson's desire to enter into a new contractual arrangement with Plaintiff TLI. During such meeting in Texas, Defendant Jackson entered into a new independent contractor relationship with Plaintiff TLI, although Defendant did not sign the formal Independent Contractor Agreement until February 2011.

60.     Pursuant to the terms of the Independent Contractor Agreement for The Leader's Institute, Jackson agreed as follows:

> Any client list developed through advertising or marketing from TLI, the course materials and instructional techniques used, and the goodwill generated by this client list and instruction materials and techniques are the intellectual property of TLI.  So by approving to the terms of this agreement, you also agree to not use the client list developed by you while working as an agent of TLI, or client lists developed by other TLI instructors, to compete with TLI for a period of 18 months after the termination of this agreement.

61.     The purpose of the foregoing covenant was to protect business goodwill, trade secrets, and confidential information belonging to Plaintiffs.

62.     During Defendant Jackson's second contractual relationship with Plaintiff TLI, he taught classes across the United States, including Texas.  Several of Plaintiff TLI's customers, including

some of its Texas customers were repeat customers, who purchased additional classes and events over many years.

63.   While performing work for Plaintiff TLI as an independent contractor working in Texas, Defendant Jackson took advantage of his confidential relationship with Plaintiffs and access to Plaintiffs' customers and intercepted and secured for himself a future contract for a public speaking seminar in Texas which Defendant Jackson admittedly taught in August 2013, the very month that he terminated his contractual relationship with Plaintiff TLI.

64.   On information and belief, while in a confidential relationship with Plaintiffs, Defendant Jackson interfered with the prospective contracts with other repeat customers of Plaintiffs, for which there was a reasonable probability that such customers would have entered into contracts with Plaintiffs but for Defendant Jackson's conduct.     Such customers include, but are not limited to, Novartis Consumer Health, Inc. and Royal Caribbean Cruise Line.

65.   On August 1, 2013, Defendant Jackson gave written notice terminating his relationship with Plaintiff TLI via email sent to Plaintiff TLI in Texas.   Although Defendant Jackson allegedly returned to Plaintiffs hard copies of materials that had been furnished by Plaintiffs to Defendant Jackson, until Plaintiffs received Defendant Jackson's written notice, Defendant Jackson had full access to Plaintiffs' confidential proprietary information via his password protected access to Plaintiffs' CRM system.

66.   On information and believe, Defendant Jackson, in violation of his confidential relationship with Plaintiffs, copied Plaintiffs' customer contact list and/or has utilized such confidential proprietary trade secrets in direct competition with Plaintiff.  At least as early as July 2015, while still employed by Plaintiff TLI, Defendant Jackson began contacting Plaintiffs' customers to sell the services of Defendant Magnovo.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

67.     Moreover, approximately one week before Defendant Jackson terminated his relationship with Plaintiffs, the website for Jackson's company, Defendant Magnovo, was refreshed with changes that misleadingly included a list of several of Plaintiffs' customers as companies that trust Magnovo, expressly implying that they were or are customers of Magnovo.

68.     Defendant Jackson serviced the identified companies' accounts while in a confidential relationship with Plaintiffs and while performing services for Plaintiff TLI as an independent contractor.   The refreshed website also advertised "Texas Team Building' workshops and training events and included Dallas, Fort Worth, Houston, Plano, San Antonio and Waco as the Texas cities in which Magnovo provides its services.

69.     Additionally, Defendant Magnovo's interactive website advertised Bicycle Team Building Locations across the country including Texas and specifically identifying Dallas, Texas as a city in which its services were available.

70.     In or about December 2013, Plaintiffs became aware that Defendants were using numerous domain names, marks, phrases and terms that are identical or nearly identical to the Build-A-Bike® Mark to advertise and sell charity team building and related services in direct competition with Plaintiffs.

71.     In or about October 2013, Defendant Jackson, registered the domain name www.letsbuildabike.com with knowledge of Plaintiff Staneart's federally registered Build-A-Bike® Mark and without Plaintiffs' knowledge or consent.

72.     In or about January 2014, Defendant Jackson, registered the domain name www.charitybuildabike.com with knowledge of Plaintiff Staneart's federally registered Build-A-Bike® Mark and without Plaintiffs' knowledge or consent.

73.     In or about January 2014, Defendant Jackson, registered the domain name

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

www.buildabikecharity.com with knowledge of Plaintiff Staneart's federally registered Build-A-Bike® Mark and without Plaintiffs' knowledge or consent.

74.     In  or  about  January  2014,  Defendant  Jackson,  registered  the  domain  name www.buildabikeforcharity.com with knowledge of Plaintiff Staneart's federally registered Build-A-Bike® Mark and without Plaintiffs' knowledge or consent.

75.     The     domain     names     www.letsbuildabike.com,     www.charitybuildabike.com, www.buildabikecharity.com,  and  www.buildabikeforcharity.com  (collectively,  the  Infringing Domains), incorporate Plaintiff TLI's Build-A-Bike® Mark in its entirety. Thus, the Infringing Domains are confusingly similar to the Build-A-Bike® Mark and violate Plaintiff TLI's Build-A-Bike® Mark.

