# EXHIBIT 17

1

```
 1             IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
 2                      DALLAS DIVISION

 3    THE LEADER'S INSTITUTE, LLC    §
      and DOUG STANEART,             §
 4              Plaintiffs,          §
                                     §        Case Number
 5    VS                             §     3:14-cv-03572-B
                                     §
 6    ROBERT JACKSON and MAGNOVO     §
      TRAINING GROUP, LLC,           §
 7              Defendants.          §
 8     - - - - - - - - - - - - - - - - - - - - - - - - -
           30(b)(6) ORAL AND VIDEOTAPED DEPOSITION OF
 9               MAGNOVO TRAINING GROUP, LLC
          BY AND THROUGH ITS DESIGNATED REPRESENTATIVE
10                   ROBERT C. JACKSON
                       JULY 18, 2016
11     - - - - - - - - - - - - - - - - - - - - - - - - -
12        30(b)(6) ORAL AND VIDEOTAPED DEPOSITION OF MAGNOVO
13    TRAINING GROUP, LLC BY AND THROUGH ITS DESIGNATED
14    REPRESENTATIVE, ROBERT C. JACKSON, produced as a
15    witness at the instance of the Plaintiffs, and duly
16    sworn, was taken in the above-styled and numbered
17    cause on the 18th day of July, 2016, from 9:13 a.m.
18    to 5:39 p.m., before Tommi Rutledge Gray, CRR,
19    Certified Shorthand Reporter No. 1693, in and for the
20    State of Texas, reported by computerized stenotype
21    machine and realtime at the Law Offices of Klemchuk
22    LLP, 8150 North Central Expressway, 10th Floor, Dallas,
23    Texas  75206, pursuant to Notice of Deposition,
24    Federal Rules of Civil Procedure and the provisions
25    stated on the record or attached hereto.
```

2

1               A P P E A R A N C E S

2

3    FOR THE PLAINTIFFS:

4               GARY R. SORDEN, ESQ.
                TIM CRADDOCK, ESQ. (Morning session only)
5               KLEMCHUK LLP
                8150 N. Central Expressway, 10th Floor
6               Dallas, Texas   75206
                Telephone: 214.367.6000
7               Fax:       214.367.6001
                E-mail:    gary.sorden@klemchuk.com
8                          tim.craddock@klemchuk.com

9

10

11   FOR THE DEFENDANTS:

12              MICHAEL V. MARCONI, ESQ.
                THE MARCONI FIRM
13              9284 Huntington Square
                North Richland Hills, Texas   76182
14              Telephone: 214.682.3592
                E-mail:    mmarconi416@icloud.com

15

16

17   ALSO PRESENT:        DAVID GUERRA, Videographer

18                        DOUG STANEART

19

20

21

22

23

24

25

 1    don't have in front of me.
 2         Q.    And today we have a Topic on Magnovo's
 3    Counterclaims, and what I'm looking for is your basis
 4    of those Counterclaims.
 5              Is your entire basis the substance of
 6    Interrogatory No. 8, your Response, and your Count
 7    III in your Counterclaims and Answer?
 8         A.    I don't know that without talking to counsel.
 9         Q.    Do you know whether you're under
10    investigation with the Department of Justice at this
11    point in time?
12         A.    I do not know.
13         Q.    Have you been contacted by the Department
14    of Justice at this point in time?
15         A.    No.
16         Q.    Have you received any kind of correspondence
17    from the Department of Justice at this point in time?
18         A.    No.
19         Q.    Have you reviewed any documents the
20    Department of Justice have been provided to TLI?
21         A.    No.
22         Q.    Okay.  Do you know whether a Subpoena was
23    sent by the Department of Justice to TLI requesting
24    documents?
25         A.    Do I know?

1      Q.     Uh-huh.

2      A.     I have heard, yes.

3      Q.     But you haven't seen the Subpoena; is that

4  correct?

5      A.     No; correct.

6      Q.     And you believe that there's in-person

7  telephone conversations with Defendants and Chris

8  McNeeney, Joe Jessup, and Ellen Patanude regarding

9  false statements made by Defendants; is that correct?

