# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE LEADER'S INSTITUTE, LLC | § | |
| and DOUG STANEART, | § | |
| | § | |
| Plaintiffs and Counter-Defendants, | § | |
| | § | |
| v. | § | Case No. 3:14-cv-03572-B |
| | § | |
| ROBERT JACKSON, and MAGNOVO | § | |
| TRAINING GROUP, LLC, | § | |
| | § | |
| Defendants and Counter-Plaintiffs. | § | |

**DEFENDANTS' AMENDED COUNTERCLAIMS AGAINST PLAINTIFFS**

**I.      JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction to adjudicate Defendants' counterclaims pursuant to 28 U.S.C. §§ 1331 and 1332(a).  This Court has original jurisdiction over these counterclaims because they are federal questions and the matters in controversy exceed the sum of value of $75,000, exclusive of interest and costs, and are between citizens of different states. Defendants are citizens of the state of Indiana, and Plaintiffs are citizens of the state of Texas.

2.      The Court has supplemental jurisdiction over the state law claims set forth in this pleading pursuant to 28 U.S.C. § 1367(a).  The state law claims are related to the federal statutory claims asserted in the operative Complaint and Counter-Claims, and the facts of the state law claims form a part of the same case or controversy set forth relative to the federal claims asserted by Plaintiffs and Defendants.

3.      Venue is proper pursuant to 28 U.S.C. § 1391.

## II.   PARTIES AND FACTS RELATED TO ALL COUNTS

4.     Defendant Robert Jackson ("Jackson") is a natural person who resides and conducts business at 5328 Sandwood Drive, Indianapolis, Indiana 46235, and is the President of Defendant Magnovo Training Group, LLC ("Magnovo"), an Indiana limited liability company whose principal place of business is at 5328 Sandwood Drive, Indianapolis, Indiana 46235.

5.     Plaintiff Doug Staneart ("Staneart") is a natural person who resides in Tarrant County, Texas, and is the President of Plaintiff The Leaders Institute, LLC ("TLI"), a Texas limited liability company duly organized and existing under the laws of the state of Texas with its principal place of business at 6703 Coronation Court, Arlington, Texas 76017.

6.     On August 6, 2016, Plaintiffs filed a Fourth Amended Complaint alleging infringement and false designation of U.S. Trademark Registration Nos. 3,535,706 and 4,542,884 for BUILD-A-BIKE (the "BUILD-A-BIKE marks"); violations of the Anticybersquatting Consumer Protection Act; unfair competition; unfair competition by misappropriation; misappropriation of trade secrets; conversion; breach of contract; tortious interference with prospective business relations; trademark infringement, unfair competition, and unjust enrichment in violation of Texas law; and false advertising.

7.     Jackson resigned from TLI on or about August 1, 2013.

8.     On September 13, 2013, Plaintiffs filed suit against Defendants in the 348th Judicial District Court of Tarrant County, Texas ("The State Court Lawsuit") alleging conversion, misappropriation of trade secrets, breach of confidential and/or fiduciary relationship, and breach of contract.  Plaintiffs did not serve Defendants with their Petition until January 29, 2014.

9.      On February 10, 2014, Jackson filed a Complaint under the Fair Labor Standards Act ("FLSA") against TLI and Staneart in the United States District Court for the Southern District of Indiana (the "FLSA Lawsuit").  The FLSA Lawsuit was based on TLI and Staneart misclassifying workers like Jackson as independent contractors and failing to pay them overtime wages as required by the FLSA.  The FLSA Lawsuit settled and was dismissed on April 19, 2016.

10.     On March 20, 2014, Plaintiffs filed a Notice of Non Suit of The State Court Lawsuit.  At that time, Plaintiffs provided Defendants no explanation at all vis their decision to nonsuit The State Court Lawsuit nor did they communicate that they had any intention of resuming or reinstituting the claims set forth in The State Court Lawsuit at a later date or in a different venue.

11.     On October 2, 2014, Plaintiffs filed the current lawsuit against Defendants.  That lawsuit was largely a rehash of the State Court Lawsuit.  Additionally, part of the current lawsuit is premised on an alleged independent contractor agreement on which Jackson's signature was forged either by Staneart, or someone acting on Staneart's behalf.  Plaintiffs had an ulterior/bad faith purpose or motive in filing that Complaint against Defendants.