76.     Defendants posted multiples pages at the Infringing Domains with various extensions for sub-pages  with  all  or  most  of  the  pages  and  sub-pages  displaying  the  Build-A-Bike®  Mark and/or nearly identical and confusingly similar marks including BUILD A BIKE, LET'S BUILD A BIKE!, CHARITY BUILD A BIKE, BUILD A BIKE FOR CHARITY, BUILD BIKES FOR CHARITY  and/or  variations  thereof  (the  "Infringing  Marks").    Defendants  also  use  the Infringing Marks in the title, page source, metatags, and/or picture files and text of the websites located at the Infringing Domains.

77.     Defendants' use of the Infringing Domains and Infringing Marks on the websites located at the Infringing Domains give the impression to visitors that they were at Plaintiff` TLI's site.

78.     Defendants use the Infringing Domains and Infringing Marks to advertise and sell charity team building and related services in direct competition with Plaintiffs.

79.     Defendants  posted  or  allowed  to  be  posted  on  the  websites  located  at  the  Infringing Domains,  the  website  located  at  www.mangnovo.com,  other  websites  under  the  control  of

Defendants, and third-party websites, information that lead potential customers to believe that Defendants are associated with Plaintiffs and thereby used Plaintiffs' goodwill to promote and sell competing services.

80.     Other third-party websites refer to Magnovo's services as "Build-A-Bike" and comprise infringing content that, at the least, stems from Defendants' providing infringing content, which further leads potential customers to believe that Defendants are associated with Plaintiffs.

81.     Defendants began using the Infringing Marks for charity team building and related services subsequent to Plaintiff Staneart's use and registration of the Build-A-Bike® Mark, without Plaintiffs' permission, and with full knowledge of Plaintiffs' ownership and long-time and continued use of the Build-A-Bike® Mark.

82.     Defendants registered and began using the Infringing Domains for charity team building and related services subsequent to Plaintiffs' use and registration of the Build-A-Bike® Mark, without Plaintiffs' permission and with full knowledge of Plaintiffs' ownership and long-time and continued use of the Build-A-Bike® Mark.

83.     Defendants were aware of Plaintiff Staneart's registration and use of the Build-A-Bike® Mark at the time Defendant Jackson registered the Infringing Domains and, nonetheless, registered the Infringing Domains with the bad-faith intent to profit from the goodwill and value associated with the Build-A-Bike® Mark and confuse customers and to divert them to the websites associated with the Infringing Domains.

84.     Defendants adopted the Infringing Marks in a deliberate attempt to confuse consumers and trade on the name, goodwill and reputation of Plaintiffs, and registered the Infringing Domains with the bad-faith intent to profit from the goodwill and value associated with the Build-A-Bike® Mark and confuse customers and to divert them to the websites associated with

the Infringing Domains.

85.     The Infringing Marks and Infringing Domains are identical or nearly identical to the Build-A-Bike® Mark and convey substantially the same commercial impression as the Build-A-Bike® Mark.

86.     Plaintiffs, by correspondence dated on or about September 9, 2014, advised Defendants that the use of the Infringing Marks and Infringing Domains was likely to cause consumer confusion with the Build-A-Bike® Mark and requested that Defendants cease all references to the Build-A-Bike® Mark, including on their websites, and to cease use the Infringing Marks, Infringing Domains, and any other marks or domain names that are identical or confusingly similar to the Build-A-Bike® Mark.

87.     Despite constructive and actual knowledge of Plaintiff Staneart's extensive rights in the Build-A-Bike® Mark and requests to cease using the Infringing Marks and Infringing Domains, Defendants continued such improper use.

88.     While Defendants removed some instances of "build a bike" in connection with their websites, they continue to use "build a bike" and/or other marks that are confusingly similar to the Build-A-Bike® Mark on their websites and/or in the title, page source, metatags, and/or picture files and text of their websites.  Defendants also continue to use the Infringing Domain names to direct consumers to their websites.

89.     As detailed more fully in Section C below, until the UDRP Panel ordered transfer of the Infringing Domains, Defendants used the Infringing Domains and Infringing Marks in conjunction with services and websites that directly competed with Plaintiffs.

90.     Defendants are not affiliated with Plaintiffs and are not authorized to use Plaintiff TLI's trademarks or to profit from the goodwill Plaintiffs have generated in the Build-A-Bike® Mark.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

91.     Defendants have no legitimate reason to use Plaintiff TLI's Build-A-Bike® Mark, including in connection with their online commercial activities.

92.     Upon information and belief, Defendants knowingly and intentionally used the Build-A-Bike® Mark, Infringing Marks and Infringing Domains to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, as to some presumed but nonexistent affiliation, connection or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' services by Plaintiffs.

93.     Defendants' knowing and intentional unauthorized use of the Build-A-Bike® Mark falsely indicates to the purchasing public that Defendants are affiliated, connected or associated with Plaintiffs, or are endorsed or approved by Plaintiffs, as believed to be intended by Defendants.

94.     Defendants' use of the Infringing Marks and Infringing Domains in connection with services that are similar and/or identical to those of Plaintiffs' services and directed to the same types of consumers and to solicit customers is likely to cause confusion, mistake or deception as to the source or origin of Defendants' services, in that the public is likely to believe that Defendants' services are affiliated with, sponsored by and/or approved by Plaintiffs, or indeed are Plaintiffs' services.

95.     Defendants, in connection with the advertising and sale of services in connection with the Infringing Marks, which are confusingly similar to the Build-A-Bike® Mark, have intentionally held themselves out to be affiliated with Plaintiffs and created a false association between the genuine services provided by Plaintiffs and those associated with Defendants.