10     A.     Yes.

11     Q.     Do you have any record or evidence of those

12  in-person or telephonic communications?

13     A.     You mean did I record them?

14     Q.     Yes.

15     A.     No.

16     Q.     Do you have any evidence they actually

17  occurred?

18     A.     Their -- probably their -- them --

19     Q.     Okay.

20     A.     -- witnessing to it.

21     Q.     Other than them potentially witnessing these

22  teleconferences or in-person communications, do you

23  have any documents that evidence the conversations

24  that went on between Defendants and Chris McNeeney,

25  Joe Jessup, and Ellen Patanude?

 1        A.    No.
 2        Q.    What damages do you seek on behalf of your
 3   defamation claim?
 4        A.    I'm not sure.
 5        Q.    How much damages do you seek for your
 6   defamation claim?
 7        A.    I would have to consult with my attorney
 8   to know.
 9        Q.    You also made a claim for fraud.  I believe
10   you said that the filing of a Magnovo trademark was
11   fraud in Magnovo's opinion; is that correct?
12        A.    Yes.
13        Q.    Which damages do you seek on behalf of your
14   counterclaim for fraud in this matter?
15        A.    I would have to consult with my attorneys
16   to know.
17        Q.    So sitting here today without consulting
18   with your attorneys, you have no idea how much
19   damages you seek for any of your Counterclaims; is
20   that correct?
21        A.    We don't have an exact amount yet, no.
22        Q.    Who at Magnovo will testify as to the amount
23   of damages that relate to any of your Counterclaims?
24        A.    Probably me.
25        Q.    And we've asked Topics in this 30(b)(6)

 1   deposition regarding the damages you seek.

 2           Do you understand that?

 3       A.   Yes.

 4       Q.   And sitting here today, you cannot tell me

 5   the damages you seek for any Counterclaims in this

 6   lawsuit; is that correct?

 7       A.   Correct.

 8       Q.   Have you designated or re -- retained an

 9   expert on damages?

10       A.   I don't know.

11       Q.   You -- you're here on behalf of Magnovo,

12   are you not?

13       A.   Yes.

14       Q.   Have you retained an expert for damages in

15   this case?

16       A.   I don't know.

17       Q.   Have you retained anybody in this case

18   besides your attorneys?

19       A.   I'm not sure.

20       Q.   Do you understand the deadline for -- for

21   experts in this case passed this Friday?

22       A.   No, I wasn't aware of that.

23       Q.   Do you understand that that expert

24   deadline was for the party with the burden of proof?

25       A.   No.

1      Q.    And do you understand that it's your burden

2   of proof on your Counterclaims to prove not only

3   liability, but also for damages?

4      A.    No.

5      Q.    You don't know that?

6      A.    I -- I'm sure it's on our side, yes.

7      Q.    Okay.  And because you did not designate a

8   damages expert on this case, I'm asking you who from

9   Magnovo will testify as to damages for your

10  Counterclaims in this case?

11     A.    And I will answer again, I don't know.

12     Q.    But you understand I have Topics on all of

13  your Counterclaims and -- and the damages you seek

14  for today's deposition, correct?

15     A.    I'm not sure.

16          MR. SORDEN:  Can we stipulate to the

17  fact that we have questions on damages?

18          MR. MARCONI:  You have questions.  I

19  mean, it's -- it's getting tedious.  I mean, the fact

20  of the matter is --

21          MR. SORDEN:  He's not ready for it.

22          MR. MARCONI:  Well, no, other than

23  statutory damages and attorneys' fees, which I think

24  we've already agreed we're not going to produce

25  attorneys' fee information, that's what we're seeking.

```
 1        A.     Has he turned over the information that says
 2    so?
 3        Q.     I'm asking you the questions.
 4        A.     Not unless he lets us know.  We have no way
 5    of knowing that.
 6        Q.     Do you know --
 7        A.     We have no control over the website.  He
 8    owned the website.  No, I do not.
 9        Q.     So to be fair, your allegations of the
10    framing of the bicycle-team-building-events.com
11    website caused no harm to Magnovo; is that correct?
12        A.     I say it's totally incorrect.  It did -- did
13    cause harm to me.
14        Q.     Which harm did it --
15        A.     It caused harm for the potential that we
16    would have had business if it would have gone to the
17    right place -- if those inquiries would have gone to
18    Magnovo instead of The Leader's Institute.
19        Q.     So you believe that all business obtained
20    through the framing of bicycle-team-building-
21    events.com are -- you're entitled to for damages for
22    tortious interference of business relations?
23        A.     Yes.
24        Q.     Do you have any documents on that assertion?
25        A.     No.
```