12.     On October 7, 2014, during a court-ordered mediation between the parties in the FLSA Lawsuit, Staneart served Jackson with the Complaint in this matter in the chambers of the United States Magistrate Judge who was mediating the FLSA Lawsuit.

13.     Upon information and belief, Plaintiffs seeks to harass Defendants and force Defendants to incur unnecessary litigation costs in defending against improper claims with the filing of the current lawsuit.

14.     Since the filing of this lawsuit, Staneart has engaged, and continues to engage, in many harassing and unlawful acts aimed at retaliating against Jackson and Magnovo.  For example, Staneart engaged in *ex parte* and unwelcome communications with a co-Plaintiff of Defendants and employee of Magnovo named Colette Johnston ("Johnston") shortly before her scheduled deposition in the FLSA Lawsuit wherein Staneart claimed he had convinced the Federal Bureau of Investigation ("FBI") to "prosecute" her and Jackson, but that if she dropped her FLSA overtime lawsuit Staneart would get, or attempt to get, the FBI to essentially "go easy on her."  Johnston did not cave to those threats and intimidation tactics, which violated the FLSA's anti-retaliation provision.  *See* 29 U.S.C. § 215(a)(3).

15.     The FLSA Lawsuit was resolved on approximately April 18, 2016.

16.     Two depositions were taken of Staneart in this lawsuit in July of 2016.  During those depositions, Staneart testified that he had taken several actions relative to Jackson and Magnovo they he knew were wrong because he was "angry" and "mad."  Such actions included Staneart registering the Magnovo name as his own, under penalty of false statement pursuant to 18 U.S.C. § 1001, with the United States Patent and Trademark Office ("USPTO").  Other wrongful actions of Staneart include making false statements to the FBI, United States Department of Justice ("DOJ"), and other law enforcement agencies about Jackson and Magnovo, engaging in false advertising including misuse of Magnovo website data and proprietary data and attempting to use the threat of criminal prosecution against Magnovo and/or Jackson in an effort to gain an advantage in the current civil lawsuit.

17.     Additionally, Plaintiffs have engaged in content-scraping, mirroring, framing and/or forwarding with masking relative to certain of Magnovo's websites and/or website content, including copying and republishing proprietary Magnovo photos and data.  Plaintiffs

then caused that Magnovo webpage content and proprietary data to be displayed on multiple websites with similar domain names, all owned by Plaintiffs.  Plaintiffs also redirected website visitors on such websites, which falsely appeared to be Magnovo websites, to a Staneart and/or TLI owned website or websites.

18.    For example, Staneart, acting individually and on behalf of TLI, content scraped, framed, mirrored, copied and reposted Magnovo website data and proprietary photos from Magnovo websites www.charity-team-building-events.com and www.charity-team-building-events.com/photos.  Plaintiffs then caused that Magnovo website content and proprietary data to be displayed and/or published on websites with similar domain names as Magnovo's, including www.charityteambuildingevent.com and www.charityteambuildingevent.com/photos.   All such misleading, fake and/or fraudulent websites were owned, controlled, maintained and/or operated by Staneart and/or TLI.  Defendants discovered the foregoing activity on or about July 27, 2016 and immediately sent a cease and desist letter to Plaintiffs' Counsel. No later than 24 hours after sending that cease and desist letter, the www.charityteambuildingevent.com website redirected those accessing it to a TLI website and the www.charityteambuildingevent.com/photos website redirected those accessing that website to a TLI website which stated, amongst other things, "Error 404 – Not Found."

19.    Similarly, Plaintiffs in this lawsuit have admitted to engaging in framing and forwarding with masking Magnovo proprietary and other and other data relative to the following websites owned by Magnovo:

http://bicycle-team-building.org/
http://bicycles-team-building.com/
http://bicycleteambuilding.org/
http://bicycleteambuildings.org/

20.     Many of the harassing, intimidating and other unlawful acts mentioned above took place after the FLSA Lawsuit was settled and dismissed and were not confirmed until at least the July 2016 depositions of Staneart.  Those acts give rise to claims for FLSA Retaliation, False Advertising, Fraud, Defamation, and Abuse of Process, which are now asserted here as counter-claims by Defendants against Plaintiffs.