96.     Defendants' infringing and violating conduct was undertaken intentionally, willfully and with wanton disregard of Plaintiffs' rights, and designed to unlawfully misappropriate and trade

off Plaintiffs' goodwill and reputation.

97.    Defendants' use of the Infringing Marks and Infringing Domains constitutes a clear violation of Plaintiff TLI's federal trademark rights under the Lanham Act and common law rights in the Build-A-Bike® Mark.

98.    Furthermore, as stated above, it is uncontested that within weeks of terminating his contract with Plaintiff TLI, Defendant Jackson, on behalf of Defendant Magnovo, taught a public speaking class, a service never before advertised by Magnovo, to one of Plaintiff TLI's former customers in Texas, with whom Defendant Jackson had serviced on Plaintiff TLI's behalf.  This was a result of Defendants' tortious conduct specifically direct at Texas and a direct breach of the parties' contract.

99.    Additionally, Defendants are utilizing Plaintiffs' confidential and proprietary customer lists and contact information to continue to compete with Plaintiffs to Plaintiffs' detriment and harm and thereby giving Defendants an unfair competitive advantage and economic benefit which they would not otherwise have.

## VIII.

## CAUSES OF ACTION

100.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

### A.    Infringement of Federally Registered Service Mark Under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1))

101.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

102.    As established by the registration for the Build-A-Bike® Mark, the Build-A-Bike® Mark is protectable and enforceable against Defendants, Plaintiff TLI is the owner of the mark, and

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

Plaintiffs are  the senior user of the mark.

103.    Defendants have infringed Plaintiffs' rights in the Build-A-Bike® Mark in violation of 15 U.S.C. § 1114.

104.    Defendants' acts constitute use in commerce, without the consent of Plaintiffs, of a reproduction, counterfeit, copy, or colorable imitation of the federally registered Build-A-Bike® Mark, in connection with the sale, offering for sale, distribution, or advertising of services in a manner likely to cause confusion or mistake, or to cause mistake or to deceive, customers as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' services, and therefore infringes Plaintiffs' rights in the Build-A-Bike® Mark in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

105.    Defendants are infringing the Build-A-Bike® Mark with full knowledge of Plaintiffs' rights, and such infringement is willful and intentional.

106.    Plaintiffs have been damaged by Defendants' willful and intentional acts of infringement and unless this Court restrains Defendants from further infringing conduct, Plaintiffs will continue to suffer irreparable harm.

107.    Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct.  In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be preliminarily and upon hearing, permanently enjoined from using Plaintiff TLI's Build-A-Bike® Mark or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in metatag data, or otherwise, to market, advertise, or identify Defendants' services.

108.    Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover from Defendants: (i) Defendants' profits, (ii) the damages sustained by Plaintiffs, and (iii) the costs of this action.   Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Plaintiffs seek treble the amount of their actual damages. Due to the exceptional nature of this case, Plaintiffs also seeks their reasonable attorney's fees.

### B.   Statutory Infringement and False Designation of Origin Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125)

109.    Plaintiffs allege and hereby incorporate by reference each and every of the allegations made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

110.    The Build-A-Bike® Mark has become uniquely associated with and now identifies Plaintiffs' services throughout Texas and the United States.

111.    Plaintiffs own federal and common law trademark rights in the Build-A-Bike® Mark.

112.    Defendants' acts constitute false designation of origin and/or false description or representation that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' services or other commercial activities by Plaintiffs.

113.    Defendants intentionally engaged in conduct that constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

114.    Defendants' use in interstate commerce of the Infringing Marks is a willful attempt to trade upon Plaintiffs' reputation and business goodwill and constitutes a false designation of origin and/or false or misleading description of fact. All of this is likely to lead the public into believing that there is some affiliation, connection or association between Defendants and Plaintiffs when, in fact, no such affiliation or connection exists.

115.    Defendants' conduct constitutes an attempt to willfully and intentionally trade on the

goodwill that Plaintiffs have developed in the Build-A-Bike® Trademark, all to the damage of Plaintiffs.

116.    As a result of Defendants' conduct, Defendants have caused Plaintiffs irreparable harm and injury and will continue to do so unless Defendants are restrained and enjoined by this Court from further violation of Plaintiffs' rights.

117.    Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Defendants should be preliminarily and upon hearing, permanently enjoined from using Plaintiff TLI's Build-A-Bike® Mark or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in metatag data, or otherwise, to market, advertise, or identify Defendants' services.

118.    Plaintiffs are entitled to recover from Defendants: (i) Defendants' profits, (ii) the damages sustained by Plaintiffs, and (iii) the costs of this action.   Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Plaintiffs seek treble the amount of their actual damages. Due to the exceptional nature of this case, Plaintiffs also seeks their reasonable attorney's fees.

### C.   Violations of the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d))

119.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

120.    The Infringing Domains are each identical or confusingly similar to the Build-A-Bike® Mark, which was distinctive at the time Defendant Jackson registered each of the Infringing Domains.

121.    Defendant Jackson adopted and registered each of the Infringing Domains with a bad

faith intent to profit from the Build-A-Bike® Mark.

122.    Since registering the Infringing Domains, Defendants have used the Infringing Domains with a bad faith intent to profit from the Build-A-Bike® Mark.

123.    Defendants' activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

124.    On July 24, 2015, Plaintiff Staneart filed a UDRP Proceeding to recover the Infringing Domains from Defendant Jackson.  After the Panel issued a decision ordering the transfer of the Infringing Domains on September 4, 2015, the domain names were properly transferred to Plaintiffs.