Jackson, Robert C. - 7/18/2016

141

1       Q.      You have no proof whatsoever?

2       A.      No.

3       Q.      Other than attorneys' fees, are you seeking

4    any damages related to your claim of tortious

5    interference with business relations?

6       A.      No.

7       Q.      Other than attorneys' fees and costs of this

8    lawsuit, are you seeking any other damages related to

9    your abuse of process claim?

10      A.      No.

11      Q.      Other than attorneys' fees and costs of your

12   lawsuit, are you claiming any damages for your fraud

13   claims?

14      A.      No.

15      Q.      And for your defamation claims, other than

16   attorneys' fees and costs of this lawsuit, are you

17   seeking any other damages?

18      A.      My understanding of what the defamation is,

19   I'll sell it to the jury.

20      Q.      But today, Magnovo has no other number other

21   than the costs of this lawsuit or attorneys' fees

22   related to the damages for its defamation counterclaim?

23      A.      Correct.

24      Q.      Count IV relates to the cancellation of the

25   BUILD-A-BIKE® Marks.

1          Do you understand that?  I'm looking at
2     Paragraph 244 on Exhibit 3.
3          A.    Uh-huh; yes.
4          Q.    Looking at the Counterclaim for the
5     cancellation of the BUILD-A-BIKE® Trademark, it seems
6     you're not seeking damages under that counterclaim,
7     correct?
8          A.    I don't believe so.
9               MR. MARCONI:  Let me just look at
10    the -- what number is that?
11              MR. SORDEN:  It's Count IV on Page 20
12    of Exhibit 3.
13              MR. MARCONI:  (Counsel reviews
14    documents.)
15    BY MR. SORDEN:
16         Q.    So to be clear, on Count IV, the
17    cancellation of the BUILD-A-BIKE® Trademark, you're
18    not seeking any damages; is that correct?
19         A.    Not seeking any attorney damage [sic], I
20    guess not, no.
21         Q.    Now you seek attorneys' fees pursuant -- in
22    Count V you seek attorneys' fees pursuant to 17 U.S.C.
23    505.  Do you see that on Exhibit 3, Mr. Jackson?
24         A.    Yes.
25         Q.    Okay.  And in Paragraph 251, can you read

 1    that paragraph, please.

 2        A.    "Defendants filed their Motion to Dismiss

 3    Plaintiffs' First Amended Complaint in this matter on

 4    January" 3rd -- "30th, 2015.  The Court subsequently

 5    dismissed Plaintiffs' claims against Defendants for

 6    Federal Copyright Infringement under 17 U.S.C. 501."

 7        Q.    So is it your contention because it

 8    dismissed those counterclaims -- I'm sorry.

 9              Is it you contention because the Court

10    dismissed the copyright claims against Magnovo, that

11    you're entitled to attorneys' fees?

12                    MR. MARCONI:  I'll object; calls for a

13    legal conclusion.

14    BY MR. SORDEN:

15        Q.    What's your contention for attorneys' fees

16    under 17 U.S.C. 505?

17        A.    I don't know.

18        Q.    What are the facts related to your

19    contentions for attorneys' fees under 17 U.S.C. 505?

20        A.    I don't know.

21        Q.    You understand that those copyright claims

22    filed against you were dismissed without prejudice?

23        A.    I wasn't aware.

24        Q.    Do you have any reason to dispute that those

25    claims -- those copyright claims were dismissed

144

1    without prejudice?

2         A.    No.

3         Q.    And to be fair, you don't know the legal

4    effect of dismissing claims without prejudice, correct?