### III.     COUNTER-CLAIMS

### COUNT I
### ABUSE OF PROCESS

21.     Defendants incorporate by reference the allegations in paragraphs 1-20 as if set forth fully herein.

22.     The relief sought by Plaintiffs in their operative complaint, and all preceding complaints, is not a matter worthy of litigation on the basis of the facts known at the time Plaintiffs filed and/or amended their complaint, in addition to the times that Plaintiffs continued pursuit of this lawsuit.

23.     Upon information and belief, Plaintiffs have willfully used the process of filing a lawsuit against Defendants that is neither procedurally nor substantively proper in the regular conduct of the proceedings on the basis of the facts known to Plaintiffs at the time of filing their complaint and amended complaints, in addition to the times that Plaintiffs continued pursuit of this lawsuit.

24.     Plaintiffs' complaints to various law enforcement agencies about Defendants were based on false and misleading statements by Staneart and were made in an attempt to cause harm and damage to Defendants.

25.     The foregoing and ongoing conduct by Plaintiffs is/was an illegal, improper or perverted use of the legal process.  Plaintiffs have/had an ulterior motive and/or purpose in

engaging in such conduct.  As a result, Defendants has suffered, and continue to suffer, damages as the result of Plaintiffs' conduct.

**COUNT II**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

26.     Defendants incorporate by reference the allegations in paragraphs 1-25 as if set forth fully herein.

27.     After Jackson ceased to work with TLI, Staneart made false statements to current and former employees and/or independent contractors of TLI as well as others about Jackson's supposed dishonest and criminal acts.  Such conduct by Staneart was intended, in whole or in part, to interfere with Jackson's and/or Magnovo's business operations and business relations with employees, contractors, customers and/or prospective customers.

28.     Staneart even created a false persona named "Lisa Smith" who supposedly worked for "Small Business Alliances" and who then contacted Magnovo purporting to be a prospective client.  Staneart used this false business contact as a means to obtain Magnovo's proprietary client proposal documents.  This also constituted an invasion of Defendants' privacy by Plaintiffs.

29.     Staneart, or someone acting on his behalf, created a forged instrument, to wit; a TLI independent contractor agreement, ostensibly bearing Jackson's signature.  However, Jackson never signed an independent contractor agreement in 2011 as alleged by Plaintiffs.  Not surprisingly, the forged instrument contains the covenant not to compete and nondisclosure agreement that form the basis for many of Plaintiffs' claims against Defendants.

30.     During the pendency of this litigation, Plaintiffs used Magnovo's proprietary client proposal documents, along with printouts of Magnovo's website, in order to fraudulently file a trademark application for "MAGNOVO" with the USPTO.  By filing the MAGNOVO

7

trademark application, Plaintiffs fraudulently represented to the USPTO and third parties, under penalty of perjury, various facts including but not limited to the following: that they were the owners of the trademark sought to be registered; that they were the owners of the materials submitted as proof of use of the mark in commerce; that they had been continually using such mark in commerce since as early as February 1, 2011; and that the mark was distinctive. Plaintiffs' filing of the MAGNOVO trademark was an attempt to usurp the goodwill associated with the mark and attempt to link the Mangovo name with that of the Plaintiffs. Plaintiffs' filing of the MAGNOVO trademark was an attempt to interfere with Defendants' business operations and Staneart filed that MAGNOVO trademark application in violation of the false statement provisions of 18 U.S.C. § 1001.

31.     In an attempt to further usurp goodwill and interfere with Defendants' business, Staneart logged onto Jackson's LinkedIn account and changed the password. This enabled Plaintiffs to improperly gain knowledge of Defendants' business operations, customers, prospective customers and communications with third parties, including customers and prospective customers.   This further constitutes and invasion of Defendants' privacy by Plaintiffs.

32.     Plaintiffs have further interfered with Defendants' business by registering internet domains and displaying Defendants' website information and proprietary materials under Plaintiffs' registered domains, thereby interfering with Defendants' internet traffic and holding Defendants' business out as that of TLI. Such conduct not only likely misdirected customers/prospective customers of Defendants to Plaintiffs, but also negatively impacted Defendants' Google and similar search engine rankings.

33.     Plaintiffs have further interfered with Defendants' business by registering internet domains and displaying Defendants' charity-team-building-events.com website under Plaintiffs' registered domains, thereby interfering with Defendants' internet traffic and holding Defendants' business out as that of TLI.  On information and belief, such conduct also negatively affected Defendants' ranking on Google and other search engines thereby reducing their ability to obtain new customers.