125.    Defendants' actions were intentional and willful.

126.    Defendants' use of the Infringing Domains caused irreparable harm to Plaintiffs' goodwill and reputation.

127.    As a result of Defendants' conduct, Defendants have caused Plaintiffs irreparable harm and injury and will continue to do so unless Defendants are restrained and enjoined by this Court from further violation of Plaintiffs' rights.

128.    Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Defendants should be, upon hearing, permanently enjoined from using Plaintiff TLI's Build-A-Bike® Mark or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in metatag data, or otherwise, to market, advertise, or identify Defendants' services.

129.    Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(d), Plaintiffs are entitled to recover from Defendants:  (i) Defendants' profits, (ii) the damages sustained by Plaintiffs, and

(iii) the costs of this action.   Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Plaintiffs seek treble the amount of actual damages.  Due to the exceptional nature of this case, Plaintiffs also seeks their reasonable attorney's fees.

130.    Alternatively, at its election in its discretion, Plaintiffs seek to recover statutory damages of $100,000.00 for each Infringing Domain registered in bad faith as provided by 15 U.S.C. § 1117(d).

### D.  Unfair Competition Under 15 U.S.C. § 1125(a)

131.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

132.    Defendants' acts committed in the course of interstate commerce constitute materially false and misleading misrepresentations of fact with respect to the origin of Defendants' services, and the affiliation, sponsorship, and approval of Defendants' products and services in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

133.    Defendants should be preliminarily and, upon hearing, permanently enjoined from using the Build-A-Bike® Mark or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in metatag data, or otherwise, to market, advertise, or identify Defendants' services.

134.    Plaintiffs are entitled to recover from Defendants:  (i) Defendants' profits, (ii) the damages sustained by Plaintiffs, and (iii) the costs of this action.   Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Plaintiffs seek treble the amount of damages.  Due to the exceptional nature of this case, Plaintiffs seek their reasonable attorney's fees.

### E.  Unfair Competition by Misappropriation
### (Defendant Jackson)

135.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

136.    The actions of Defendant Jackson, as described above, in obtaining, retaining, and utilizing Plaintiffs' customer lists, contact information, marketing and sales materials, know how, and training and teaching materials, all of which Plaintiffs developed through extensive time, skill, labor and money constitutes unfair competition through misappropriation in violation of state and Federal law.

137.    Defendant Jackson has gained financial benefit for himself through use of Plaintiffs' property because Defendant Jackson has not been burdened with the expenses incurred by Plaintiffs to develop such information.

138.    Defendant Jackson has used Plaintiffs' property to: (a) gain access to the market; (b) to prepare and make sales proposals to Plaintiff's prior customers and prospects; and (c) to conduct team-building events and teach public-speaking seminars to Plaintiffs' prior customers and prospects.

139.    As a direct and proximate result of Defendant Jackson's wrongful acts, Plaintiffs believe that they have lost customers and sales.

140.    Further, Plaintiffs have lost the benefit of their investment of time, money and resources in building their customer base and sales prospects internal contact lists and other proprietary property.

141.    Upon information and belief, Defendant Jackson continues to engage in such unfair competitive practices and the ensuing damages to Plaintiffs, therefore, are continuing and unabated.

142.   The continued wrongful use of Plaintiffs' property will continue to cause Plaintiffs immediate and irreparable harm that cannot adequately be addressed at law, for which Plaintiff seeks injunctive relief.

143.   Plaintiffs have been damaged by Defendant Jackson's actions.   Under Texas law, Plaintiffs are entitled to recover actual damages and exemplary damages due to the knowing, willful, and intentional nature of Defendant Jackson's actions.

   **F.   Misappropriation of Trade Secrets
       (Defendant Jackson)**

144.   Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

145.   Defendant Jackson is liable to Plaintiffs for misappropriation of their confidential and proprietary information and trade secrets.

146.   At all times relevant to this cause of action, Plaintiffs were the exclusive owners of the trade secrets including their customer lists, customer contacts, information contained in their confidential CRM system, course and event materials and instruction techniques, pricing methods, training materials, sales and marketing materials and strategies, customer proposals and financial information.

147.   Plaintiffs developed their confidential, proprietary and trade secret information identified in the foregoing paragraph through extensive time, skill, labor and money.

148.   The confidential, proprietary and trade secret information is unique to Plaintiffs, is not generally known to the public, is a valuable and integral asset to Plaintiffs' business, and is maintained and treated by Plaintiffs as trade secrets.

149.   Upon information and belief, before Defendant Jackson terminated his contractual arrangement with Plaintiff TLI, he unlawfully and without authority misappropriated Plaintiffs'

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                      Page 26

trade secrets as follows:

      a.  Customer lists and contact information;

      b.  Training materials;

      c.  Sales and marketing materials; and

      d.  Photographs from seminars and classes put on by Plaintiffs.

150.    More specifically, Defendant Jackson took such trade secrets into his possession, custody and control by accessing Plaintiffs' password protected CRM system located on Plaintiffs' server in Texas, not for the permitted purpose of making sales for Plaintiff TLI but for the unlawful purpose of using such information to access the market in direct competition with Plaintiffs, in fact, even before ended his relationship with TLI, and without being burdened by spending the time and money necessary to create and compile such information.

151.    Defendant Jackson, after obtaining Plaintiffs' confidential, proprietary, and trade secret information by improper means, is using such property in direct competition with Plaintiffs' business and are unlawfully receiving value as a result of such acts.