5         A.    I'm not sure.

6         Q.    Count VI we talked about before.  It's

7    related to your copyright infringement claim.  And

8    just to confirm, and I think we talked about this,

9    Magnovo is not seeking damages other than statutory

10   damages pursuant to 17 U.S.C. 504(c); is that correct?

11                    MR. MARCONI:  You're asking me?

12                    MR. SORDEN:  I'm asking the witness,

13   but --

14                    MR. MARCONI:  I thought you were asking

15   me.

16   BY MR. SORDEN:

17        Q.    How 'bout I ask it this way, Mr. Jackson:

18   On -- on Paragraph 259 of Count VI, you only claim

19   damages pursuant to statutory damages; is that correct?

20        A.    It says "Magnovo is entitled to statutory

21   damages," yes.

22        Q.    And if it's proven that you're not entitled

23   to stat -- statutory damages, in fact, for this

24   copyright claim, you would have no damages.

25                    Do you understand that?

1        A.    I guess.

2                   MR. SORDEN:  Okay.  All right.  Let's

3    go off the record.

4                   THE VIDEOGRAPHER:  End of Disc 2;

5    12:15 p.m.  Off the record.

6       (Lunch recess held from 12:15 p.m. to 1:24 p.m.)

7                 (Mr. Craddock not present.)

8                   THE VIDEOGRAPHER:  Start of Disc 3.

9    Back on the record; 1:24 p.m.

10                  MR. MARCONI:  This is number what?

11                  MR. SORDEN:  This is No. 9.

12                  MR. MARCONI:  Thank you.

13           (Exhibit 9 marked for identification.)

14   BY MR. SORDEN:

15       Q.    Mr. Jackson, I'm handing you what's been

16   marked as Exhibit No. 9 to Magnovo's deposition.

17               (Documents handed to witness.)

18       A.    Uh-huh.

19       Q.    I will submit to you this is a document that

20   is entitled "Independent Contractor Agreement for The

21   Leader's Institute™, (TLI) Consultants."

22               Do you see that?

23       A.    Uh-huh.

24       Q.    And I believe you testified previously that

25   you signed a document in 2009.  This document was

1    signed in 2006.

2              Is this the document you were referring to

3    in your previous deposition?

4        A.    I'm sorry.  You said I "did" or "didn't"

5    sign it?

6        Q.    Well, you previously testified you signed a

7    document with TLI in 2009, and I believe this document

8    is signed in 2006.

9              Is this the one you were referring to?

10       A.    This is the one I signed, yes.

11       Q.    Okay.  So just for clarification, --

12       A.    Yes.

13       Q.    -- this document was signed in December of

14   2006.  Is the other Agreement you -- at least the

15   Agreement you agree was signed by you?

16       A.    Uh-huh.

17       Q.    And to be fair, another Agreement in 2011

18   you contend was not signed by you; is that correct?

19       A.    Right.

20       Q.    Okay.  Have you reviewed this document?

21       A.    Not in a long time.

22       Q.    Please go ahead and review it before I ask

23   you a few questions.

24       A.    (Witness reviews documents.)  Okay.

25       Q.    Mr. Jackson, did you sign Exhibit No. 9?

```
 1   with all the facts provided on the abuse of process,
 2   and so I'm -- I'm asking a little bit more about it.
 3   I haven't asked about issuance of process.
 4              MR. MARCONI:  I haven't seen this
 5   wrongful issuance of process quoted anywhere.  And I
 6   apologize if it's there; I just don't see it.
 7              MR. SORDEN:  (Counsel reviews
 8   documents.)  Counsel, I'll move on.  I'm looking at
 9   a --
10              MR. MARCONI:  Okay.  That's fine.
11              MR. SORDEN: -- in response to
12   Interrogatory No. 5, and I don't see this allegation
13   in there.  And I'm going to rely upon your Interrogatory
14   Responses on this cause of action or counterclaim.
15   BY MR. SORDEN:
16      Q.    I asked you earlier about the per se
17   defamatory statements that Mr. Staneart made or TLI
18   made, and I don't believe you identified those
19   statements with particularity.
20              Can you provide those statements for me
21   again that's subject to your defamation claim?
22      A.    I don't remember the answer.
23      Q.    There's allegations that there's per se
24   defamatory statements, and I -- I want to know the
25   facts related to those per se defamatory statements on
```

1    behalf of Magnovo.