34.     Upon information and belief, Plaintiffs have willfully interfered in the business and client development and retention of Defendants' customers/prospective customers.

35.     As a direct and proximate result of Plaintiffs' tortious interference with Defendants' business and invasion of Defendants' privacy, Defendants have been damaged.

**COUNT III**
**DEFAMATION**

36.     Defendants incorporate by reference the allegations in paragraphs 1-35 as if set forth fully herein.

37.     Plaintiffs made false statements to third parties accusing Jackson of criminal conduct, dishonesty and fraud.  Plaintiffs also made false statements to third parties regarding Defendants that injured the business operations and/or prospective business operations of Defendants and the profession and occupation of Jackson.  Such false statements were made, verbally and in writing, with malice and/or intent, or in the alternative, with gross negligence or negligence, by Staneart, acting on behalf of himself and TLI, to numerous third parties including Johnston, Ray Summeier, Ellen Patnaude, various TLI employees and so-called independent contractors, the FBI, the DOJ, other law enforcement agencies, the USPTO, and to other individuals and companies.  Defendants allege that Plaintiffs' false statements constitute defamation *per se*.  In the alternative, Defendants alleged that Plaintiffs' false statements

9

constitute defamation *per quod*.   Defendants suffered damages as a result of Plaintiffs' defamatory statements.

### COUNT IV
### CANCELLATION OF BUILD-A-BIKE® MARKS

38.      Defendants incorporate by reference the allegations in paragraphs 1-37 as if set forth fully herein.

39.      U.S. Trademark Registration No. 3,535,706 for BUILD-A-BIKE® (the '706 registration) was issued to Staneart on November 18, 2008 for the goods and services of "education services, namely, providing classes, seminars, and workshops, in the field of team building and leadership."    The '706 registration was entered on the Supplemental Register pursuant to 15 U.S.C. § 1091.

40.      On October 1, 2013, Staneart filed U.S. Trademark App. No. 86/079,796 for BUILD-A-BIKE® to be registered on the Principal Register for the goods and services of "educational services, namely, conducting classes, seminars, workshops, lectures, and self-paced training programs in the field of personal and professional development, leadership, communication, and team building and distribution of educational materials in connection therewith; personal coaching services in the field of personal and professional development for individuals and groups."  As evidence of distinctiveness, Staneart submitted a signed Declaration dated September 30, 2013, stating ". . . to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive. . ." The trademark was allowed and U.S. Trademark Reg. No. 4,542,884 for BUILD-A-BIKE® (the '884 registration) was issued to Staneart on the Principal Register.

41.     Staneart's September 30, 2013 Declaration was made fraudulently in an attempt to forego the requirements for obtaining a trademark registration on the Principal Register pursuant to 15 U.S.C. § 1052(f), by declaring under oath that his BUILD-A-BIKE® mark had become distinctive and was used substantially exclusively by him for the previous five years, when in fact Staneart was personally aware of numerous third parties that provided bicycle team building and used the phrase "build a bike" in their marketing materials, blog articles, and websites.  Staneart has admitted that someone other than Plaintiffs created the build a bike concept and phrase prior to Plaintiffs use of that concept and phrase.  Moreover, at all times relevant to this Lawsuit, numerous third party individuals and companies have used, and continue to use, the "build a bike" phrase in connection with their respective business operations.

42.     Plaintiffs' use of the BUILD-A-BIKE® mark was not substantially exclusive for the five year period prior to its application for registration on the Principal Register.

43.     Plaintiffs' BUILD-A-BIKE® mark is merely descriptive, was used by third parties for the same services prior to its registration, and has been used continuously by third parties since its registration for the same services.

44.     Because of Plaintiffs' fraud, and because the BUILD-A-BIKE® mark is merely descriptive, the '884 registration should be cancelled pursuant to 15 U.S.C. § 1064(3).

## COUNT V
## FEDERAL COPYRIGHT INFRINGEMENT. (17 U.S.C. § 501 *et seq.*)

45.     Defendants incorporate by reference the allegations in paragraphs 1-44 as if set forth fully herein.

46.     Magnovo is the author and owner of the copyright in a number of original works. For example, at times relevant, the following works were registered with the United States Copyright Office: (1) Bicycle-Team-Building-Events.com website; and (2) Magnovo Photos

("copyrighted works").  The Bicycle-Team-Building-Events.com website was published with new content on December 5, 2015, including the Magnovo Photo 1.