152.    Defendant Jackson's actions constitute the misappropriation of Plaintiffs' trade secrets in violation of both Texas and Federal common law and the Texas Uniform Trade Secrets Act, Chapter 134A, Texas Civil Practice and Remedies Code, section 134A.001, *et seq.*

153.    Defendant Jackson's actions were committed with reckless indifference to Plaintiffs' rights. Accordingly, Plaintiffs sue for punitive and exemplary damages with regard to this count.

154.    The continued wrongful use of Plaintiffs' proprietary and confidential information and business trade secrets, and any disclosure of that information to third parties, will result in immediate and irreparable harm to Plaintiffs that cannot be adequately addressed at law.

155.    Absent an order from this Court ordering Defendants to return the parties to the status

quo that existed before Defendant Jackson misappropriated Plaintiffs' property, by providing to Plaintiffs their proprietary and confidential information and trade secrets, and enjoining Defendant Jackson from using or disclosing such confidential information and trade secrets to others, Plaintiffs will suffer continuing damages.

156.    Plaintiffs sue for the immediate return and replevin of their property and for all revenue collected by Defendants as a result of the unauthorized use of such property.

157.    Plaintiffs have been damaged by Defendant Jackson's actions.   Under Texas law, Plaintiffs are entitled to recover actual damages and exemplary damages due to the knowing, willful, and intentional nature of Defendant Jackson's actions.

### G. Conversion
   ### (Defendant Jackson)

158.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

159.    Defendant Jackson is liable to Plaintiffs for conversion of its property.

160.    Upon information and belief, before Defendant Jackson terminated his contractual arrangement with Plaintiff TLI, he unlawfully and without authority assumed dominion and control over Plaintiffs' property as follows:

   a.  Customer lists and contact information;

   b.  Training materials;

   c.  Sales and marketing materials; and

   d.  Photographs from seminars and classes put on by Plaintiff.

161.    More specifically, Defendant Jackson took such property into his possession, custody and control by accessing Plaintiffs' password protected CRM system located on Plaintiffs' server in Texas, not for the permitted purpose of making sales for Plaintiff TLI but for the unlawful

purpose of using such information to access the market in direct competition with Plaintiffs, but without being burdened by spending the time and money necessary to create and compile such information.

162.   Plaintiffs demanded return of the property, but Defendant Jackson refused to return it.

163.   Defendant Jackson's actions were committed with reckless indifference to Plaintiffs' rights.  Accordingly, Plaintiffs sue for punitive and exemplary damages with regard to this count.

164.   Plaintiffs sue for the immediate return and replevin of their property and for all revenue collected by Defendants as a result of the unauthorized use of such property.

165.   Plaintiffs have been damaged by Defendant Jackson's actions.   Under Texas law, Plaintiffs are entitled to recover actual damages and exemplary damages due to the knowing, willful, and intentional nature of Defendant Jackson's actions.

### H.  Breach of Contract
   (Defendant Jackson)

166.   Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

167.   Defendant Jackson breached his contractual obligations under the Independent Contractor Agreement for The Leader's Institute™ (TLI) Consultants by which Defendant agreed not to use Plaintiffs' intellectual property, including its client lists, to compete with Plaintiff TLI for a period of eighteen (18) months after termination of the agreement, which in this case is no sooner than February 28, 2015.

168.   Defendant Jackson began using Plaintiffs' customer lists and/or contacts to compete with Plaintiff TLI while still engaged as an independent contractor for Plaintiff TLI and continues to use Plaintiffs' customer lists to date.

169.   As a direct and proximate result of Defendant Jackson's breach of the Independent

Contractor Agreement, Plaintiffs have incurred damages, as forth below, for which they now sue. Plaintiffs are entitled to recover actual damages.  Additionally, under the Texas Civil Practice and Remedies Code § 38.001, Plaintiffs are entitled to recover their attorneys' fees.

**I.  Tortious Interference with Prospective Business Relations**
    **(Defendant Jackson)**

170.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

171.    As more fully described above, Defendant Jackson took advantage of his confidential relationship with Plaintiffs and his access to Plaintiffs' proprietary information, including Plaintiffs' customer lists and prospective customers' internal contact lists and wrongfully intercepted opportunities for future public speaking seminars and team building events.

172.    Rather than advising Plaintiff TLI of its customers' or prospective customers' interests in scheduling a public speaking seminar or team-building event, Defendant Jackson instead entered into contractual relations with such customers and prospective customers on behalf of Magnovo, including, without limitation, on information and belief, contracts with Plaintiff' TLIs customers StatOil in Houston, Texas,  Novartis Consumer Health, Inc. in New Jersey, and Royal Caribbean Cruise Line in Florida.  Such actions violated Defendant Jackson's confidential relationship with Plaintiffs and thus are independently tortious in nature.

173.    Because Plaintiff TLI has previously contracted with the customers whose business Defendant Jackson usurped and such customers were satisfied customers seeking additional services, it is reasonably probable that, but for Defendant Jackson's interference, Plaintiff TLI would have entered into additional contracts with such parties, including StatOil, Novartis Consumer Health, Inc., and Royal Caribbean Cruise Line.

174.    Defendant Jackson's intentional interference with Plaintiffs' prospective business

relationships has caused damage to Plaintiffs by depriving Plaintiffs of profits they would otherwise have received under the contract, for which damages Plaintiffs now sue.