2              Do you know the point in time which

3    statements are per se defamatory?

4        A.    That -- that is against Magnovo by the

5    Plaintiff?

6        Q.    No.  You made an allegation that certain

7    statements were per se defamatory that was made by TLI

8    or Mr. Staneart.

9        A.    That's what I just asked, yeah.  Per se, he

10   had several statements he made to his past and former

11   employees.

12       Q.    No, no, no.  You allege that he had made per

13   se defamatory statements about you or Magnovo, and I

14   want to know which statements you contend are per se

15   defamatory.

16             MR. MARCONI:  Go through them again,

17   and don't forget the e-mails, as well.

18       A.    Again, --

19             MR. SORDEN:  Counsel, can you tell

20   him -- not tell him how to answer the question.

21       A.    You know, I'm -- I'm going to go through the

22   whole list that we talked about again.

23   BY MR. SORDEN:

24       Q.    Good.

25       A.    And we talked about the fact that when I

1    left the company he told people that -- that I was

2    breaking the law and I was going to go to jail and the

3    FBI was -- had -- was doing a -- he was working with

4    them on a sting operation and that I was going to go

5    to jail for ten years.

6            Then he went back and said no, that was a

7    lie, but by then, the damage was done.  I lost some

8    good friendships; I lost some good potential em --

9    employees or possible customers in the future.

10           When he tried to take away my -- when he

11   called employees and told them that I was dodging

12   being served, and -- but when I didn't -- whenever I

13   did finally answer the door, I was going straight to

14   jail.

15           In the past, he's talked about -- or my

16   understanding is he's gone to the police department,

17   the FBI and the Department of Justice and told them

18   all these different crimes that I've supposedly

19   committed.  If that's not per se, I don't know what

20   is.

21      Q.   Do you think it's a crime to go seek the

22   help of a police department or Department of Justice?

23      A.   Please raise your voice when you say that.

24   I didn't hear you.

25      Q.   Do you think it's a crime to go seek the

 1   enjoin Plaintiffs from using any materials that

 2   contains infringing material," (as read).

 3       Q.   Do you understand what "prevailing party"

 4   means in relation to copyright claims?

 5       A.   I'm not an attorney.  I'm sorry.

 6       Q.   Okay.  And you understand if your

 7   copyright -- if you lose your copyright claims, you

 8   may owe attorneys' fees and costs to TLI and Mr.

 9   Staneart?

10       A.   No, I don't.

11       Q.   Okay.  Do you understand that the analysis

12   and time it's taken to go through the allegations

13   regarding the copyright infringement claims has been

14   fairly substantive on behalf of TLI and Mr. Staneart?

15       A.   Yeah.  I'm glad for it, too.

16       Q.   So it makes you happy that you made --

17       A.   It makes me happy that you guys are having

18   to spend the same kind of money I'm having to spend

19   every time he does something to my company that I have

20   to pay attorneys to go after and figure out what he

21   did and how to stop it.

22           So yeah, yeah; to answer your question, yes.

23       Q.   Okay.

24       A.   And I know that he's -- and you can threaten

25   and -- and make innuendo that we're going to lose that

1   and I could pay, but you're not going to intimidate me

2   or scare me with them because you're not going to

3   because he's admitted to doing it, so...

4        Q.    Does it make you happy that you've forced --

5        A.    Does it make me happy not to stop an --

6   answering your questions?  Yeah, it does make me happy

7   to stop answering your questions.  So please make it

8   very clear and concise and I'll answer your question.

9                 MR. MARCONI:  Let -- let's --

10  BY MR. SORDEN:

11       Q.    I'll ask -- no, I'm going to ask a question

12  here.  You said it makes you happy that TLI and/or Mr.

13  Staneart are spending money; is that correct?

14       A.    I don't remember now.

15       Q.    All right.

16       A.    Can I take a break?

17       Q.    Nope.

18       A.    I really don't want to have to pee all over

19  this floor.