47.    The copyright registrations are currently valid, subsisting and in full force and effect.  True and correct copies of the registration filings are attached hereto as Exhibits A and B.  The federal registration rights and common law rights in these original works are collectively referred to hereafter as the "Copyrighted Works."

48.    The Copyrighted Works were created and are used by Magnovo in the provision of its charitable team building workshops and related services and helps to differentiate Magnovo and its services from competitors.

49.    Magnovo is the sole owner of all right, title, and interest to the Copyrighted Works and of all corresponding copyrights and Certificates of Registration.

50.    On or about July 20, 2015, Plaintiffs registered several internet domain names, including but not limited to the following:

http://www.bicycle-team-building.org/

http://www.bicycles-team-building.com/

http://www.bicycleteambuilding.org/

http://www.bicycleteambuildings.org/

51.    Following such domain registrations, on or about December 5, 2017, Plaintiffs caused such registered domains to "frame" Magnovo's newly published internet website located at http://bicycle-team-building-events.com/, whereby the full content of Magnovo's Bicycle Team Building website, including the Copyrighted Works, was displayed within and under Plaintiffs' registered domain name as though Plaintiffs owned and operated such Magnovo website content and Copyrighted Works.  This included Magnovo's name and logo.

52.     Similarly, Staneart, individually and on behalf of TLI, registered the internet domain name http://www.charityteambuildingevent.com.  Sometime thereafter, Plaintiffs caused such registered domain to "frame" Magnovo's published internet website(s) located at www.charity-team-building-events.com  and  www.charity-team-building-events.com/photos whereby the full content of Magnovo's charity team building website, including the Copyrighted Works contained therein, was displayed within and under Plaintiffs' registered and similar looking domain name of http://www.charityteambuildingevent.com as though Plaintiffs owned and operated such Magnovo website content and Copyrighted Works, including Magnovo's name and logo.  Upon Defendants discovering that conduct, counsel for Defendants notified counsel for Plaintiffs of same on or about July 27, 2016.  Less than 24 hours later, the www.charityteambuildingevent.com  website  no  longer  framed/content  scraped/mirrored Magnovo/Magnovo's data, but instead took the user to a TLI website.

53.     Plaintiffs' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to Defendants' rights.

54.     On information and belief, Plaintiffs' deceptive acts of infringement are ongoing and are causing harm to Defendants' business operations.  As a result of Plaintiffs' infringement of Magnovo's Copyrighted Works and exclusive rights, Magnovo is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

55.     The conduct of Plaintiffs is causing and, unless preliminarily and permanently enjoined and restrained by this Court, will continue to cause Magnovo great and irreparable injury that cannot fully be compensated or measured through money damages.  Magnovo has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Magnovo is entitled to preliminary and final injunctive relief prohibiting Plaintiffs from further infringing Magnovo's

Copyrighted Works and an order enjoining Plaintiffs from using any materials that contain infringing material.

## COUNT VI
## FALSE ADVERTISING

56.     Defendants incorporate by reference the allegations in paragraphs 1-55 as if set forth fully herein.

57.     Staneart and TLI have misrepresented the nature, characteristics, and qualities of his/its/their services and commercial activities.

58.     As explained above in detail, Plaintiffs content scraped, framed, mirrored, copied and reposted Magnovo website data, including proprietary data and proprietary photos from Magnovo websites.  Plaintiffs then published such Magnovo website date on domain names owned by TLI which looked similar to Magnovo domain names.  Plaintiffs also published on their website(s) Magnovo's name, logo and other proprietary and protected data.  Plaintiffs used forwarding with masking features to redirect individuals/companies who thought they were reviewing a Magnovo website to TLI and/or Staneart owned website(s).

59.     Similarly, Staneart and/or TLI filed a trademark application for "MAGNOVO" with the USPTO.  By filing that trademark application, Plaintiffs fraudulently represented and/or advertised to the USPTO and third parties, under penalty of perjury, various facts including but not limited to the following: that they were the owners of the MAGNOVO trademark sought to be registered; that they were the owners of the materials submitted as proof of use of the mark in commerce; that they had been continually using such mark in commerce since as early as February 1, 2011; and that the mark was distinctive.  Plaintiffs' filing of the MAGNOVO trademark was an attempt to usurp the goodwill associated with the mark and attempt to link the Mangovo name with that of the Plaintiffs.  Plaintiffs' filing of the MAGNOVO trademark and/or

representation to third parties that Plaintiffs owned the Magnovo trademark was false advertising by Plaintiffs relative to Defendants' business operations.