175.    Plaintiffs have been damaged by Defendants' actions.  Under Texas law, Plaintiffs are entitled to recover actual damages and their costs associated with this lawsuit.

### J.   Trademark Infringement in Violation of Texas Law

176.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

177.    As more fully described above, Plaintiffs are the senior user of the Build-A-Bike® Mark and enjoys priority over Defendants.  Defendants' use in commerce of the Build-A-Bike® Mark and use in commerce of the confusingly similar Infringing Marks in connection with competing services constitute infringement of Plaintiffs' common-law rights to the Build-A-Bike® Mark. Defendants' use of the Infringing Marks is likely to cause confusion or mistake as to the source of Defendants' services.

178.    In accordance with Texas law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Build-A-Bike® Mark or any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword bidding or advertising, in metatag data, or otherwise, to market, advertise, or identify Defendants' services.

179.    Plaintiffs have been damaged by Defendants' actions.  Under Texas law, Plaintiffs are entitled to recover actual damages and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

### K.  Unfair Competition Under Texas Law

180.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

181.    Defendants have engaged in commerce in the State of Texas and this judicial district by marketing, offering to sell, and selling Defendants' competing services.  Defendants have advertised their services on their active websites as well as in conjunction with other marketing material.  Defendants have competed unfairly in violation of Texas law by misrepresenting or misleading the public to believe that their services are sponsored by, approved by, affiliated with, associated with, or originated by Plaintiffs.

182.    In accordance with Texas law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Build-A-Bike® Mark or any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in metatag data, or otherwise, to market, advertise, or identify Defendants' services.

183.    Plaintiffs have been damaged by Defendants' actions.  Under Texas law, Plaintiffs are entitled to recover actual damages caused by Defendants' unfair competition and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

### L.  Unjust Enrichment Under Texas law

184.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

185.    As set forth above, Defendants have used the Build-A-Bike® Mark and Plaintiffs' goodwill as an integral step of Defendants' sales of their and services.  On information and

belief, Defendants have received a direct pecuniary benefit from these unlawful acts.  Defendants are therefore unjustly enriched to Plaintiffs' detriment.  As a result, Plaintiffs are entitled to recover actual damages caused by Defendants' unjust enrichment.

## IX.

## REQUEST FOR INJUNCTIVE RELIEF

186.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

187.    Defendants have violated 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(d), and Texas law, and Plaintiffs are, therefore, entitled to injunctive relief under 15 U.S.C. § 1116 and Texas law.

188.    Plaintiffs request that the Court issue preliminary and permanent injunctive relief enjoining Defendants and their officers, directors, agents, employees, successors, assigns and attorney, and all other persons or entities in active concert or participation with Defendants who receive notice of the injunction by personal service or otherwise, from doing, aiding, causing or abetting the following:

   a.  Any use whatsoever of Plaintiff TLI's marks, specifically including the Build-A-Bike® mark, any phrases or marks including "BUILDABIKE" or a derivative thereof, and/or any confusingly similar phrases or marks including, but not limited to, "LETS BUILD A BIKE!", " CHARITY BUILD A BIKE," "BUILD A BIKE FOR CHARITY," and "BUILD BIKES FOR CHARITY";

   b.  Doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition, or quality of products and/or services created, developed, produced, distributed, marketed, advertised, promoted, offered for sale, or sold by Defendants;

   c.  Doing any act or things calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Plaintiffs;

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                    Page 33

    d.   Any use of promotional materials created by and/or created for Plaintiffs, including but not limited to pictures taken at Plaintiffs' seminars, fund raising and/or promotional events;

    e.   Any use whatsoever, including contacting, referencing, copying, and/or disclosing Plaintiffs' customer/client lists or any specific information contained in the Customer Relations Management database (InfusionSoft) utilized by Plaintiffs;

    f.   Any use whatsoever, including contacting, referencing, copying, and/or disclosing specific customer/client information developed by Defendants or other TLI instructors while providing services for Plaintiffs which was not input into InfusionSoft, until February 1, 2015;

    g.   Maintaining any direct contact through any means, including without limitation social network contacts and connections with specific employees, agents, representative or contacts of Plaintiffs' customers/clients, including any contacts established on Facebook, MySpace, LinkedIn or other social media site and specifically ordering Defendants to delete such contacts and connections currently established through any social media or other Internet source;

    h.   Any use whatsoever, including referencing, copying, and/or disclosing Plaintiffs' confidential proprietary information and trade secrets including, but not limited to, Plaintiffs' Corporate Handbook, pricing information, sales materials, including proposals, training materials, and event materials;

    i.   Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiffs' businesses and the goodwill attached thereto; and

    j.   Otherwise infringing any rights of Plaintiffs.

# X.

## DAMAGES

189.   Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

190.   As a direct and proximate result of the Defendants' actions as alleged herein, Plaintiffs have suffered actual damages and consequential damages, for which Plaintiffs now sue.

191.   Pursuant to 15 U.S.C. § 1117(a) and Texas law, Plaintiffs are entitled to an award of

compensatory damages and profits from Defendants based on their infringement of a federally registered mark, and requests that this award of damages and profits be trebled pursuant to 15 U.S.C. § 1117 as a result of Defendants' willful and intentional conduct and use of a counterfeit mark.

192.    Pursuant to 15 U.S.C. § 1117(d), Plaintiffs are entitled to statutory damages between $1,000 and $100,000 per infringing domain name.  Due to the willful and intentional conduct of Defendants, Plaintiffs seek $100,000 in statutory damages per Infringing Domain.