20       Q.    Well, you said -- you said -- I asked you

21  does it make you happy that TLI's spending money, and

22  you said --

23                 THE WITNESS:  I have to go to the

24  bathroom.

25                 MR. MARCONI:  I'm not going with him.

```
 1    Don't worry.  Just --
 2                    MR. SORDEN:  Off the record.
 3                    MR. MARCONI:  When you gotta go, you
 4    gotta go, man.
 5                    THE VIDEOGRAPHER:  Off the record at
 6    4:59 p.m. -- 4:49 p.m.  Excuse me.
 7         (Recess held from 4:49 p.m. to 5:06 p.m.)
 8                    THE VIDEOGRAPHER:  Back on the record;
 9    5:06 p.m.
10    BY MR. SORDEN:
11         Q.    Mr. Jackson, you testified that it makes you
12    happy that Plaintiffs are having to spend money
13    defending these copyright claims.
14         A.    Yeah.  To clarify my -- my feeling, the fact
15    that the Plaintiff has put me through so much and made
16    me -- cost me so much money, to know that it's costing
17    him a little bit -- little money to have to -- to do
18    something, yes.
19         Q.    And do you feel that way even if your
20    copyright claims are unsupported by fact and law?
21         A.    I believe they are supported by the facts of
22    law.
23         Q.    Okay.  And you understand that if you are
24    incorrect, you will actually owe costs and fees related
25    to your allegations?
```

```
1              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
2                       DALLAS DIVISION
3    THE LEADER'S INSTITUTE, LLC    §
     and DOUG STANEART,             §
4              Plaintiffs,          §
                                    §          Case Number
5    VS                             §       3:14-cv-03572-B
                                    §
6    ROBERT JACKSON and MAGNOVO     §
     TRAINING GROUP, LLC,           §
7              Defendants.          §
8    - - - - - - - - - - - - - - - - - - - - - - - - -
                REPORTER'S CERTIFICATE TO THE
9          30(b)(6) ORAL AND VIDEOTAPED DEPOSITION OF
                  MAGNOVO TRAINING GROUP, LLC
10      BY AND THROUGH ITS DESIGNATED REPRESENTATIVE
                     ROBERT C. JACKSON
11                    JULY 18, 2016
     - - - - - - - - - - - - - - - - - - - - - - - - -
12
13        I, Tommi Rutledge Gray, CRR, Certified Shorthand
14   Reporter No. 1693 in and for the State of Texas,
15   certify that the foregoing deposition of ROBERT C.
16   JACKSON was reported stenographically by me at the
17   time and place indicated, said witness having been
18   placed under oath by me, and that the deposition is a
19   true record of the testimony given by the witness.
20        I further certify that I am neither counsel for
21   nor related to any party in this cause and am not
22   financially interested in its outcome.
23        That the amount of time used by each party at
24   the deposition is as follows:
25
```

```
 1   FOR THE PLAINTIFFS:

 2           GARY R. SORDEN, ESQ. - 5 hours 54 minutes
             TIM CRADDOCK, ESQ. (Morning session only)
 3           KLEMCHUK LLP
             8150 N. Central Expressway, 10th Floor
 4           Dallas, Texas  75206
             Telephone: 214.367.6000
 5           Fax:        214.367.6001
             E-mail:     gary.sorden@klemchuk.com
 6                       tim.craddock@klemchuk.com

 7   FOR THE DEFENDANTS:

 8           MICHAEL V. MARCONI, ESQ. - 0 hours 0 minutes
             THE MARCONI FIRM
 9           9284 Huntington Square
             North Richland Hills, Texas  76182
10           Telephone: 214.682.3592
             E-mail:    mmarconi416@icloud.com

11

12       Certified to by me on this 29th day of July, 2016.

13

14

15

16

17           Tommi Rutledge Gray, Texas CSR
             Expiration date:  12/31/2016
18           Firm Registration No. 348

19

20
     SHAW REPORTING & DIGITAL VIDEO SERVICES
21   4441 Carolina Street
     Grand Prairie, Texas  75052
22   Toll Free:  877.223.2997
     Metro:      972.263.4353
23   Fax:        972.642.9167
     E-mail:     jmshaw@sbcglobal.net
24

25
```