60.     Plaintiffs' use in interstate commerce of materially false and misleading representations of fact regarding Plaintiffs' business operations, services and activities, in addition to Defendants' business operations, services and activities, in commercial advertising, publication and promotion deceives and/or is likely to deceive consumers in a material way in violation 15 U.S.C. § 1125(a).  Defendants have been damaged and are likely to continue being damaged by Plaintiffs' actions.

61.     Plaintiffs should be preliminarily enjoined and, upon hearing, permanently enjoined from content scraping, framing, mirroring, copying, reposting and forwarding with masking activities relative to Magnovo website data, including Magnovo's name, Magnovo's logo(s), Magnovo's proprietary data and photos, claiming to third parties, including governmental entities such as the USPTO, that it owns, in whole or in part, the Magnovo name and/or logo, and/or engaging in other false and/or misleading statements to any and all third parties, including, but not limited to customers and/or prospective customers of Defendants.

62.     Defendants seek all damages available for false advertising from Plaintiffs, including Plaintiffs' profits related to any and all such false advertising, all damages sustained/incurred by Defendants relative to Plaintiffs' false advertising, including legal fees and costs incurred in this Lawsuit by Defendants.  Plaintiffs' actions relative to all false advertising was and is intentional, malicious and/or purposeful.   Accordingly, Defendants seek treble damages from Plaintiffs.

## COUNT VII
## FLSA RETALIATION (29 U.S.C. § 215(a)(3))

63.     Defendants incorporate by reference the allegations in paragraphs 1-62 as if set forth fully herein.

64.     After the settlement and dismissal of the FLSA lawsuit, Plaintiffs engaged in and continue to engage in numerous acts, which, in whole or in part, were in retaliation for Jackson filing/participating in the FLSA lawsuit. Such conduct of Plaintiffs violates 29 U.S.C. § 215(a)(3).

65.     Such retaliatory acts include false statements to law enforcement agencies and third parties regarding Defendants in addition to false statements and wrongful actions by Plaintiffs, which were intended by Defendants to result in the prosecution of Jackson by state and/or federal law enforcement agencies.   Additionally, in retaliation for Jackson filing/participating in the FLSA lawsuit, Plaintiffs interfered with Defendants' business operations, including engaging in framing/mirroring/content scraping/forwarding with masking of website and data belonging to Defendants as described in more detail above.  Furthermore, in retaliation against Jackson, Plaintiffs have created and/or directed the creation of website(s)/internet data to falsely make it appear that Defendants are/were using alleged proprietary marks of third party companies.

66.     The aforementioned conduct resulted, and continues to result, in damages to Defendants.  Defendants seek injunctive relief prohibiting Plaintiffs and/or any third party acting on it/his/there behalf in engaging in future retaliatory conduct against Jackson and any and all companies owned or operated by Jackson.  Defendants seek all other damages allowed for FLSA Retaliation from Plaintiffs.

67.     All FLSA Retaliation claims herein are based on acts and/or omissions by Staneart and/or TLI occurring and/or ongoing after the date of the settlement agreement in the FLSA lawsuit, or in the alternative, after the date of the dismissal of the FLSA lawsuit.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS

68.     Defendants incorporate by reference the allegations in paragraphs 1-67 as if set forth fully herein.

69.     Texas recognizes the tort of tortious interference with prospective contracts. *Johnson v. Baylor University*, 188 S.W.3d 296, 304 (Tex.App.-Waco 2006, pet denied). Here, Defendants, not unlike Plaintiffs, engage in extensive internet based advertising using websites in an attempt to attract and retain customers.  Staneart admits that most customer contract development in Plaintiffs' and Defendants' line of work comes from web based leads.  As described in more detail above, Defendants engaged in numerous willful/intentional tortious and unlawful acts, including content scraping, mirroring, framing, forwarding with masking and attempting to make it appear that Defendants were using proprietary data of third parties in order to impair Defendants from acquiring prospective customer contracts. Plaintiffs engaged in such conduct with a conscious desire to prevent Defendants from developing and securing such prospective customer contracts, or in the alternative, knew that such conduct was certain or substantially certain to prevent Defendants for developing and obtaining such customer contracts. Defendants have suffered harm and damages as a result of Plaintiffs' tortious interference with Defendants' prospective customer contracts.