193.    With regard to Plaintiffs' claims for conversion and misappropriation of Plaintiffs' trade secrets and tortious interference with prospective contractual relations, in the alternative to actual damages, Plaintiffs should be awarded all revenue Defendants derived from any client, former client or prospective client of Plaintiff that was generated as a result of the use of Plaintiffs' confidential customer lists and contacts as that amount would represent Defendants' ill-gotten gain from their wrongdoing as alleged herein.

## XI.

## ATTORNEY FEES

194.    Plaintiffs allege and hereby incorporate by reference each and every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

195.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of Plaintiffs' attorneys' fees and costs.

196.    As a result of Defendants' wrongful actions described above, it was necessary for Plaintiffs to retain counsel to prosecute these claims for which Plaintiffs have incurred reasonable and necessary attorney fees.  Under the Texas Civil Practice and Remedies Code § 38.001, Plaintiffs are entitled to recover reasonable and necessary attorney fees and costs

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

incurred in the prosecution of this lawsuit.

## XII.

## JURY DEMAND

197.    Plaintiffs demand a trial by jury on their claims alleged against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff TLI and Plaintiff Staneart pray that Defendants Jackson and Magnovo be cited to appear and answer and that after a hearing, the Court grant the following relief:

1.  A preliminary injunction be issued, ordering the Defendants and any employees, representatives, agents, partners, associates, affiliates and all persons acting in concert or in active participation with Defendants:

    a.  Any use whatsoever of Plaintiff TLI's marks, specifically including the Build-A-Bike® mark, any phrases or marks including "BUILDABIKE" or a derivative thereof, and/or any confusingly similar phrases or marks including, but not limited to, "LETS BUILD A BIKE!", " CHARITY BUILD A BIKE," "BUILD A BIKE FOR CHARITY," and "BUILD BIKES FOR CHARITY";

    b.  Doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition, or quality of products and/or services created, developed, produced, distributed, marketed, advertised, promoted, offered for sale, or sold by Defendants;

    c.  Doing any act or things calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Plaintiffs;

    d.  Any use of promotional materials created by and/or created for Plaintiffs, including but not limited to pictures taken at Plaintiffs' seminars, fund raising and/or promotional events;

    e.  Any use whatsoever, including contacting, referencing, copying, and/or disclosing Plaintiffs' customer/client lists or any specific information contained in the Customer Relations Management database (InfusionSoft) utilized by Plaintiffs;

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                Page 36

f.   Any use whatsoever, including contacting, referencing, copying, and/or disclosing specific customer/client information developed by Defendants or other TLI instructors while providing services for Plaintiffs which was not input into InfusionSoft, until February 1, 2015;

g.   Maintaining any direct contact through any means, including without limitation social network contacts and connections with specific employees, agents, representative or contacts of Plaintiffs' customers/clients, including any contacts established on Facebook, MySpace, LinkedIn or other social media site and specifically ordering Defendants to delete such contacts and connections currently established through any social media or other Internet source;

h.   Any use whatsoever, including referencing, copying, and/or disclosing Plaintiffs' confidential proprietary information and trade secrets including, but not limited to, Plaintiffs' Corporate Handbook, pricing information, sales materials, including proposals, training materials, and event materials;

i.   Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiffs' businesses and the goodwill attached thereto; and

j.   Otherwise infringing any rights of Plaintiffs.

2.   A permanent injunction be issued, on final trial of this cause, ordering the Defendants Robert Jackson and Magnovo Training Group, Inc. and any employees, representatives, agents, partners, associates, affiliates and all persons acting in concert or in active participation with Defendants:

a.   Any use whatsoever of Plaintiff TLI's marks, specifically including the Build-A-Bike® mark, any phrases or marks including "BUILDABIKE" or a derivative thereof, and/or any confusingly similar phrases or marks including, but not limited to, "LETS BUILD A BIKE!", " CHARITY BUILD A BIKE," "BUILD A BIKE FOR CHARITY," and "BUILD BIKES FOR CHARITY";

b.   Doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition, or quality of products and/or services created, developed, produced, distributed, marketed, advertised, promoted, offered for sale, or sold by Defendants;

c.   Doing any act or things calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Plaintiffs;

    d.   Any use of promotional materials created by and/or created for Plaintiffs, including but not limited to pictures taken at Plaintiffs' seminars, fund raising and/or promotional events;

    e.   Any use whatsoever, including contacting, referencing, copying, and/or disclosing Plaintiffs' customer/client lists or any specific information contained in the Customer Relations Management database (InfusionSoft) utilized by Plaintiffs;

    f.   Any use whatsoever, including contacting, referencing, copying, and/or disclosing specific customer/client information developed by Defendants or other TLI instructors while providing services for Plaintiffs which was not input into InfusionSoft, until February 1, 2015;

    g.   Maintaining any direct contact through any means, including without limitation social network contacts and connections with specific employees, agents, representative or contacts of Plaintiffs' customers/clients, including any contacts established on Facebook, MySpace, LinkedIn or other social media site and specifically ordering Defendants to delete such contacts and connections currently established through any social media or other Internet source;

    h.   Any use whatsoever, including referencing, copying, and/or disclosing Plaintiffs' confidential proprietary information and trade secrets including, but not limited to, Plaintiffs' Corporate Handbook, pricing information, sales materials, including proposals, training materials, and event materials;

    i.   Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiffs' businesses and the goodwill attached thereto; and

    j.   Otherwise infringing any rights of Plaintiffs.