## COUNT IX
## MONEY HAD AND MONEY RECEIVED

70.     Defendants incorporate by reference the allegations in paragraphs 1-69 as if set forth fully herein.

71.     "Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another."  *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App. Fort Worth 2012, no pet. h.) (*citing Staats v. Miller*, 243 S.W.2d 686, 687 (1951); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ) (stating that cause of action for money had and received belongs conceptually to doctrine of unjust enrichment)).

72.     Due to Plaintiffs' acts and/or omissions described above, they are/will be in the possession of money which rightfully belongs to Jackson and/or Magnovo.  For example, the customer(s) and customer leads obtained by Plaintiffs due to mirroring/framing/content-scraping/forwarding with masking of Magnovo's websites and data in equity and good conscience belong(s) to Defendants.  Defendants are entitled to all money received, past present and future, by Staneart and/or TLI relative to each such customer and customer lead, including a full accounting of same on a quarterly basis for a time period to be determined.

## IV.     PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request the following relief:

a.   That judgment be entered in favor of Defendants and that Plaintiffs take nothing;

b.   That judgment be entered in favor of Defendants against Plaintiffs to the effect that the BUILD-A-BIKE marks are declared cancelled;

c.  That judgment be entered in favor of Defendants against Plaintiffs to the effect that the Court declares that Defendants have not and do not directly or indirectly infringe the BUILD-A-BIKE marks or the registered copyrights.

d.  That Staneart and TLI be enjoined from making any defamatory communications relating to Jackson or Magnovo with any and all third parties;

e.  That Plaintiffs be permanently enjoined from infringing upon Defendant Magnovo's Copyrighted Works and Defendants be awarded statutory damages for infringement;

f.  That Plaintiffs be enjoined from engaging in retaliatory conduct in violation of the FLSA against Jackson and/or any and all businesses owned and/or operated, in whole or in part, by Jackson;

g.  That Plaintiffs be enjoined from content scraping, mirroring, framing and forwarding with masking websites and website data, including Magnovo's name and logo, belonging in whole or in part to Jackson and/or any and all businesses owned and/or operated, in whole or in part, by Jackson;

h.  That Plaintiffs be enjoined from engaging in conduct to make it appear as though Jackson and/or any and all businesses owned and/or operated, in whole or in part, by Jackson, are improperly using proprietary data and/or information of third parties;

i.  That Defendants be awarded costs, expenses, and attorneys' fees to the extent permitted by law; and

j.  That the Court grant such other relief, at law and/or in equity, which it deems appropriate.

Dated:  September 21, 2016.

Respectfully submitted,

By: s/ Allen R. Vaught _____

    Allen R. Vaught
    TX Bar No. 24004966
    MS Bar No. 101695
    Baron & Budd, P.C.
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, Texas 75219
    Phone: (214) 521-3605
    Fax: (214) 520-1181
    avaught@baronbudd.com

    Michael V. Marconi
    TX Bar No. 00784524
    9284 Huntington Square, Suite 100
    North Richland Hills, TX 76182
    Phone: (214) 682-3592
    Fax: (817) 479-2210
    Email: Michael@dkdavislaw.com

    Steven G. Cracraft, IN Bar No. 3417-49
    William K. Doss, IN Bar No. 20097-29
    Amy A. Rollins, IN Bar No. 31788-49
    **BRANNON SOWERS & CRACRAFT PC**
    1 North Pennsylvania Street, Suite 800
    Indianapolis, Indiana 46204
    Phone: (317) 630-2810
    Fax: (317) 630-2813
    Email: scracraft@bscattorneys.com
    wdoss@bscattorneys.com
    arollins@bscattorneys.com

    **ATTORNEYS FOR DEFENDANTS AND COUNTER-PLAINTIFFS ROBERT JACKSON AND MAGNOVO TRAINING GROUP, LLC**

## CERTIFICATE OF SERVICE

On September 21, 2016 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record in this lawsuit electronically.

    s/ Allen R. Vaught _____
    Allen R. Vaught