3.   Order Defendants and their officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them to identify all third parties to which Defendants have represented themselves to be sponsored by, approved by, affiliated with, associated with Plaintiffs and all third parties to which Defendants have distributed any type of materials incorporating the Build-A-Bike® Mark;

4.   Order Defendants to provide an accounting of all sales, revenues, and profits related to Defendants' services that infringe the Build-A-Bike® Mark and that were falsely designated as being sponsored by, approved by, affiliated with, or associated with Plaintiffs;

5.   In accordance with 15 U.S.C. § 1118, order that all materials in Defendants' possession or control bearing the Build-A-Bike® Mark be surrendered for destruction;

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

6.  Judgment against Defendants for damages;

7.  In accordance with Texas law and 15 U.S.C. §§ 1117(a), 1117(d), and 1120, award Plaintiffs there actual, exemplary, and treble damages;

8.  In accordance with Texas law and 15 U.S.C. §§ 1117(a) and 1117(d), award Plaintiffs all of Defendants' profits from the aforesaid acts of unjust enrichment, trademark infringement, unfair competition, and cybersquatting;

9.  In accordance with Texas law and 15 U.S.C. § 1117(a), find this case to be exceptional in Plaintiffs' favor and award Plaintiffs their reasonable attorney's fees, costs, and expenses of this action;

10. Replevy of Plaintiffs' property as described above;

11. Prejudgment and post-judgment interest as provided by law;

12. Exemplary damages;

13. Reasonable and necessary attorney fees;

14. Costs of court; and

15. Such other and further relief at law or in equity as Plaintiffs may be justly entitled.

Dated:  December 17, 2015.                    Respectfully submitted,

                                              /s/ Gary R. Sorden
                                              Gary R. Sorden (lead counsel)
                                              State Bar No. 24066124
                                              Darin M. Klemchuk
                                              State Bar No. 24002418
                                              Roxanne Edwards
                                              State Bar No. 24026817
                                              Corey Weinstein
                                              State Bar No. 24037685
                                              **KLEMCHUK LLP**
                                              8150 N. Central Expressway
                                              10th Floor
                                              Dallas, Texas 75206
                                              Tel. 214.367.6000
                                              Fax 214.367.6001
                                              gary.sorden@klemchuk.com
                                              darin.klemchuk@klemchuk.com
                                              roxanne.edwards@klemchuk.com
                                              corey.weinstein@klemchuk.com

                                              Cynthia A. Cook
                                              State Bar No. 04508025
                                              **BROWN, PC**
                                              500 Main Street, Suite 400
                                              Fort Worth, Texas 76102
                                              Tel. 817.8700025
                                              Fax 817.870.0515
                                              cynthia.cook@brownpc.com

                                              **ATTORNEY FOR PLAINTIFFS**
                                              **THE LEADER'S INSTITUTE, LLC**
                                              **AND DOUG STANEART**


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on December 17, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule 5.1(d).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

                                              /s/ Gary R. Sorden
                                              Gary R. Sorden


**PLAINTIFFS' THIRD AMENDED COMPLAINT**                    Page 40

# Exhibit A

**Int. Cl.: 41**

**Prior U.S. Cls.: 100, 101, and 107**

**United States Patent and Trademark Office**

**Reg. No. 3,535,706**

Registered Nov. 18, 2008

**SERVICE MARK**
**SUPPLEMENTAL REGISTER**

# Build-A-Bike

STANEART, DOUG (UNITED STATES INDIVI-
DUAL)
3233 SPRING CREST CT
HURST, TX 76053

FOR: EDUCATION SERVICES, NAMELY, PRO-
VIDING CLASSES, SEMINARS, AND WORKSHOPS
IN THE FIELD OF TEAM BUILDING AND LEA-
DERSHIP, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 10-15-2005; IN COMMERCE 10-15-2005.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 3,150,282.

SER. NO. 77-445,644, FILED P.R. 4-10-2008; AM. S.R.
9-12-2008.

BRIAN PINO, EXAMINING ATTORNEY

# Exhibit B

# United States of America

### United States Patent and Trademark Office

# BUILD-A-BIKE

**Reg. No. 4,542,884**

**Registered June 3, 2014**

**Int. Cl.: 41**

**SERVICE MARK**

**PRINCIPAL REGISTER**

DOUG STANEART (UNITED STATES INDIVIDUAL)
6703 CORONATION CT
ARLINGTON, TX 76017

FOR: EDUCATIONAL SERVICES, NAMELY, CONDUCTING CLASSES, SEMINARS, WORKSHOPS, LECTURES, AND SELF-PACED TRAINING PROGRAMS IN THE FIELD OF PERSONAL AND PROFESSIONAL DEVELOPMENT, LEADERSHIP, COMMUNICATION, AND TEAM BUILDING AND DISTRIBUTION OF EDUCATIONAL MATERIALS IN CONNECTION THEREWITH; PERSONAL COACHING SERVICES IN THE FIELD OF PERSONAL AND PROFESSIONAL DEVELOPMENT FOR INDIVIDUALS AND GROUPS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 10-15-2005; IN COMMERCE 10-15-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 3,535,706.

SEC. 2(F).

SER. NO. 86-079,796, FILED 10-1-2013.

SAMUEL E. SHARPER JR., EXAMINING ATTORNEY



**Deputy Director of the United States**
**Patent and Trademark Office**

APP 049